**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT LLC, | § § § | Case No. |
| Plaintiff, | § § § | <u>**JURY TRIAL DEMANDED**</u> |
| v. | § § | |
| GOOGLE LLC, | § § | |
| Defendant. | § § § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff, AGIS Software Development LLC ("AGIS Software" or "Plaintiff") files this original Complaint against Defendant Google LLC ("Defendant" or "Google") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

<u>**THE PARTIES**</u>

1.      Plaintiff AGIS Software is a limited liability company organized and existing under the laws of the State of Texas, and maintains its principal place of business at 100 W. Houston Street, Marshall, Texas 75670.  AGIS Software is the owner of all right, title, and interest in and to U.S. Patent Nos. 8,213,970, 9,408,055, 9,445,251, 9,467,838, 9,749,829, and 9,820,123 (the "Patents-in-Suit").

2.      Defendant Google is a Delaware corporation and maintains its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043, and may be served with process via its registered agent, Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808.  Upon information and belief, Google does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein

of infringement, to customers and potential customers located in Texas, including in the judicial Eastern District of Texas.

## JURISDICTION AND VENUE

3.  This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

4.  This Court has personal jurisdiction over Google in this action because Google has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Google would not offend traditional notions of fair play and substantial justice.  Google conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States by, among other things, offering to sell and selling products and/or services that infringe the Patents-in-Suit.

5.  Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b).  Google is registered to do business in Texas and, upon information and belief, Google has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.  Google has regular and established places of business in this Judicial District as set forth below and is deemed to reside in this Judicial District.

6.  Google is a multi-national technology company that collects, stores, organizes, and distributes data.  In addition to its service model for distribution of data (e.g., movies, search results, maps, music, etc.), Google has an expansive regime that gathers data on residents of this

District through the hardware devices it sells (e.g., phones, tablets, and home audio devices) and, also, through the operating systems and apps it provides.  As an example, Google gathers data when a resident runs its operating systems and apps (e.g. location services).[1]  As another example, Google gathers data when a resident interacts with Google's plethora of services such as search, email, music, and movie streaming.  *See* https://safety.google/privacy/data/ (indicating that Google gathers data from "things you search for," "Videos you watch," "Ads you view or click," "Your location," "Websites you visit," and "Apps, browsers, and devices you use to access Google services").  As yet another example, Google gathers data "where you've been," "everything you've ever searched—and deleted," "all the apps you use," "all of your YouTube history," "which events you attended, and when," "information you deleted [on your computer]," "your workout routine," "years' worth of photos," and "every email you ever sent."[2]

7.      In addition to extensive data gathering of information on residents of this District, Google has a substantial presence in this District directly through the products and services Google provides residents of this District (some of which also gather data).[3]

8.      Google describes itself as an "information company."[4]  Its vision is "to provide access to the world's information in one click," and its mission is "to organize the world's

---

[1] *See e.g.*, "AP Exclusive: Google tracks your movements, like it or not," https://apnews.com/828aefab64d4411bac257a07c1af0ecb/AP-Exclusive:-Google-tracks-your-movements,-like-it-or-not.

[2] *See* https://www.theguardian.com/commentisfree/2018/mar/28/all-the-data-facebook-google-has-on-you.privacy.

[3] Non-limiting examples include Google Search, Maps, Translate, Chrome Browser, YouTube, YouTube TV, Google Play Music, Chromecast, Google Play Movies and TV, Android Phones, Android Wear, Chromebooks, Android Auto, Gmail, Google Allo, Google Duo, Google+, Google Photos, Google Contacts, Google Calendar, Google Keep, Google Docs, Google Sheets, Google Slides, Google Drive, Google Voice, Google Assistant, Android operating system, Project Fi Wireless phone systems, Google Pixel, Google Home, Google Wifi, Daydream View, Chromecast Ultra.

information and make it universally accessible and useful."[5]  Making information available to people wherever they are and as quickly as possible is critical to Google's business.

*Google Global Cache (GGC)*

9.     Google's CEO, Sundar Pichai, explained, "We want to make sure that no matter who you are and where you are or how advanced the device you are using—Google works for you."[6]  To meet this goal, Google developed a content delivery network that it calls the Edge Network.

10.     One non-limiting example of physical presence in this District is Google's Edge Network.  Google provides web-based products and services, such as Google Maps, Find My Device, and Google Chrome, to users throughout the world, including in this District.  These products and services are in high demand.  Google reports that the Android operating system has more than 2 billion monthly active devices, and Google Maps surpassed 1 billion users as of May 2017.[7]

11.     Google's Edge Network, itself, has three elements: Core Data Centers, Edge Points of Presence, and Edge Nodes.[8]  The Core Data Centers (there are eight in the United States) are used for computation and backend storage.  Edge Points of Presence are the middle tier of the Edge Network and connect the Data Centers to the internet.  Edge Nodes are the layer of the network closest to users.  Popular content, including Google Maps, Google Messages,

---

[4] *See* "This Year's Founder's Letter" by Alphabet CEO, Sundar Pichai, https://blog.google/inside-google/alphabet/this-years-founders-letter//.
[5] https://panmore.com/google-vision-statement-mission-statement.
[6] https://time.com/4311233/google-ceo-sundar-pichai-letter/.
[7] *See* https://www.theverge.com/2017/5/17/15654454/android-reaches-2-billion-monthly-active-users.
[8] https://peering.google.com/#/infrastructure.

mobile apps, and other digital content from the Google Play store, is cached on the Edge Nodes, which Google refers to as Google Global Cache or "GGC."

12.     Google Global Cache is recognized as one of Google's most important pieces of infrastructure,"[9] and Google uses it to conduct the business of providing access to the world's information.  GGC servers in the Edge Nodes function as local data warehouses, much like a shoe manufacturer might have warehouses around the country.  Instead of requiring people to obtain information from distant Core Data Centers, which would introduce delay, Google stores information in the local GGC servers to provide quick access to the data.

13.     Caching and localization are vital for Google's optimization of network resources. Because hosting all content everywhere is inefficient, it makes sense to cache popular content and serve it locally.  Doing so brings delivery costs down for Google, network operators, and internet service providers.  Storing content locally also allows it to be delivered more quickly, which improves user experience.  Serving content from the edge of the network closer to the user improves performance and user happiness.  To achieve these benefits, Google has placed Edge Nodes throughout the United States, including in this District.  Google describes these Edge Nodes as the workhorses of video delivery.

14.     Google's GGC servers are housed in spaces in this District leased by Google. Google's GGC servers are housed in spaces leased by Google from Internet Service Providers (ISPs) whose networks have substantial traffic to Google and are interested in saving bandwidth. Hosting Google servers allows ISPs to save both bandwidth and costs, as they do not incur the expense of carrying traffic across their peering and/or transit links.

---

[9] https://www.blog.speedchecker.xyz/2015/11/30/demystifying-google-global-cache/.

15.     When an ISP agrees to host a GGC server, the parties enter into a Global Cache Service Agreement, under which Google provides:

- hardware and software—including GGC servers and software—to be housed in the host's facilities;

- technical support; service management of the hardware and software; and

- content distribution services, including content caching and video streaming.

In exchange, the host provides, among other things, a physical building, rack space where Google's computer hardware is mounted, power, and network interfaces.  All ownership rights, title, and intellectual property rights in and to the equipment (i.e., the hardware and software provided by Google) remain with Google and/or its licensors.

16.     Multiple ISP-hosted GGC servers are in this District.  Google provides the location of its GGC servers, namely, Sherman, Tyler, and Texarkana.



Source: *Uniloc 2017 LLC v. Google LLC*, Case No. 2:18-cv-00550, Dkt. 1 at 8 (E.D. Tex. 2018); https://peering.google.com/#/infrastructure.

17.     Suddenlink Communications, for example, is an ISP that hosts six GGC servers in Tyler, Texas.

18.     CableOne is an ISP that hosts three GGC servers in Sherman, Texas, and three GGC servers in Texarkana, Texas.

19.     Google caches content on these GGC servers located in this District.

20.     Google's GGC servers located in this District cache content that includes, among other things: (a) maps; (b) messages; and (c) digital content from the Google Play store.

21.     Google's GGC servers located in this District deliver cached content for the items in the preceding paragraph to residents in this District.

22.     Google generates revenue (a) by delivering video advertising; (b) from apps; and (c) from digital content in the Google Play store.

23.     Google treats its GGC servers in this District the same as it treats all of its other GGC servers in the United States.

24.     The photographs below show Google's GGC servers hosted by Suddenlink and the building where they are located at 322 North Glenwood Boulevard, Tyler, Texas 75702.


Exterior


Interior Rack Spaces


Google GGC Servers

25.     Google not only exercises exclusive control over the digital aspects of the GGC, but also exercises exclusive control over the physical server and the physical space within which the server is located and maintained.

26.     This District has previously determined that the GGC server itself and the place of the GGC server, both independently and together, meet the statutory requirement of a "physical place."  *See Seven Networks, LLC v. Google LLC*, Case No. 2:17-cv-00442-JRG, Dkt. 235 at 24 (E.D. Tex. July 19, 2018).

27.     Likewise, this District has determined that GGC servers and their several locations within this District constitute "regular and established place[s] of business" within the

meaning of the special patent venue statute.  *See Seven Networks, LLC v. Google LLC*, Case No. 2:17-cv-00442-JRG, Dkt. 235 at 38 (E.D. Tex. July 19, 2018).

28.     Similarly, this District has determined that the GGC servers and their locations within the various ISPs within this District are "places of Google" sufficient to meet the statutory requirement of § 1400(b).  *See Seven Networks, LLC v. Google LLC*, Case No. 2:17-cv-00442-JRG, Dkt. 235 at 41 (E.D. Tex. July 19, 2018).

*Google's Google Wi-Fi at Starbucks Locations in This District*

29.     Google provides Wi-Fi infrastructure and Wi-Fi service at Starbucks locations in this District.[10]  Google and Starbucks entered into an agreement in which Google provides its Google Wi-Fi or Google Fiber service at all Starbucks locations in this District, including at Starbucks stores and at Target stores.[11]  First-time customers connect and use Google Wi-Fi on their devices in this District by selecting "Google Starbucks" from their respective device's list of available wireless networks and entering their respective name, email address, and postal code.  Return customers are automatically connected to Google Wi-Fi on their respective devices at any Google Wi-Fi location.  Upon connecting to the Google Wi-Fi locations in this District, Google provides connected customers with Internet access over Google's infrastructure and services.

---

[10] *See* https://customerservice.starbucks.com/app/answers/detail/a_id/5796/~/how-can-i-access-wifi-in-starbucks-stores%3F;
https://support.google.com/fiber/answer/3289712?visit_id=637050364069556126-264756134&hl=en&rd=1;
[11] https://www.starbucks.com/store-locator?map=32.467135,-95.387478,8z



Source: https://www.starbucks.com/store-locator/store/15590/mc-cann-loop-281-407-w-loop-281-longview-tx-756054449-us.

30.     Google uses its Google Wi-Fi infrastructure and Google Wi-Fi services at Starbucks locations in this District to provide customers with telecommunications services through its own phone carrier network, Google Fi.  Google Fi is owned and operated by Google. In order to use Google Fi phone service in this District, Google provides its customers with special SIM cards and software to connect to and automatically switch between four sources of network infrastructure and services: T-Mobile, Sprint, US Cellular, and public Wi-Fi networks. As described below, Google has entered into agreements with T-Mobile, Sprint, and US Cellular to lease the carriers' infrastructure and services to provide Google Fi customers with voice and

data services.  As a fourth source, Google Fi uses public Wi-Fi networks, including the Google Wi-Fi at Starbucks locations in this District, to provide its phone carrier service.  The Google Wi-Fi at Starbucks locations in this District are fixed geographical locations.  They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent.  They are "of the defendant" because Google has contractual and/or property rights to use the Google Wi-Fi locations to operate its businesses, including the Google Fi phone carrier business.

31.     Google determines whether a Google Fi customer in this District uses a certain Wi-Fi network, including the Google Wi-Fi networks at Starbucks locations, using the Google-provided SIM card and software on the customer's phone.



Source: https://fi.google.com/about/coverage/

*Google's "Google Fi"*

32.     As described above, Google owns, operates, and provides telecommunications infrastructure and service in this District through its own phone carrier network, Google Fi. Google provides cellular and Wi-Fi infrastructure and services for phone, messaging, and data services in this District.  Google provides its customers voice and high-speed data coverage (4G LTE) for cities such as Tyler, Longview, and Marshall, Texas.



Source: https://fi.google.com/coverage?q=Marshall%2C$20TX$2C%20USA

33.     The cell towers used for Google's services are fixed geographical locations.  They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent.  They are "of the defendant" because Google has contractual and/or property rights to use the cell towers to operate its business. Google also ratifies the service locations through its coverage lookup service.



Source: https://fi.google.com/about/coverage/

34.     With this coverage lookup service, Google advertises its ability to provide cell coverage in this District and its selected cell towers in and near this District to provide the advertised coverage (e.g., 2G, 3G, or 4G LTE) depending on the location in the District.  *See* https://fi.google.com/about/coverage/.  Google is not indifferent to the location of its cell towers. It "established" and "ratified" them where they are for a specific business purpose.

35.     Residents of this District also directly contract with and are billed by Google for these services.



Source: https://fi.google.com/about/plan/

36.     Google also determines which cell tower a particular Google Fi customer will use while within this District.

What determines when Google Fi moves me between cellular networks? 

You can only move between networks with a phone designed for Fi. When multiple carriers are available, Google Fi will move you to the network that our analysis shows will give you the best Fi experience at your current location, whether that is 4G LTE, 3G, or 2G. We're constantly learning and improving, to account for factors such as newly-built towers or newly-available radio frequencies. And if your current network is providing weak or no coverage, we'll adjust in real time to find you a stronger connection.

Source: https://fi.google.com/about/faq/#coverage-3

*Google Cloud Interconnect (GCI) and Direct Peering*

37.     Google additionally services its customers in this District (and other districts) through yet other facilities it has in this District.  More specifically, Google's equipment is located in this District in Denton County, Texas at two facilities referred to as "Megaport."  At the MegaPort facilities in this District, Google offers two services:  Google Cloud Interconnect (GCI) and Direct Peering.

38.     Google's Cloud Interconnect (GCI) is a service from Google that allows customers to connect to Google's Cloud Platform directly, as opposed to, for example, over the public network.

Interconnect  >  Documentation



# Partner Interconnect Overview

SEND FEEDBACK

Google Cloud Interconnect - Partner (Partner Interconnect) provides connectivity between your on-premises network and your VPC network through a supported service provider. A Partner Interconnect connection is useful if your data center is in a physical location that can't reach a Dedicated Interconnect colocation facility or if your data needs don't warrant an entire 10 Gbps connection.

## Before you use Partner Interconnect

 **Note:** Partner Interconnect requires that you separately obtain services from a third-party network service provider. Google is not responsible for any aspects of Partner Interconnect provided by the third-party service provider nor any issues outside of Google's network.

- You must be familiar with the Cloud Interconnect terminology described in Key Terminology.
- You must work with a supported service provider to establish connectivity between their network and your on-premises network.

## How does Partner Interconnect work?

Service providers have existing physical connections to Google's network that they make available for their customers to use.

After you establish connectivity with a service provider, you can request a Partner Interconnect connection from your service provider. After the service provider provisions your connection, you can start passing traffic between your networks by using the service provider's network.

The following diagram provides a high-level overview of a customer using a service provider to connect to Google:



Basic Partner Interconnect topology (click to enlarge)

Source: https://cloud.google.com/interconnect/docs/concepts/partner-overview

15

39.     Google's Direct Peering services allows its customers to exchange Internet traffic between its customers' networks and Google's at one of its broad-reaching Edge network locations, such as the one at Megaport.

Interconnect  >  Documentation  >  Google Cloud



# Direct Peering

SEND FEEDBACK

Direct Peering allows you to establish a direct peering connection between your business network and Google's edge network and exchange high-throughput cloud traffic. This capability is available at any of more than 100 locations in 33 countries around the world. Visit Google's peering site to find out more information about Google's edge locations.

When established, Direct Peering provides a direct path from your on-premises network to Google services, including the full suite of Google Cloud Platform products. Traffic from Google's network to your on-premises network also takes that direct path, including traffic from VPC networks in your projects. GCP customers must request direct egress pricing be enabled for each of their projects after they have established direct peering with Google. Refer to pricing for details.

## Considerations

If used with GCP, Direct Peering doesn't produce any custom routes in a VPC network. Traffic sent from resources in a VPC network leaves by way of a route whose next hop is either a *default Internet gateway* (a default route, for example) or a Cloud VPN tunnel. If the destination for the traffic matches your on-premises IP ranges, it could be eligible for discounted egress rates, as described below.

To send traffic through Direct Peering using a route whose next hop is a Cloud VPN tunnel, the IP address of your on-premises network's VPN gateway must be in your configured destination range.

Direct Peering exists outside of Google Cloud Platform. Instead of Direct Peering, the recommended methods of access to GCP are Cloud Interconnect – Dedicated or Cloud Interconnect – Partner.

See the next section to determine which of these solutions is right for you.

Source: https://cloud.google.com/interconnect/docs/how-to/direct-peering

40.     In establishing such a direct connection, Google provides the necessary physical equipment at Megaport to enable GCI or Direct Peering connections.  Google advertises only two GCI facilities in Texas—the Equinix facility and the Megaport facility (the latter one is located in this District).



Source: https://www.cloud.google.com/interconnect/docs/concepts/service-providers#by-location

     41.    Clicking on the Megaport link from the screenshot of Google's website in the preceding paragraph directs a customer to the details of directly connecting to Google's equipment at the facility in this District to connect to Google's GCI service.



Source: https://www.megaport.com/services/google-cloud-partner-interconnect/

     42.    More particularly, the Google-linked Megaport site explains how a Google customer can use the Google Cloud Platform console to enable connection to the Google equipment at the Megaport facility in this District.



Source: https://knowledgebase.megaport.com/cloud-connectivity/google-cloud/

43.     Both Google's website and Megaport's website advertise the peering service and point a consumer to the website, www.peeringdb.com, for details.  The peering DB website lists Megaport Dallas as a Google peering facility.

### Who can peer with Google?

Any Google Cloud Platform customers that meet Google's technical peering requirements specified in our peering page can be considered for the direct peering service. Google can peer at the Internet Exchanges (IXPs) and private facilities that are listed in our PeeringDB entry.

Source: https://cloud.google.com/interconnect/docs/how-to/direct-peering

Megaport – Google IX Peering Locations:

- MegaIX: Ashburn, Dallas, Los Angeles, Seattle, Singapore, Sofia, Sydney
- AMS-IX: Chicago, New York, Bay Area

See PeeringDB for additional details.

Source: https://knowledgebase.megaport.com/cloud-connectivity/google-cloud-platform-direct-peering/



Source: https://www.peeringdb.com/net/433

44.     Megaport's website also confirms, in its "Looking Glass" tool, the presence of Google at its facility—(AS No. 15169).

```
IP Address        AS       Status       Since (UTC)          Rcvd (Best)    Description                                      Last Error
==================================================================================================================================
206.53.174.1      64222    Established  2017-11-07 10:30:41  64202 (0)      dal eq1 rs1
206.53.174.6      20940    Established  2018-07-19 19:32:50   32 (32)       Akamai International B.V.
206.53.174.7      15169    Established  2019-08-07 21:01:15   162 (162)     Google Inc
206.53.174.8      15133    Passive      2017-08-16 00:07:03   0 (0)         Verizon Digital Media Services Inc BGP Error: Hold timer expired
206.53.174.9      14127    Established  2019-05-11 03:02:48   7 (7)         iland
206.53.174.10     19682    Passive      2019-07-09 11:30:23   0 (0)         TeleFlex.io                                      Received: Peer de-configured
206.53.174.11     13335    Established  2019-05-08 07:30:34   7 (7)         CloudFlare
206.53.174.12     8075     Established  2019-04-09 07:47:49   0 (0)         Microsoft
206.53.174.13     10310    Established  2018-11-06 06:11:28   152 (152)     Yahoo
206.53.174.14     6939     Established  2018-04-18 08:59:23   63804 (63769) Hurricane Electric
206.53.174.16     40731    Established  2017-07-25 06:42:55   10 (10)       Latin IP LLC
206.53.174.16     16570    Established  2018-06-25 07:00:19   12 (12)       TELoIP Inc.
206.53.174.17     6507     Established  2017-11-07 10:30:44   14 (14)       Riot Games
206.53.174.18     49362    Established  2019-08-04 02:04:42   3 (3)         DSV AS
206.53.174.19     19682    Established  2019-07-30 08:21:54   1 (1)         TeleFlex.io
206.53.174.20     13414    Passive      2017-08-18 03:53:24   0 (0)         Twitter
206.53.174.21     14127    Established  2019-05-11 03:02:41   32 (32)       iland
206.53.174.22     15164    Established  2018-05-02 21:48:40   31 (31)       Unite Private Networks
206.53.174.23     16524    Established  2018-06-26 15:09:49   2 (2)         MetTel
206.53.174.24     14127    Established  2019-05-11 03:03:19   32 (0)        iland
2606:a980:0:7::1  64222    Established  2017-11-07 10:30:52   27315 (0)     dal eq1 rs1
2606:a980:0:7::6  20940    Established  2018-07-19 19:33:01   1 (1)         Akamai International B.V.
2606:a980:0:7::7  15169    Established  2019-08-07 21:01:59   30 (30)       Google Inc
2606:a980:0:7::8  15133    Passive      2017-08-04 06:25:46   0 (0)         Verizon Digital Media Services Inc BGP Error: Hold timer expired
2606:a980:0:7::9  14127    Passive      2018-11-28 22:48:40   0 (0)         iland
2606:a980:0:7::a  19682    Passive      2019-01-25 16:52:06   0 (0)         TeleFlex.io
2606:a980:0:7::b  13335    Passive      2019-08-08 07:31:05   2 (2)         CloudFlare
2606:a980:0:7::c  8075     Established  2019-04-09 07:48:21   0 (0)         Microsoft
2606:a980:0:7::d  10310    Established  2018-11-06 06:11:44   44 (5)        Yahoo
2606:a980:0:7::e  6939     Established  2018-04-18 08:59:25   27280 (27276) Hurricane Electric
2606:a980:0:7::f  40731    Passive      2016-08-12 19:10:25   0 (0)         Latin IP LLC
2606:a980:0:7::10 16570    Passive      2017-09-22 19:05:13   0 (0)         TELoIP Inc.
2606:a980:0:7::11 6507     Passive      2016-10-19 01:33:18   0 (0)         Riot Games
2606:a980:0:7::12 49362    Passive      2018-06-14 07:37:26   0 (0)         DSV AS
2606:a980:0:7::13 19682    Passive      2019-07-25 11:22:59   0 (0)         TeleFlex.io
2606:a980:0:7::14 13414    Passive      2017-08-18 03:53:37   0 (0)         Twitter
2606:a980:0:7::15 14127    Passive      2017-10-10 20:00:59   0 (0)         iland
2606:a980:0:7::16 15164    Established  2018-10-25 02:06:14   2 (2)         Unite Private Networks
2606:a980:0:7::17 16524    Passive      2018-05-04 19:21:22   0 (0)         MetTel
2606:a980:0:7::18 14127    Passive      2019-03-06 01:48:07   0 (0)         iland
```

Source: https://lg.megaport.com/

45.     Both of Megaport's "Dallas" locations are in the Eastern District of Texas in Denton County.[12]  The larger Megaport facility, the Carrollton facility, is located at 1649 West Frankford Road, and is the largest of its kind in the State of Texas.[13]  The smaller Megaport facility, the Lewisville facility, is located at 2501 S. State Highway 121.[14]

46.     The Google equipment at Megaport's facilities which provides the GCI and Direct Peering services for Google customers are fixed geographical locations.  They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent.  They are "of the defendant" because Google holds contractual and/or property rights to use this space and to maintain this equipment.  Google also

---

[12] https://www.megaport.com/blog/cyrusone-brings-dallas-closer-cloud/.
[13] *Id.*
[14] *Id.*

ratifies the equipment through advertising of the Megaport location as authorized to provide these Google services.

*Other Google Presence in this District*

47.     In addition to the Google presence described above, Google has other pervasive contracts in this District.

48.     Google has multiple authorized repair centers in the Eastern District of Texas.  A resident can visit Google's website to find a list of these repair centers:

Source:  https://support.google.com/store/answer/7182296?hl=en

49.     Google's only authorized walk-in repair center, uBreakiFix, lists at least four

facilities in this District:



Source: https://www.ubreakifix.com/google



Source: https://www.ubreakifix.com/google

50.     Google and uBreakiFix teamed up to offer free repairs to those impacted by Hurricane Florence.[15]

51.     uBreakiFix has fixed geographical locations.  They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent.  These stores are "of the defendant" because Google has contractual rights with uBreakiFix—the only authorized walk-in repair centers in the United States.  Google also ratifies these facilities through its advertising of them through its website.

52.     Google also has branded, mail-in repair service that is contracted with a company called KMT Wireless, LLC, d/b/a Cynergy Hitech.  Cynergy Hitech receives phones at its facility in Grapevine, Texas.

---

[15] *See* https://www.ubreakifix.com/blog/hurricane-florence

## Find an authorized repair partner

If your Pixel phone needs repair, the damage might be covered under warranty (based on the type of issue and your device model). Learn more about getting your Pixel phone repaired ⧉ .

Repair options may vary depending on the country where you bought your phone and the country you are in currently, as some parts cannot be repaired or replaced outside of country of purchase. If you have questions for a local repair partner, use the contact information in the table below.

### Find a repair partner

Use the table below to find available repair partners in your region. If there isn't an option available for your country, contact us ⧉ .

Choose your country:   [ United States  ▾ ]

| Country | Provider | Devices | Type of service | Repair type | Contact |
|---------|----------|---------|-----------------|-------------|---------|
| United States | Google ⧉ | All Pixel phones | Mail-in and Walk-in[1] | In-warranty[2] and out-of-warranty | • Google ⧉ |

[1] Walk-in repair service in the US is provided by uBreakiFix. uBreakiFix repairs in- and out-of-warranty devices and damage types in the US.

[2] Mail-in and walk-in services in the US support in-warranty repairs for Pixel 3a and 3a XL only, and out-of-warranty repairs for all Pixel phone types.

In US and Canada, replacement of parts or product service is made available for a minimum of three years after end of production for all phones through Google or its service providers.

Source:  https://support.google.com/store/answer/7182296?hl=en

    53.    Google has operated and is currently operating its Google Maps Street View business and services in this District.  For example, the image below shows the Google Maps Street View of the Eastern District of Texas courthouse in Marshall.

24



Source: https://www.google.com/maps/@32.5447301,-
94.3670612,3a,75y,170.09h,88.95t/data=!3m6!1e1!3m4!1smECZXlUFylR2yu5E-
6wj2g!2e0!7i13312!8i6656

Furthermore, in the lower right-hand corner of the Google Street View above, the image is

credited to Google and states that it was captured in December 2018.



54.    Google also operates a Street View car in and around this District in order to

provide the Google Maps Street View service.[16]

55.    In addition to the above Google Street View image, Google operates and

continues to operate a fleet of Google Street View vehicles in this District, including in the

---

[16] *See* https://www.google.com/streetview/explore/.

counties of Houston, Trinity, Polk, Angelina, Anderson, VanZandt, Denton, and Collin, as shown below.



Source: https://www.google.com/streetview/explore/

56.   Google also has operated and currently operates its Google Express business and services in this District.  Google Express allows residents of this District to shop—directly from Google's websites—for select products with companies that Google has contracted with.



Source: https://express.google.com/u/0/about

To verify which stores a user may shop, a resident enters his or her zip code and begins shopping at the Google contracted stores.  The image below shows the Google Express website showing that its business and services are available in this District.



Sources: https://www.google.com/express/

57.     Google provides its Google Express business and services to the residents of this District by advertising and inviting the residents of this District, then Defendant arranges for a

delivery company to bring the goods and products purchased through the Google Express website to the residents of this District.[17]  This service uses fixed geographical stores in this District.  They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent.  They are "of the defendant" because Google ratifies the stores (and selects products of the stores) through its website.  Only information provided by Google through its service can be purchased, although the store may have other items for sale.

58.     Google previously leased office space in this District for about 50 people through its Frisco, Texas office.

59.     Google also provides services to businesses and schools in this District, including email services, word processing software, electronic file storage services, and video conferencing services.  Google brands such services as "G Suite" services.  Non-limiting examples of such businesses and schools include the Frisco Independent School District, as shown below.[18]

---

[17] *See* https://support.google.com/express/answer/4561693?hl=en.
[18] http://schools.friscoisd.org/hs/lebanontrail/site/resources/google-apps-information.

## GOOGLE APPS FOR EDUCATION

**What is it?**

Your FISD Google Account provides you with many helpful educational resources. It contains access to your Frisco ISD email account and a Google Drive account where you can create, store, and share documents. In Google Drive, you can create documents, spreadsheets, presentations, drawings, flowcharts, and forms. This account also contains a Google calendar and the ability to set up your own YouTube channel. Remember that these are school accounts and should be utilized as such.

**Where is it?**

There is a direct link to a login box for our student accounts on the parent and student section of the Frisco ISD web site. However, you do not need the official FISD Google Login box to access your child's account.

**How do I login?**

Each student in FISD has a Google login. The username is your Frisco ISD email address, which is firstname.lastname.###@k12.friscoisd.org

where the ### is the last three digits of your student id#. This address uses the full legal first name and full legal last name of the student, and does not recognize nicknames. All teachers have access to student gmail addresses and can help if you aren't sure what your username is.

The password will most likely be the student birth date in 8 digits MMDDYYYY.

Source: http://schools.friscoisd.org/hs/lebanontrail/site/resources/google-apps-information

60. Google also provides advertising services to businesses in this District, including soliciting reviews of patrons that have visited a business in the Eastern District of Texas, as shown below.



Source: Product Testing at https://www.google.com/maps

61.     Google also monitors traffic conditions in this District.  For example, traffic

conditions between a McDonalds and the Federal Courthouse in Marshall, as shown below.



Source: Product Testing at https://www.google.com/maps

62.     Separate and apart from its Google Fi mobile service, Google also provides

telephone services to residents in this District through a product it calls Google Voice.[19]

---

[19] https://voice.google.com/u/0/signup.



Source: https://voice.google.com/u/0/signup

63.     Google provides Software-as-a-Service applications, including email and server space, to Texas public universities.  Non-limiting examples of such universities are Texas A&M University (which has facilities in this District) and Texas A&M Commerce (located in this District), as show below.



Source: http://google.tamu.edu/

Welcome Lions to your new LeoMail 2.0 found in your myLEO homepage located
at myLEO.tamu-commerce.edu.
We hope you take some time to look through your new student email. As a
reminder the new email is a [REDACTED] and share many features that a
regular gmail account has.

In addition to email, you will have the ability to build your own contacts
list and use the built in calendar for planning and organizing.
The most asked question has revolved around the ability to sync this email
account with your mobile or smart phone device. The answer is ³yes². The
Portal Implementation Team is working on getting both the email and your NEW
myLEO account connected in an application that will be available in June.

Source: http://mailman.tamuc.edu/pipermail/students/2012-May/004325.html

*Other Google Presence in the State*

64.     Google also has a pervasive connection to the State of Texas through multiple

commercial activities.

65.     Google has purchased land in Midlothian, Texas where it is currently constructing a $600 million data center.[20]

66.     Since 2007, Google has employed "hundreds" of employees in Texas, including in Austin, Texas.[21]

67.     Google has at least one current office located in Austin, on North MoPac Expressway,[22] and additional office locations at University Park and Austin Children's Museum.[23]

68.     Google has leased over 200,000 square feet of office space in Austin, Texas at 500 West 2nd Street.[24]

69.     Google has, as of August 2019, job postings for Addison, Texas; Dallas, Texas; Midlothian, Texas; and Austin, Texas (89 postings) including positions such as:

- Key Account Director/Executive, Google Cloud (Austin, Texas);

- B4 WAN Engineer (Addison, Texas);

- Site Manager, Hardware Operations (Midlothian, Texas); and

- Technical Writer (Dallas, Texas).

70.     Upon information and belief, Defendant has at least eleven (11) entities registered in Texas, including:

- GOOGLE LLC

---

[20] *See* https://www.dallasnews.com/business/real-estate/2019/06/14/google-s-massive-600m-data-center-takes-shape-in-ellis-county-as-tech-giant-ups-texas-presence/.

[21] According to Gerardo Interiano, Google's public affairs and government relations manager, in a statement.  *See* http://www.statesman.com/business/google-lease-200-000-square-feet-newdowntown-austin-tower/SANZSa3du8QQ4k8ytOC2rJ/.

[22] *See* https://www.google.com/intl/en/about/locations/?region=north-america.

[23] *See* http://www.statesman.com/business/google-lease-200-000-square-feet-new-downtownaustin-tower/SANZSa3du8QQ4k8ytOC2rJ/.

[24] *See* http://www.statesman.com/business/google-lease-200-000-square-feet-new-downtownaustin-tower/SANZSa3du8QQ4k8ytOC2rJ/.

- GOOGLE ACQUISITION HOLDING, INC.

- GOOGLE COMPARE AUTO INSURANCE SERVICES INC.

- GOOGLE COMPARE CREDIT CARDS INC.

- GOOGLE COMPARE MORTGAGES INC.

- GOOGLE FIBER INC.

- GOOGLE FIBER NORTH AMERICA INC.

- GOOGLE FIBER TEXAS, LLC

- GOOGLE INC.

- GOOGLE NORTH AMERICA INC.

- GOOGLE PAYMENT CORP.

71.     Google has provided, currently provides, and is currently offering to provide its Google Fiber services to the residents of Austin, Texas and San Antonio, Texas.[25]

72.     Google has invested $200,000,000 in the Spinning Spur Wind Farm Project in Oldham County, Texas.[26]

73.     Google provides the State of Texas with aerial imagery.[27]

74.     Google acquired Waze in 2013,[28] and Google's Waze traffic app partners with cities and businesses in Texas, non-limiting examples include the Waze partnership with the City of Fort Worth to provide constant traffic data to the city.[29]  Another non-limiting example

---

[25] *See* https://fiber.google.com/cities/austin/ and https://fiber.google.com/cities/sanantonio/.
[26] *See* https://www.chooseenergy.com/blog/energy-news/google-invests-200m-in-west-texas-windfarm/.
[27]  See http://www.bisconsultants.com/affordable-imagery-for-texas-government-entities-fromgoogle/.
[28] See https://techcrunch.com/2013/06/11/its-official-google-buys-waze-giving-a-social-databoost-to-its-location-and-mapping-business/.
[29] *See* http://dfw.cbslocal.com/2016/12/14/forth-worth-partners-with-waze-traffic-app/.

includes the Waze partnership with the Genesis Group in Tyler to decrease emergency response times.[30]

## **PATENTS-IN-SUIT**

75.     On July 3, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,213,970 (the "'970 Patent") entitled "Method of Utilizing Forced Alerts for Interactive Remote Communications."  A true and correct copy of the '970 Patent is attached hereto as Exhibit A.

76.     On August 2, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,408,055 (the "'055 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks."  A true and correct copy of the '055 Patent is attached hereto as Exhibit B.

77.     On September 13, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,445,251 (the "'251 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks."  A true and correct copy of the '251 Patent is attached hereto as Exhibit C.

78.     On October 11, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,467,838 (the "'838 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks."  A true and correct copy of the '838 Patent is attached hereto as Exhibit D.

79.     On August 29, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,749,829 (the "'829 Patent") entitled "Method to Provide Ad Hoc

---

[30] *See* https://genesispulse.com/2015/10/06/the-genesis-group-joins-waze-connected-citizensprogram/.

and Password Protected Digital and Voice Networks."  A true and correct copy of the '829

Patent is attached hereto as Exhibit E.

80.     On November 14, 2017, the United States Patent and Trademark Office duly and

legally issued U.S. Patent No. 9,820,123 (the "'123 Patent") entitled "Method to Provide Ad Hoc

and Password Protected Digital and Voice Networks."  A true and correct copy of the '123

Patent is attached hereto as Exhibit F.

## **FACTUAL ALLEGATIONS**

81.     Malcolm K. "Cap" Beyer, Jr., a graduate of the United States Naval Academy and

a former U.S. Marine, is the CEO of AGIS Software and a named inventor of the AGIS patent

portfolio.  Mr. Beyer founded Advanced Ground Information Systems, Inc. ("AGIS, Inc.")

shortly after the September 11, 2001 terrorist attacks because he believed that many first-

responder and civilian lives could have been saved through the implementation of a better

communication system.  He envisioned and developed a new communication system that would

use integrated software and hardware components on mobile devices to give users situational

awareness superior to systems provided by conventional military and first-responder radio

systems.

82.     AGIS, Inc. developed prototypes that matured into its LifeRing system.  LifeRing

provides first-responders, law enforcement, and military personnel with what is essentially a

tactical operations center built into hand-held mobile devices.  Using GPS-based location

technology and existing or special-purpose cellular communication networks, LifeRing users can

exchange location, heading, speed, and other information with other members of a group, view

each other's locations on maps and satellite images, and rapidly communicate and coordinate

their efforts.

83.     AGIS Software licenses its patent portfolio, including the '970, '055, '251, '838, '829, and '123 Patents, to AGIS, Inc.  AGIS, Inc.'s LifeRing product practices one or more of the patents in the AGIS portfolio and AGIS, Inc. has marked its products accordingly.

84.     AGIS Software and all previous assignees of the Patents-in-Suit have complied with the requirements of 35 U.S.C. § 287(a).

85.     Google licenses the Android operating system to third parties, who design their own products that utilize the Android operating system.  The Android operating system is the most widely used in smartphones and other mobile devices.

86.     Google manufactures, uses, sells, offers for sale, and/or imports into the United States products, such as [1] Google smartphones and tablets (including, but not limited to, the Nexus S, Galaxy Nexus, Nexus 4, Nexus 5, Nexus 6, Nexus 5X, Nexus 6P, Nexus 7 1st Gen., Nexus 7 2nd Gen., Nexus 10, Google Pixel, Pixel XL, Pixel 2, Pixel 2 XL, Pixel 3, Pixel 3 XL, Pixel 3a, Pixel 3a XL, Pixel C, and Pixel Slate), [2] Chrome-based notebooks (including, but not limited to, Chromebook Pixel 2013, Chromebook Pixel 2015, and Pixelbook), [3] the Android operating system (including, but not limited to, versions 2.2 through 10.0, [4] the Android Wear OS (including, but not limited to, versions 4.4W1, 4.4W2, Android Wear 1.0 through Android Wear 2.9, and Wear OS 1.0 through Wear OS 2.8), [5] Android Auto, [6] Android-based applications and/or services (including, but not limited to, Google Maps, Find My Device (formerly Android Device Manager), Trust Contacts, Family Link, Play Protect, Chrome browser, Hangouts, Latitude, Messages, Android Messenger, Google Plus, Google Duo, Google Contacts, and Android Auto, and [8] Google's servers for providing services related to the above Android OS, Android Wear OS, Android Auto, and Android-based applications (collectively, "Accused Products").  The Accused Products include applications and software including, but

not limited to, the above-listed applications and/or features as components of its operating system and as downloads from a pre-installed application store, such as the Play Store, in the Accused Products.  The Accused Products, together with Google's software components such as, but not limited to, Google Maps, Find My Device (former Android Device Manager), Trust Contacts, Family Link, Play Protect, Chrome browser, Hangouts, Latitude, Messages, Android Messenger, Google Plus, Google Duo, Google Contacts, and Android Auto apps are configured to interact with Google's servers which provide services related to the above Android OS, Android Wear OS, Android Auto, and Android-based applications, among other services provided by Google and utilized by Google's customers when operating the Accused Products, such as the Google smartphones and tablets, Chrome-based notebooks, Android Wear, and Android Auto, identified herein.

87.    The Accused Products include functionalities that allow users to form groups with other users such that users may view each other's locations on a map and engage in communication including text, voice, and multimedia-based communication.  Additionally, the users may form groups that include their own devices in order to track their own lost or stolen devices, as shown below; to send and receive communications from their own lost or stolen Accused Products; and to remotely control the lost or stolen Accused Products.





## COUNT I
### (Infringement of the '970 Patent)

88.     Paragraphs 1 through 87 are incorporated herein by reference as if fully set forth in their entireties.

89.     AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any Accused Products and/or products that embody the inventions of the '970 Patent.

90.     Defendant has and continues to directly infringe at least claim 10 of the '970 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

91.     Defendant has and continues to indirectly infringe at least claim 10 of the '970 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the infringing Accused Products and by instructing users of the Accused Products to perform at least the method of claim 10 in the '970 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '970 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, direct infringement of at least claim 10 of the '970 Patent in violation of 35 U.S.C. § 271(b).

92.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 10 of the '970 Patent in the United States because Defendant's customers use such Accused Products, including at least the Find My Device (formerly known as Android Device Manager) applications and/or services or the Accused Products with the Find My Device

applications and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least claim 10 of the '970 Patent in violation of 35 U.S.C. § 271.  For example, Google directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations and/or user guides, such as those located at one or more of the following: https://support.google.com/android/answer/6160491?hl=en;

https://support.google.com/android/answer/3265955?hl=en;

https://www.youtube.com/watch?time_continue=10&v=Kic-A51Wqgk, and Google agents and representatives located within this Judicial District.  Defendant is thereby liable for infringement of the '970 Patent under 35 U.S.C. § 271(b).

93.     For example, Defendant directly infringes and/or indirectly infringes by instructing its customers to infringe using Accused Products as shown below.



**Step 1: Check that Find My Device is on**

If you turned off Find My Device:

1. Find Google Settings in one of these places (depending on your device):
   - In your device's Settings app ⚙️, tap **Google**.
   - Open a separate app called Google Settings ⚙️.
2. Tap **Security**.
3. Under "Find My Device" or "Android Device Manager," turn on:
   - **Remotely locate this device**
   - **Allow remote lock and erase**

If you have a tablet that multiple people use, only the tablet's owner can change these settings.

**Step 2: Check that Location is on**

1. Find Google Settings in one of these places (depending on your device):
   - In your device's Settings app ⚙️, tap **Google**.
   - Open a separate app called Google Settings ⚙️.
2. Tap **Location**.
3. Turn on **Location**.

**Step 3: Check that Google Play visibility is on**

If you hide a device on Google Play, it won't show in Find My Device. To show a device:

1. Open play.google.com/settings   .
2. Under "Visibility," pick the device.

**Step 4: Check that you can find your device**

1. Open android.com/find   and sign in to your Google Account.
2. If you have more than one device, click this device at the top of the screen.

## Install the app

To be prepared to use one Android phone or tablet to find another, install the Find My Device app  🟢.

Source: https://support.google.com/accounts/answer/3265955?hl=en

42



Find My Device helps you locate your lost Android and lock it until you get it back.

Features

**See your phone, tablet or watch** on a map. If current location isn't available, you'll see the last known location.

Source: https://play.google.com/store/apps/details?id=com.google.android.apps.adm&hl=en_US



Find My Device helps you locate your lost Android and lock it until you get it back.

Features

**See your phone, tablet or watch** on a map. If current location isn't available, you'll see the last known location.

Source: https://play.google.com/store/apps/details?id=com.google.android.apps.adm&hl=en_US

Find My Device helps you locate your lost Android and lock it until you get it back.

Features
**See your phone, tablet or watch** on a map. If current location isn't available, you'll see the last known location.

**Use indoor maps** to help you to find your device in airports, malls, or other large buildings

**Navigate to your device with Google Maps** by tapping the device location and then the Maps icon

**Play a sound** at full volume, even if your device is on silent

**Erase the device or lock it** with a custom message and contact number on lock screen

**See network and battery status**

**See hardware details**

Permissions Notice
• Location: Needed to show your device's current location on the map
• Contacts: Needed to access the email address associated with your Google account

Find My Device is part of Google Play Protect

Source: https://play.google.com/store/apps/details?id=com.google.android.apps.adm&hl=en_US

94.      AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '970 Patent in an amount to be proved at trial.

95.      AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '970 Patent for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

96.      Defendant has committed and continues to commit acts of infringement that Defendant actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '970 Patent.  Defendant's

infringement of the '970 Patent has been and continues to be willful, entitling AGIS Software to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## COUNT II
### (Infringement of the '055 Patent)

97.     Paragraphs 1 through 87 are incorporated herein by reference as if fully set forth in their entireties.

98.     AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any Accused Products and/or products that embody the inventions of the '055 Patent.

99.     Defendant has and continues to directly infringe at least claim 8 of the '055 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

100.     Defendant has and continues to indirectly infringe at least claim 8 of the '055 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '055 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '055 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '055 Patent in violation of 35 U.S.C. § 271(b).

101.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 8 of the '055 Patent in the United States because Defendant's customers use the Accused Products, including at least the Google Maps applications and/or services or the

Accused Products with the Google Maps applications and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least claim 8 of the '055 Patent in violation of 35 U.S.C. § 271.  Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations and/or user guides, such as those located at one or more of the following:

https://support.google.com/maps/answer/7326816?co=GENIE.Platform%3DAndroid&hl;

https://support.google.com/maps/answer/7047426?hl=en&ref_topic=7301134;

https://support.google.com/maps/answer/7326816?hl=en&ref_topic=7301134&co=GENIE.Platf orm%3DAndroid&oco=1=en, and Google agents and representatives located within this Judicial District.  Defendant is thereby liable for infringement of the '055 Patent under 35 U.S.C. § 271(b).

102.    For example, the Accused Products are pre-installed with at least the Google Maps app which allows users to share their locations and view other users' locations on a map and to communicate with those users via the Google Maps app (as shown below) which is integrated with Google Messages or Android Messenger and which is also pre-installed on the exemplary Accused Products.

103.    Additionally, the exemplary Accused Products allow users to establish groups and to exchange messages via interaction with Google's servers which provide the Google Cloud service, Google Maps service, and Google Messages service, among other relevant services.  The exemplary Accused Products further allow users to retrieve map information from multiple sources including street-view maps, as well as satellite renderings.



104.    The exemplary Accused Products are programmed to obtain contact information from other users' devices where that contact information includes phone numbers. (e.g., https://support.google.com/nexus/answer/6118731?hl=en&ref_topic=6118711).

105.    The exemplary Accused Products are further programmed to facilitate the initiation of Internet Protocol (IP) based communication between devices with SMS messages and other text messages.  This functionality is available at least through Google Hangouts and the Messages apps.  (e.g., https://play.google.com/store/apps/details?id=com.google.android.apps.messaging&hl=en; https://play.google.com/store/apps/details?id=com.google.android.talk&hl=en).  The IP- and SMS-based messages include location information as depicted below.  (e.g., https://blog.google/topics/rcs/delivering-rcs-messaging-android-users-worldwide/).



106.    This location information is presented on interactive displays on the exemplary

Accused Products which include interactive maps and a plurality of user-selectable symbols

corresponding to other devices.  These symbols are positioned on the map at positions

corresponding to the locations of the other devices, as depicted below.  (e.g.,

https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/).



107.    The exemplary Accused Products are further programmed to permit interaction with the display where a user may select one or more symbols and where the exemplary Accused Products further permit data to be sent to other devices based on that interaction.  The exemplary Accused Products are further programmed to permit users to specify additional locations and to communicate those user-specified locations to other users via symbols on an interactive display as depicted below.  (e.g.,

https://support.google.com/maps/answer/144361?co=GENIE.Platform%3DAndroid&hl=en).

# Embed a map or share a location

On your computer, you can embed a map, Street View image, driving directions, or search into your website or blog. On your computer, phone, or tablet, you can share a location or map with others over email, Google+, Facebook, Twitter, or text.

**ANDROID**    COMPUTER    IPHONE & IPAD

## Share a map or location

1. Open the Google Maps app 🗺️.
2. Search for a place. Or find a place on the map then touch and hold to drop a pin.
3. At the bottom, tap the place's name or address.
4. Tap Share ⤴️. If you don't see this, tap More ⋮ > **Share**.
5. Select an app. It'll send a link that shows the place in Google Maps.

## Share your E.T.A

After you start your drive, you can share your destination, estimated arrival time, and where you are on the route.

1. Open the Google Maps app 🗺️.
2. Set a driving destination. Learn how to navigate to a place.
3. After you start navigation, tap **More** ∧ > **Share trip progress**.
4. Choose a person from the list.
5. Tap **Share**.
6. Location Sharing will stop when you reach your destination or stop navigating.

• To stop sharing before you arrive, tap **More** ⋮ > **Stop sharing**.

108.    AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '055 Patent in an amount to be proved at trial.

109.    AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '055 Patent for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

110.    Defendant has committed and continues to commit acts of infringement that Defendant actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '055 Patent.  Defendant's infringement of the '055 Patent has been and continues to be willful, entitling AGIS Software to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## COUNT III
### (Infringement of the '251 Patent)

111.    Paragraphs 1 through 87 are incorporated herein by reference as if fully set forth in their entireties.

112.    AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '251 Patent.

113.    Defendant has and continues to directly infringe at least claim 24 of the '251 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

114.    Defendant has and continues to indirectly infringe at least claim 24 of the '251 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products and by instructing users of the Accused

Products to perform methods claimed in the '251 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '251 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, direct infringement of the '251 Patent.

115.    For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 24 of the '251 Patent in the United States because Defendant's customers use the Accused Products, including at least the Google Maps applications and/or services or the Accused Products with the Google Maps applications and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least one claim of the '251 Patent in violation of 35 U.S.C. § 271.  Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations and/or user guides, such as those located at one or more of the following:

https://support.google.com/maps/answer/7326816?co=GENIE.Platform%3DAndroid&hl=;

https://support.google.com/maps/answer/7047426?hl=en&ref_topic=7301134;

https://support.google.com/maps/answer/7326816?hl=en&ref_topic=7301134&co=GENIE.Platform%3DAndroid&oco=1=en, and Google agents and representatives located within this Judicial District.  Defendant is thereby liable for infringement of the '251 Patent under 35 U.S.C. § 271(b).

116.    For example, Defendant's Accused Products are pre-installed with at least the Google Maps app which allows users to share their locations and view other users' locations on a map and to communicate with those users via the Google Maps app (as shown below) which is

integrated with Google Messages or Android Messenger and which is also pre-installed on the

Accused Products.



117.    For example, the exemplary Accused Products allow users to establish groups and

to exchange messages via interaction with Google's servers which provide the Google Cloud

service, Google Maps service, and Google Messages service, among other relevant services.  The

exemplary Accused Products further allow users to retrieve map information from multiple

sources including street-view maps.

118.    The exemplary Accused Products are programmed to receive messages from other

devices where those messages relate to joining groups as depicted below.  (e.g.,

https://support.google.com/plus/answer/3302509?hl=en&co=GENIE.Platform%3DAndroid&oco

=1; https://support.google.com/mail/answer/30970?hl=en).

**Create a group**

1. Go to Google Contacts ↗.
2. On the left under "Labels," click **Create label**. (If you don't see "Labels," go to group contacts in old Contacts.)
3. Type a name, then click **OK**.

Add contacts to a group label                                                    ⌃

  1. To select contacts, check the boxes next to their names.

  2. In the top right, click Label ▬. (If you don't see Label ▬, go to group contacts in old Contacts.)

  3. Choose the groups you want to add the contacts to. You'll see a checkmark appear next to the groups you chose.

119.    The exemplary Accused Products are further programmed to facilitate

participation in the groups by communicating with a server and sending to and receiving location

information as depicted below.  (e.g.,

https://developers.google.com/maps/documentation/android-api/location).

## The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

- Determine the device location.

- Listen for location changes.

- Determine the mode of transportation, if the device is moving.

- Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Google Maps Android API, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

120.    This location information is presented on interactive displays on the exemplary

Accused Products which include interactive maps and a plurality of user selectable symbols

corresponding to other devices.  These symbols are positioned on the map at positions

corresponding to the locations of the other devices as depicted below.  (e.g.,

https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/).



121.    The exemplary Accused Products are further programmed to permit users to request and display additional maps by, for example, moving the map screen and/or by selecting satellite image maps.  The exemplary Accused Products are further programmed to permit interaction with the display where a user may select one or more symbols and where the exemplary Accused Products further permit data to be sent to other devices based on that interaction.

122.    AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '251 Patent in an amount to be proved at trial.

123.    AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '251 Patent for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

124.    Defendant has committed and continues to commit acts of infringement that Defendant actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '251 Patent.  Defendant's infringement of the '251 Patent has been and continues to be willful, entitling AGIS Software to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## <u>COUNT IV</u>
### (Infringement of the '838 Patent)

125.     Paragraphs 1 through 87 are incorporated herein by reference as if fully set forth in their entireties.

126.     AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any Accused Products and/or products that embody the inventions of the '838 Patent.

127.     Defendant has and continues to directly infringe at least claim 54 of the '838 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

128.     Defendant has and continues to indirectly infringe at least claim 54 of the '838 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '838 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '838 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce direct infringement of the '838 Patent.

129.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 54 of the '838 Patent in the United States because Defendant's customers use the Accused Products, including at least the Google Maps applications and/or services or the Accused Products with the Google Maps applications and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby

directly infringe at least one claim of the '838 Patent in violation of 35 U.S.C. § 271.  Defendant

directly and/or indirectly intentionally instructs its customers to infringe through training videos,

demonstrations, brochures, installations and/or user guides such as those located at one or more

of the following:

https://support.google.com/maps/answer/7326816?co=GENIE.Platform%3DAndroid&hl;

https://support.google.com/maps/answer/7047426?hl=en&ref_topic=7301134;

https://support.google.com/maps/answer/7326816?hl=en&ref_topic=7301134&co=GENIE.Platf

orm%3DAndroid&oco=1=en, and Google agents and representatives located within this Judicial

District.  Defendant is thereby liable for infringement of the '838 Patent under 35 U.S.C.

§ 271(b).

130.    For example, Defendant's Accused Products are pre-installed with at least the

Google Maps app which allows users to share their locations and view other users' locations on a

map and to communicate with those users via the Google Maps app (as shown below) which is

integrated with Google Messages or Android Messenger and which is also pre-installed on the

Accused Products.



131.   Additionally, the exemplary Accused Products allow users to establish groups and to exchange messages via interaction with Google's servers which provide the Google Cloud service, Google Maps service, and Google Messages service, among other relevant services.  The exemplary Accused Products further allow users to retrieve map information from multiple sources including street-view maps, as well as satellite renderings.

132.   The exemplary Accused Products are programmed to form and join groups by transmitting messages.  (e.g.,

https://support.google.com/plus/answer/3302509?hl=en&co=GENIE.Platform%3DAndroid&oco=1; https://support.google.com/mail/answer/30970?hl=en).

### Create a group

1. Go to Google Contacts ☑.
2. On the left under "Labels," click **Create label**. (If you don't see "Labels," go to group contacts in old Contacts.)
3. Type a name, then click **OK**.

Add contacts to a group label                                          ⌃

1. To select contacts, check the boxes next to their names.
2. In the top right, click Label ▬. (If you don't see Label ▬, go to group contacts in old Contacts.)
3. Choose the groups you want to add the contacts to. You'll see a checkmark appear next to the groups you chose.

133.   The exemplary Accused Products are further programmed to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information as depicted below.  (*See, e.g.*,

https://developers.google.com/maps/documentation/android-api/location).

## The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

- Determine the device location.
- Listen for location changes.
- Determine the mode of transportation, if the device is moving.
- Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Google Maps Android API, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

134.    This location information is presented on interactive displays on the exemplary Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices.  These symbols are positioned on the map at positions corresponding to the locations of the other devices as depicted below.  (e.g., https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/).



135.    The exemplary Accused Products are further programmed to permit users to request and display additional maps from additional servers by, for example, moving the map screen and/or by selecting satellite images or other types of maps.  The exemplary Accused Products are further programmed to permit interaction with the display where a user may select

one or more symbols and where the exemplary Accused Products further permit data to be sent to other devices based on that interaction.

136.   AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '838 Patent in an amount to be proved at trial.

137.   AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '838 Patent for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

138.   Defendant has committed and continues to commit acts of infringement that Defendant actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '838 Patent.  Defendant's infringement of the '838 Patent has been and continues to be willful, entitling AGIS Software to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## COUNT V
### (Infringement of the '829 Patent)

139.   Paragraphs 1 through 87 are incorporated herein by reference as if fully set forth in their entireties.

140.   AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any Accused Products and/or products that embody the inventions of the '829 Patent.

141.   Defendant has and continues to directly infringe at least claim 68 of the '829 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

142.    Defendant has and continues to indirectly infringe at least claim 68 of the '829 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '829 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '829 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce direct infringement of the '829 Patent in violation of 35 U.S.C. § 271(b).

143.    For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 68 of the '829 Patent in the United States because Defendant's customers use the Accused Products, including at least the Google Maps applications and/or services or the Accused Products with the Google Maps applications and/or services installed on the Accused Products, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least one claim of the '838 Patent in violation of 35 U.S.C. § 271.  Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations and/or user guides such as those located at one or more of the following:

https://support.google.com/maps/answer/7326816?co=GENIE.Platform%3DAndroid&hl;

https://support.google.com/maps/answer/7047426?hl=en&ref_topic=7301134;

https://support.google.com/maps/answer/7326816?hl=en&ref_topic=7301134&co=GENIE.Platform%3DAndroid&oco=1=en, and Google agents and representatives located within this Judicial

District.  Defendant is thereby liable for infringement of the '829 Patent under 35 U.S.C.

§ 271(b).

144.    For example, Defendant's Accused Products are pre-installed with at least the

Google Maps app which allows users to share their locations and view other users' locations on a

map and to communicate with those users via the Google Maps app (as shown below) which is

integrated with Google Messages or Android Messenger and which is also pre-installed on the

Accused Products.



145.    Additionally, the exemplary Accused Products allow users to establish groups and

to exchange messages via interaction with Google's servers which provide the Google Cloud

service, Google Maps service, and Google Messages service, among other relevant services.  The

exemplary Accused Products further allow users to retrieve map information from multiple

sources including street-view maps, as well as satellite renderings.

146.    The exemplary Accused Products are programmed to form and join groups by

transmitting messages.  (e.g.,

https://support.google.com/plus/answer/3302509?hl=en&co=GENIE.Platform%3DAndroid&oco

=1; https://support.google.com/mail/answer/30970?hl=en).

**Create a group**

1. Go to Google Contacts ⬈ .
2. On the left under "Labels," click **Create label**. (If you don't see "Labels," go to group contacts in old Contacts.)
3. Type a name, then click **OK**.

**Add contacts to a group label**                                          ⌃

1. To select contacts, check the boxes next to their names.
2. In the top right, click Label ⬛ . (If you don't see Label ⬛ , go to group contacts in old Contacts.)
3. Choose the groups you want to add the contacts to. You'll see a checkmark appear next to the groups you chose.

147.     The exemplary Accused Products are further programmed to facilitate

participation in the groups by communicating with one or more servers and sending to and

receiving location information as depicted below.  (*See, e.g.*,

https://developers.google.com/maps/documentation/android-api/location).

## The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

- Determine the device location.
- Listen for location changes.
- Determine the mode of transportation, if the device is moving.
- Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Google Maps Android API, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

148.     This location information is presented on interactive displays on the exemplary

Accused Products which include interactive maps and a plurality of user selectable symbols

corresponding to other devices.  These symbols are positioned on the map at positions

corresponding to the locations of the other devices as depicted below.  (e.g.,

https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/).



149.    The exemplary Accused Products are further programmed to permit users to request and display additional maps from additional servers by, for example, moving the map screen and/or by selecting satellite images or other types of maps.  The exemplary Accused Products are further programmed to permit interaction with the display where a user may select one or more symbols and where the exemplary Accused Products further permit data to be sent to other devices based on that interaction.

150.    AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '829 Patent in an amount to be proved at trial.

151.    AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '829 Patent for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

152.    Defendant has committed and continues to commit acts of infringement that Defendant actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '829 Patent.  Defendant's infringement of the '829 Patent has been and continues to be willful, entitling AGIS Software to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## COUNT VI
### (Infringement of the '123 Patent)

153.    Paragraphs 1 through 87 are incorporated herein by reference as if fully set forth in their entireties.

154.    AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any Accused Products and/or products that embody the inventions of the '123 Patent.

155.    Defendant has and continues to directly infringe at least claim 23 of the '123 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

156.    Defendant has and continues to indirectly infringe at least claim 23 of the '123 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '123 Patent.  For example, Defendant, with knowledge that the Accused Products infringe the '123 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce direct infringement of the '123 Patent.

157.    For example, Defendant has indirectly infringed and continues to indirectly infringe at least claim 23 of the '123 Patent in the United States because Defendant's customers use the Accused Products, including at least the Google Maps applications and/or services or the Accused Products with the Google Maps applications and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby

64

directly infringe at least one claim of the '123 Patent in violation of 35 U.S.C. § 271.  Defendant

directly and/or indirectly intentionally instructs its customers to infringe through training videos,

demonstrations, brochures, installations and/or user guides such as those located at one or more

of the following:

https://support.google.com/maps/answer/7326816?co=GENIE.Platform%3DAndroid&hl;

https://support.google.com/maps/answer/7047426?hl=en&ref_topic=7301134;

https://support.google.com/maps/answer/7326816?hl=en&ref_topic=7301134&co=GENIE.Platf

orm%3DAndroid&oco=1=en, and Google agents and representatives located within this Judicial

District.  Defendant is thereby liable for infringement of the '123 Patent under 35 U.S.C.

§ 271(b).

158.    For example, Defendant's Accused Products are pre-installed with at least the

Google Maps app which allows users to share their locations and view other users' locations on a

map and to communicate with those users via the Google Maps app (as shown below) which is

integrated with Google Messages or Android Messenger and which is also pre-installed on the

Accused Products.



159.    Additionally, the exemplary Accused Products allow users to establish groups and to exchange messages via interaction with Google's servers which provide the Google Cloud service, Google Maps service, and Google Messages service, among other relevant services.  The exemplary Accused Products further allow users to retrieve map information from multiple sources including street-view maps, as well as satellite renderings.

160.    The exemplary Accused Products are programmed to form and join groups by transmitting messages.  (e.g., https://support.google.com/plus/answer/3302509?hl=en&co=GENIE.Platform%3DAndroid&oco =1; https://support.google.com/mail/answer/30970?hl=en).

## Create a group

1. Go to Google Contacts ↗.
2. On the left under "Labels," click **Create label**. (If you don't see "Labels," go to group contacts in old Contacts.)
3. Type a name, then click **OK**.

### Add contacts to a group label                                                        ︿

   1. To select contacts, check the boxes next to their names.
   2. In the top right, click Label ▪. (If you don't see Label ▪, go to group contacts in old Contacts.)
   3. Choose the groups you want to add the contacts to. You'll see a checkmark appear next to the groups you chose.

161.    The exemplary Accused Products are further programmed to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information as depicted below.  (See, e.g., https://developers.google.com/maps/documentation/android-api/location).

## The Google Play services Location API

The Google Play services Location API is the preferred method for adding location awareness to your Android application. It includes functionality that lets you:

- Determine the device location.
- Listen for location changes.
- Determine the mode of transportation, if the device is moving.
- Create and monitor predefined geographical regions, known as geofences.

The location APIs make it easy for you to build power efficient, location-aware applications. Like the Google Maps Android API, the Location API is distributed as part of the Google Play services SDK. For more information on the Location API, please refer to the Android training class Making Your App Location Aware or the Location API Reference. Code examples are included as part of the Google Play services SDK.

162.    This location information is presented on interactive displays on the exemplary Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices.  These symbols are positioned on the map at positions corresponding to the locations of the other devices as depicted below.  (e.g., https://arstechnica.com/gadgets/2017/03/location-sharing-finally-returns-to-google-maps/)



163.    The exemplary Accused Products are further programmed to permit users to request and display additional maps from additional servers by, for example, moving the map screen and/or by selecting satellite images or other types of maps.  The exemplary Accused

Products are further programmed to permit interaction with the display where a user may select one or more symbols and where the exemplary Accused Products further permit data to be sent to other devices based on that interaction.

164.    AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '123 Patent in an amount to be proved at trial.

165.    AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '123 Patent for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

166.    Defendant has committed and continues to commit acts of infringement that Defendant actually knew or should have known constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '123 Patent.  Defendant's infringement of the '123 Patent has been and continues to be willful, entitling AGIS Software to an award of treble damages, reasonable attorney fees, and costs in bringing this action.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, AGIS Software prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.    Entry of judgment declaring that Defendant's infringement of the Patents-in-Suit has been willful and deliberate;

c.    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or

participation with it, from further acts of infringement of the Patents-in-Suit;

      d.     An order awarding damages sufficient to compensate AGIS Software for

Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty,

together with interest and costs;

      e.     An order awarding AGIS Software treble damages under 35 U.S.C. § 284 as a

result of Defendant's willful and deliberate infringement of the Patents-in-Suit;

      f.     Entry of judgment declaring that this case is exceptional and awarding AGIS

Software its costs and reasonable attorney fees under 35 U.S.C. § 285; and

      g.     Such other and further relief as the Court deems just and proper.

Dated:  November 4, 2019                Respectfully submitted,

                                      **MCKOOL SMITH, P.C.**

                                      */s/ Alfred R. Fabricant*
                                      Samuel F. Baxter
                                      Texas State Bar No. 01938000
                                      sbaxter@mckoolsmith.com
                                      Jennifer L. Truelove
                                      Texas State Bar No. 24012906
                                      jtruelove@mckoolsmith.com
                                      **MCKOOL SMITH, P.C.**
                                      104 E. Houston Street, Suite 300
                                      Marshall, Texas 75670
                                      Telephone: (903) 923-9000
                                      Facsimile: (903) 923-9099

                                      Alfred R. Fabricant
                                      NY Bar No. 2219392
                                      Email: afabricant@brownrudnick.com
                                      Peter Lambrianakos
                                      NY Bar No. 2894392
                                      Email:  plambrianakos@brownrudnick.com
                                      Vincent J. Rubino, III
                                      NY Bar No. 4557435
                                      Email:  vrubino@brownrudnick.com
                                      **BROWN RUDNICK LLP**
                                      7 Times Square

New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

**ATTORNEYS FOR PLAINTIFF,
AGIS SOFTWARE DEVELOPMENT
LLC**