CONFIDENTIAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **AGIS SOFTWARE DEVELOPMENT LLC,** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | **Filed Under Seal** |
| | § | |
| v. | § | |
| | § | Case No. 2:19-cv-00361-JRG |
| **GOOGLE LLC**, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS FOR IMPROPER VENUE**

CONFIDENTIAL

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF ISSUE TO BE DECIDED (L.R. CV-7(A)(1)) .................................. 2

III.    FACTUAL BACKGROUND ................................................................................... 2

     A.    Plaintiff AGIS And Its Complaint ................................................................ 2

     B.    Google Has No Offices Or Relevant Connections In This District ...................... 3

     C.    Google's Alleged Connections To This District ................................................ 4

        1.    The Federal Circuit's Intervening *In re Google* Decision Holds
           That GGC Servers Fail To Confer Venue.................................................. 4

        2.    Wi-Fi Service At Starbucks Locations In Texas Was Discontinued
           Four Months Before AGIS's Complaint.................................................... 5

        3.    Google Fi Is Deployed In This District Through Third Parties .................. 6

        4.    Google's Cloud Interconnect (GCI) and Direct Peering Services
           Are Deployed By Third-Party Megaport .................................................. 6

IV.     ARGUMENT: VENUE IS IMPROPER IN THE EASTERN DISTRICT OF
     TEXAS................................................................................................................. 7

     A.    Google Has No "Regular And Established Place Of Business" Here. ................. 8

        1.    The Federal Circuit's Intervening *In re Google* Decision Disposes
           Of AGIS's Reliance On GGC Servers As A Basis For Venue.................. 8

        2.    Google's Involvement With Starbucks Wi-Fi Ceased In July 2019,
           Before AGIS's Complaint........................................................................ 9

        3.    Google Fi Is Not A "Physical Place" Or *Of Google* ............................... 10

        4.    Third-Party Facilities Supporting GCI and Direct Peering Are Not
           Places *Of Google*.................................................................................. 10

        5.    AGIS's Other Alleged Google Connections And Services Fail To
           Establish Venue ...................................................................................... 11

        6.    Operations Outside the District Or Pre-Suit ........................................... 13

     B.    AGIS Cannot Establish a Nexus Between Alleged Acts of Infringement
        and Google's Purported "Regular and Established Place of Business."............. 14

V.      ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO NDCA ...... 15

VI.     CONCLUSION................................................................................................... 15

i

CONFIDENTIAL

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*AGIS Software Dev., LLC v. ZTE Corp.*,
No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) ............................ 12

*AGIS Software Development LLC v. Samsung Elecs. Co.*,
2:19-cv-362 (E.D. Tex.) ................................................................................................ 2

*AGIS Software Development LLC v. Waze Mobile Ltd.*,
2:19-cv-359 (E.D. Tex.) ................................................................................................ 2

*Godo Kaisha IP Bridge 1 v. Intel Corp.*,
No. 2:17-CV-00676-RWS-RSP, 2018 WL 5728524 (E.D. Tex. Aug. 29, 2018) .................. 14

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ............................................................... passim

*In re Google LLC*,
No. 2019-126, 2020 WL 728165 (Fed. Cir. Feb. 13, 2020) ............................................ passim

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ...................................................................... 15

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018) ................................................................. 7, 12

*Jeffrey Galion, Inc. v. Joy Mfg. Co.*,
323 F. Supp. 261 (N.D. W. Va. 1971) ............................................................... 14

*Kranos IP Corp. v. Riddell, Inc.*,
No. 2:17-cv-443-JRG, 2017 WL 3704762  (E.D. Tex. Aug. 28, 2017) .................................. 7

*Moran v. Smith*,
No. 5:15-CV-1121-DAE, 2016 WL 4033268 (W.D. Tex. July 27, 2016) ............................ 15

*Pers. Audio, LLC v. Google, Inc.*,
280 F. Supp. 3d 922 (E.D. Tex. 2017) ..................................................................... 9

*Scaramucci v. FMC Corp.*,
258 F. Supp. 598 (W.D. Okla. 1966) ..................................................................... 14

*SEVEN Networks, LLC v. Google LLC*,
315 F. Supp. 3d 933 (E.D. Tex. 2017) ............................................................ 9, 13

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
137 S. Ct. 1514 (2017) ....................................................................................... 7

OMM_US:77315896.4

**CONFIDENTIAL**

## TABLE OF AUTHORITIES
*(continued)*

**Pages**

**Statutes**

28 U.S.C. § 1400(b) ................................................................................................................. 7, 9

28 U.S.C. § 1406(a) ................................................................................................................. 15

OMM_US:77315896.4

**CONFIDENTIAL**

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(3), Defendant Google LLC ("Google") moves to dismiss or alternatively transfer this action for improper venue.  Under *TC Heartland*, venue in a patent case is only proper (1) where the defendant resides, or (2) in a district in which the defendant has a regular and established place of business and has committed acts of infringement.  Today and at the filing of Plaintiff AGIS's Complaint, Google was incorporated in Delaware, with its headquarters and principal place of business in Mountain View, California, in the Northern District of California ("NDCA").  Google does not have any real estate, offices, or any other real property in this District, much less one that qualifies as "regular and established" under the standards that the Federal Circuit has set forth in *In re Google LLC*, No. 2019-126, 2020 WL 728165 (Fed. Cir. Feb. 13, 2020) and *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

AGIS's Complaint does not support a contrary conclusion.  It alleges a kitchen sink of alleged connections between Google and this District.  AGIS relies first and foremost on Google Global Cache ("GGC") servers located in this District.  But in the past week, the Federal Circuit held that GGC servers in this District do not qualify as a "regular and established place of business," and cannot serve as a basis for finding venue as to Google.  *In re Google LLC*, 2020 WL 728165, at *7-8.  In any event, the GGC servers in this District were deactivated and ceased serving content to users on November 23, 2018 — nearly a year before AGIS filed its Complaint.

AGIS's other venue allegations likewise fail the Federal Circuit test.  Those allegations include:  (1) Google's support for Wi-Fi service at Starbucks locations in this District, which ended months before the Complaint was filed; (2) Google's alleged provision of telecommunications or cloud computing services through networking equipment that is in fact owned and operated by third parties; and (3) repair centers are owned and operated by third parties.  These allegations fail to establish venue for a single, dispositive reason:  there is not a fixed, geographical location in

CONFIDENTIAL

this District where employees or agents of Google are regularly present and conducting Google's business. The remaining contacts are outside the District or the relevant time period. Accordingly, AGIS's action should be dismissed or, alternatively, transferred to the NDCA.

## II.    STATEMENT OF ISSUE TO BE DECIDED (L.R. CV-7(A)(1))

Should this case be dismissed or transferred under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue over Google in this District?

## III.    FACTUAL BACKGROUND

### A.    Plaintiff AGIS And Its Complaint

AGIS filed its Complaint on November 4, 2019, alleging that Google infringes one or more claims of six patents: U.S. Patent Nos. 8,213,970, 9,408,055, 9,445,251, 9,467,838, 9,749,829, and 9,820,123 ("Patents-in-Suit"). D.I. 1 ¶1. That same day, AGIS filed two related lawsuits against Samsung and Waze, which allege infringement of two of the six Patents-in-Suit, the '829 and '123 Patents. *See AGIS Software Development LLC v. Waze Mobile Ltd.*, 2:19-cv-359 (E.D. Tex.); *AGIS Software Development LLC v. Samsung Elecs. Co.*, 2:19-cv-362 (E.D. Tex.).

AGIS's Complaint against Google defines "Accused Products" as including a litany of over 50 Google products (including smartphones, tablets, laptops, wearables) and contends that those products infringe when used "together with" over a dozen other "Google[] software components." *Id*. ¶86. But the Complaint's counts and specific infringement allegations for each Patent-in-Suit center on only a handful of Google's "software components" — Google Maps, Find My Device, Google Messages, Android Messenger, Google Hangouts, and Google Plus ("Accused Google Applications"). *Id*. ¶¶88-166. AGIS alleges that these specific Accused Google Applications infringe when used to locate user devices or share location information. *Id*.

AGIS alleges that it is a Texas company with its principal place of business at 100 W. Houston Street, Marshall, TX 75670. *Id*. ¶1. But, according to Texas's Secretary of State and

CONFIDENTIAL

Office of the Comptroller, AGIS's address is 211 E. 7th Street, Suite 620, Austin, Texas, which is the address of its agent for service of process. Exs. 3-4. AGIS's Certificate of Formation identifies one corporate member, AGIS Holdings Inc. ("AGIS Holdings"), a Florida corporation located at 92 Lighthouse Drive, Jupiter, Florida, with Florida-resident directors and officers. Exs. 1-2, 5. AGIS has no known employees in Texas, and it conducts no business in Texas.

**B.    Google Has No Offices Or Relevant Connections In This District**

Google is a Delaware corporation based in Mountain View, California, in the NDCA, and has been headquartered there since 2003. Shaper Decl. ¶5. When AGIS filed its Complaint in November 2019: (1) Google did not (and still does not) own or lease any office space, retail space, or other real property in this District; (2) Google had (and has) no employees who work at any Google offices in this District; and (3) Google's only Texas offices were (and are) located outside this District. Lim Decl. ¶¶3-5.

Google has developed each of the Accused Google Applications in the NDCA. Shaper Decl. ¶¶7-12. As summarized in the table below, Google employees with relevant knowledge about the Accused Google Applications are located in the NDCA. *Id*. ¶¶8-13.

| Google Employee | Team | Witness Location | Team Location |
|---|---|---|---|
| ███████████ ███████ | Location Sharing (GMM) | Mountain View, CA | Mountain View, CA |
| ███████████ ███████████ | Location Sharing Platform (GMM) | Mountain View, CA | Mountain View, CA |
| ████████ ██████████████ ███████████ | Find My Device | Mountain View, CA | Mountain View, CA and London, England |
| █████████████ ██████████ ██████████ | Find My Device | Mountain View, CA | Mountain View, CA; London, England |

CONFIDENTIAL

| ████████ | Messages / Android Messages | San Francisco, CA | Mountain View, CA; Kirkland, WA |
| ████████ | Google Hangouts | Sunnyvale, CA | Sunnyvale, CA |
| ████████ | Google Plus | Mountain View, CA | Mountain View, CA |

Google has no employees with relevant knowledge regarding the Accused Google Applications residing or working in this District, nor does Google keep any documents regarding the Accused Google Applications in this District. *Id*. ¶¶13, 16. Nearly all the documents, including highly proprietary source code, related to the Accused Google Applications are created and maintained by the employees working on those products and services. *Id*. ¶16. As listed above, employees with relevant knowledge of the Accused Google Applications are located primarily in or around Mountain View, California, and no such employees are in this District. *Id*. ¶¶13, 16.

### C.    Google's Alleged Connections To This District

To support venue, AGIS's Complaint alleges over a dozen purported connections between Google and this District. D.I. 1 ¶¶9-63. AGIS, however, only attempts to explain the first four connections alleged in its Complaint, and thus, Google presents the relevant facts for only those connections in this section. AGIS cursorily identifies other purported ties between Google and this District, and those ties are addressed in the Argument, Sections IV.A.5-6.

#### 1.    The Federal Circuit's Intervening *In re Google* Decision Holds That GGC Servers Fail To Confer Venue

The first basis for venue identified in AGIS's Complaint is GGC servers in this District. D.I. 1 ¶¶ 9-28. But since AGIS filed its Complaint, the Federal Circuit in *In re Google* held that GGC servers in this District do not provide a proper basis for venue over Google in this District. The Federal Circuit established "that a 'regular and established place of business' requires the

CONFIDENTIAL

regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"  2020 WL 728165, at *5.  Applying this legal test, the Federal Circuit concluded that Google did not have any employees or agents conducting its business in this District through the GGC servers.  *Id.* at *5-7.  To the contrary, the GGC servers in this District were hosted, installed, serviced, and maintained by third party Internet Service Providers (ISPs).  *Id.*; *see also* McCallion Decl. ¶¶6-12.  And those ISPs were not agents "conducting Google's business" through their activities for the GGC servers.  *Id.*  AGIS's Complaint contains no additional allegations that would alter this analysis.

Moreover, on November 23, 2018 — nearly a year before AGIS filed its Complaint initiating this action — the GGC servers located in this District were "drained," meaning they were deactivated and ceased serving content to users.  *Id.* ¶13.

### 2.    Wi-Fi Service At Starbucks Locations In Texas Was Discontinued Four Months Before AGIS's Complaint

The second basis for venue identified in AGIS's Complaint is Google's alleged provision of "Wi-Fi infrastructure and Wi-Fi service at Starbucks locations in this District."  D.I. 1 ¶¶29-31.



Henson Decl. ¶¶3, 6.

. *Id.* ¶5.

*Id.*

*Id.* ¶6.

In August 2019,                                      Google terminated its support for Wi-Fi service at most Starbucks locations in the United States, including for all

CONFIDENTIAL

Starbucks locations in the state of Texas.  *Id.* ¶9.  Thus, since at least August 2019, Google has ceased to have any involvement with Wi-Fi services at all Starbucks locations in this District.  *Id.*

### 3.    Google Fi Is Deployed In This District Through Third Parties

The third basis for venue identified in AGIS's Complaint is Google's provision of the Google Fi, a cellular subscriber-based service, in this District.  D.I. 1 ¶¶32-36.  Google Fi is deployed in this District using cell towers owned and controlled by third parties, not Google. Subburaj Decl. ¶¶3-4.  In particular, user devices supported by Google Fi have the ability to make calls and use data service nationwide using a combination of Wi-Fi networks available to users and cell towers and network infrastructure of third party carriers Sprint, T-Mobile, and U.S. Cellular.  *Id.*  Google does not own, lease, or exercise any control or decision-making authority with respect to any of the cell towers or network infrastructure of the third party carriers.  *Id.* ¶6. Google itself does not maintain any facilities, personnel, computer or network equipment in this District for establishing or maintaining the cellular infrastructure used by Google Fi, or facilitating the contracting for, or payment of, Google Fi services by customers.  *Id.* ¶7.

### 4.    Google's Cloud Interconnect (GCI) and Direct Peering Services Are Deployed By Third-Party Megaport

The fourth basis for venue identified in AGIS's Complaint is Google's Cloud Interconnect (GCI) and Direct Peering services, which AGIS alleges are deployed through equipment located at two facilities in this District that AGIS refers to as "Megaport."  D.I. 1 ¶¶ 37-46.  GCI and Direct Peering are services offered by Google that allow customers to connect to Google's network to access Google's cloud computing platform or other services.  Cha Decl. ¶¶3, 8.  In this District, customers cannot establish a direct physical link to Google's network.  Instead, customers can connect to Google's network through an independent, non-Google service provider, called a Partner Interconnect Service Provider (PISP).  *Id.* ¶6.  The PISP acts as a data-delivery service,

CONFIDENTIAL

like a digital UPS driver:  a customer passes its data on to the PISP, which then takes care of transferring it to Google's network — a step that can only occur outside this District.  *Id.* ¶¶6, 8.

One PISP is Megaport, a company that is entirely separate and independent of Google.  *Id.* ¶9.  Google does not own, lease, provide, maintain, or locate any equipment at Megaport's facilities, or have any personnel responsible for conducting any actions at those facilities.  *Id.* Google understands that Megaport owns no facilities in this District.  *Id.*  Google understands that another company, CyrusOne, owns data centers at two locations in this District (1649 Frankford Rd. in West Carrollton, Texas and 2501 S. State Hwy 121, Business Suite 500, Lewisville, Texas) and CyrusOne has a relationship with Megaport that allows the two companies to leverage each others' data centers for their respective customers.  *Id.* ¶10.  Google does not own, lease, provide, maintain, or locate any equipment at CyrusOne's facilities in this District or have any personnel responsible for conducting any actions at those facilities.  *Id.*

## IV.    ARGUMENT: VENUE IS IMPROPER IN THE EASTERN DISTRICT OF TEXAS

In a patent case, venue is proper only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  "[T]he Plaintiff bears the burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).   A district court may look to facts beyond the complaint when deciding a motion to dismiss based on improper venue.  *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-cv-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017).

As AGIS acknowledges. Google is organized in Delaware with a principal place of business in Mountain View, California.  *See* D.I. 1 at ¶ 2.  Therefore, under *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017), Google does not reside in this District for purposes of the patent venue statute.  And as explained below, AGIS cannot meet its burden to establish that Google has a "regular and established place of business" in this District.

CONFIDENTIAL

## A.    Google Has No "Regular And Established Place Of Business" Here.

In *Cray*, the Federal Circuit explained that for a defendant to have a regular and established place of business in a district:  "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  871 F.3d at 1360.  In *In re Google*, the Federal Circuit clarified that a regular and established place of business "requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"  2020 WL 728165, at *5.  None of AGIS's venue allegations meet these requirements.

### 1.    The Federal Circuit's Intervening *In re Google* Decision Disposes Of AGIS's Reliance On GGC Servers As A Basis For Venue

The Federal Circuit's recent decision in *In re Google* holds that GGC Servers in this District do not qualify as a regular and established place of business of Google and, thus, cannot provide a basis for venue over Google in this District.  In reaching its decision, the Federal Circuit reasoned that the GGC servers are hosted, installed, maintained, and serviced by third-party ISPs, not by Google or any Google employees.  2020 WL 728165, at *6-8.  The ISPs, in turn, were not agents regularly conducting the business of Google.  First, the ISPs' provision of network access to GGC servers did not establish an agency relationship because "Google has no right of interim control over the ISP's provision of network access."  *Id.* at *6.  Second, the ISPs' installation of GGC servers did not establish an agency relationship because "installation activity does not constitute the conduct of a 'regular and established' business, since it is a one-time event for each server."  *Id.*  Third, the ISPs' maintenance and service of GGC servers did not establish an agency relationship because "[m]aintaining equipment is meaningfully different from—as only ancillary to—the actual producing, storing, and furnishing to customers of what the business offers."  *Id.* at *7.  "[M]aintenance activities cannot, standing alone, be considered the conduct of Google's

CONFIDENTIAL

business." *Id*. In light of *In re Google*, then, AGIS cannot rely on GGC servers for venue.

At any rate, the GGC servers in this District ceased serving content to users on November 23, 2018 — nearly a year before AGIS filed its Complaint on November 4, 2019. Because, as this Court noted in *SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 941 n.7 (E.D. Tex. 2017), "[v]enue is assessed as of the time of filing of the complaint," AGIS cannot rely on the GGC servers to show Google has a "regular and established place of business."[1]

### 2.    Google's Involvement With Starbucks Wi-Fi Ceased In July 2019, Before AGIS's Complaint

AGIS similarly cannot rely on Google's support of Wi-Fi services at Starbucks locations in this District as a basis for venue because Google ceased providing that support in July 2019 — four months before AGIS filed its Complaint. *SEVEN*, 315 F. Supp. 3d at 941 n.7. Since at least August 2019, Google has not had any involvement with Wi-Fi services at any Starbucks locations in Texas or this District. Henson Decl. ¶9. And even before August 2019, Google's support for Wi-Fi services at retail locations of *Starbucks* could not have constituted a "regular and established place of business" of Google under *Cray*. For starters, a wireless network is not a "physical place" of business for purposes of *Cray*'s first requirement. ██████████████████

████████████████████████████████████████████████

████████████ Further, AGIS makes no allegation that any Google employees or agents were ever physically present at the Starbucks stores, or that Starbucks somehow acted as Google's agent.

---

[1] In *In re Google*, the Federal Circuit noted that "the regional circuits appear to be split on the exact timing for determining venue." 2020 WL 728165, at *1 n.1. This Court, however, has correctly determined that "[v]enue is assessed as of the time of filing of the complaint." 315 F. Supp. 3d at 941 n.7. The venue statute says an action "may be brought" in the district where the defendant "*has* a regular and established place of business," 28 U.S.C. § 1400(b) (emphasis added), not where the defendant *has had* a place of business, *see Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017). Thus, as the Federal Circuit elsewhere noted, the "clear intent of Congress" was to "restrict venue to where the defendant . . . *is conducting* business." *In re Google*, 2020 WL 728165, at *7 (emphasis added).

CONFIDENTIAL

*See In re Google*, 2020 WL 728165, at *5. 

*Id.* ¶6.

*Id.*

¶¶5-6.  Thus, neither the Access Point device nor any Starbucks location in this District was a regular and established place of business of Google.

### 3.  Google Fi Is Not A "Physical Place" Or *Of Google*

Google Fi is a cellular service that Google deploys using exclusively the networking equipment and infrastructure of third party cellular carriers (AT&T, T-Mobile, or Sprint). Subburaj Decl. ¶¶3-4.  Thus, Google Fi fails the requirements of *Cray* and *In re Google*.  Google Fi is not a "physical place" of business, such as "a building or a part of a building"; rather, it is a service that consists of the transmission of "electronic communications," which the Federal Circuit held cannot is not a "place" for purposes of the venue statute.  *Cray*, 871 F.3d at 1362.  And because Google neither owns the equipment or cell towers, nor has any say over where they are located or how they are operated, they cannot be a place of business *of Google*.  *Id.* at 1362-63. Further, there is no allegation that any employee or agent of Google was ever present conducting Google's business at the location of the equipment or cell towers.  Thus Google Fi does not constitute a regular and established place of business.  *In re Google*, 2020 WL 728165, at *5.

### 4.  Third-Party Facilities Supporting GCI and Direct Peering Are Not Places *Of Google*

The facts belie AGIS's allegations that Google's GCI and Direct Peering services are deployed through "Google equipment" at facilities referred to as "Megaport," or that Google holds contractual or property rights to use the space and maintain the equipment at the Megaport facilities. D.I. 1 ¶¶37-46.  First and foremost, Megaport is not Google — it is a different company.

CONFIDENTIAL

Cha Decl. ¶9.  Second, there is no "Google" "equipment at Megaport's facilities," as AGIS asserts. *Id*.  Megaport receives data from its GCI and Direct Peering customers in this District and then transfers that data to Google's servers outside this District.  *Id*. ¶¶6, 8.  Customers of Google's GCI and Direct Peering services can connect to Google's virtual network and cloud platform using Megaport's facilities and equipment.  *Id*. ¶¶6, 8-9.  Google does not own any portion of Megaport or own or lease any of Megaport's facilities.  *Id*. ¶9.[2]  Nor does Google provide any equipment to Megaport, or maintain or locate any of its equipment at Megaport to facilitate Megaport's connectivity capabilities.  *Id*.

Thus, neither Megaport itself nor any equipment located there is a place of business *of Google*.  The fact that Megaport may "provide[] Google with a service" — "network access" for some customers — is plainly insufficient to transform it into Google's place of business.  *In re Google*, 2020 WL 728165, at *6.  And AGIS has made no allegation of any employees or agents of Google with a "regular, physical presence" in this District in connection with Megaport, GCI, or Direct Peering services.  *Id*. at *5.  They provide no basis for venue.

### 5.    AGIS's Other Alleged Google Connections And Services Fail To Establish Venue

AGIS's Complaint provides a cursory listing of other alleged Google connections and services offered in this District, each more tenuous than the next.

First, AGIS alleges that "Google has multiple authorized repair centers in the Eastern District of Texas" and identifies centers operated by third party companies, uBreakiFix and Cynergy.  D.I. 1 ¶¶48-52.  AGIS's allegation fails on its own merits.  Nowhere in its Complaint does AGIS allege any facts suggesting that Google owns or controls the third-party repair centers

---

[2] Megaport also does not own any facilities in the District, but rather has a relationship with another company — CyrusOne — that does.  Cha Decl. ¶¶10-11.  Google has no more connection to CyrusOne than to Megaport.  *Id*.

CONFIDENTIAL

or any equipment in them.  Nor does AGIS allege any other facts that could support that those centers are *of Google.*  Indeed, the allegations supporting venue here are even more attenuated than those in another AGIS case, *AGIS Software Dev., LLC v. ZTE Corp.*, where this Court rejected AGIS's reliance on a call center that serviced the defendant's customers but was operated by a third party, because that call center did not constitute a place of business *of the defendant* under *Cray*'s third requirement..  No. 2:17-CV-00517-JRG, 2018 WL 4854023, at *3-4 (E.D. Tex. Sept. 28, 2018) (citing *In re ZTE (USA) Inc*., 890 F.3d 1008 (Fed. Cir. 2018)).  And AGIS has made no allegations to support that the employees of uBreakiFix or Cynergy are agents of Google conducting any Google's business.  *In re Google*, 2020 WL 728165, at *5.[3]

Next, AGIS alleges that Google's Street View service displays images that were captured by Google-operated cars traveling through this District.  D.I. 1 ¶¶53-55.  But traveling cars are not a "physical, geographical location" like a "building or a part of a building" under *Cray*'s first requirement.  871 F.3d at 1362.  ██████████████████████████████

████████████████████████████ Data Decl. ¶¶3-4.  And those cars also travel to and capture images at locations outside of this District and Texas.  *Id*. ¶4.  Given their transient presence, Street View cars cannot create a "regular and established place of business" in this District under *Cray*'s second requirement.

Next, AGIS points to various nationwide services as evidence of venue in this District, including Google Express; G-Suite services and Google Software-as-a-Service applications available through Google Cloud; Google Voice; and Waze's collection of traffic data.  D.I. 1 ¶¶56-

---

[3] In addition, uBreakiFix does not exclusively repair Google products.  Instead, it is a national repair service for many phone manufacturers, including Apple and Samsung.  See https://www.ubreakifix.com/company/about.  As to Cynergy, AGIS points to a facility in Grapevine, Texas (D.I. 1 ¶ 52), which is located in the Northern District.

CONFIDENTIAL

63.  These allegations amount to Google offering online services and products (that are also used by consumers nationwide) and are insufficient to establish a "regular and established place of business" in this District.  *See SEVEN*, 315 F. Supp. 3d at 951 n.26 (idea that "every handheld device sold by Verizon would become a place of business for Verizon" is "clearly . . . too far afield from the statutory text"); *see also In re Google*, 2020 WL 728165, at *4 ("In *Cray*, we rejected the notion that a 'virtual space' or 'electronic communications from one person to another' could constitute a regular and established place of business.").  And Google Express was merely a service that connects online users to popular retail stores to order the retailers' goods.  Krause Decl. ¶4. Shoppers in this District could use Google Express, just as they could in every district, but Google had no employees, factories, warehouses, storage facilities or delivery fleets in the District to operate the service.  *Id*. ¶5.  Absent any physical presence or property—real or personal—in the District, Google Express is not a regular and established place of business under *Cray*.

### 6.    Operations Outside the District Or Pre-Suit

AGIS also includes allegations regarding Google's "Presence in the State" that are not tied to this District.  D.I. 1 p. 32.  For example, AGIS identifies Google Fiber services provided in Austin and San Antonio, and it alleges that Google has also provided the State of Texas with aerial imagery.  *Id*. ¶¶71, 73.  But again, there is no connection to this District and no allegation that supports a "regular and established place of business" in this District.  Similarly, AGIS points to office space and real estate that either are outside of this District or were closed by Google years before the complaints were filed.  AGIS points to land purchased in Midlothian, Texas, Google offices in Austin, Texas, and an investment in a wind farm project in Oldham County, Texas.  *Id*. ¶¶65-68, 72.  But all of these properties are located outside the District, and thus have no bearing on whether Google should be subject to venue within the District.  And while AGIS alleges that Google "previously leased office space in this District for about 50 people through its Frisco, Texas

office," (*id*. ¶ 58), that office closed in December 2013. Once again, "[c]ourts determine venue under § 1400(b) by the facts and situation as of the date the suit is filed." *Godo Kaisha IP Bridge 1 v. Intel Corp.*, No. 2:17-CV-00676-RWS-RSP, 2018 WL 5728524, at *2 (E.D. Tex. Aug. 29, 2018). In sum, Google does not have any "place of business" in this District, much less one that qualifies as "regular and established" under the standards the Federal Circuit set forth in *Cray*.

> **B.    AGIS Cannot Establish a Nexus Between Alleged Acts of Infringement and Google's Purported "Regular and Established Place of Business."**

Beyond showing that a defendant has a regular and established place of business, courts have also required plaintiffs to identify a relationship between that place and the alleged infringement. *See Scaramucci v. FMC Corp.*, 258 F. Supp. 598, 602 (W.D. Okla. 1966); *Jeffrey Galion, Inc. v. Joy Mfg. Co.*, 323 F. Supp. 261, 266-67 (N.D. W. Va. 1971). While *SEVEN* concluded otherwise, that requirement is confirmed with the patent venue statute's history, *see Cray*, 871 F.3d at 1361 (noting § 1400(b)'s predecessor was passed to ensure "[j]urisdiction would not be conferred by '[i]solated cases of infringement' but 'only where a permanent agency is established'"). Here, AGIS's allegations center on features of the Accused Google Applications. D.I. 1 ¶¶88-166. None of Google's accused activities of "making, using, offering to sell, selling and/or importing" the Accused Google Applications occur at or are tied to any of the purported "regular and established places of business" in this District that AGIS identified. Google's design and development activities for the Accused Google Application occur primarily at its headquarters in Mountain View, California; none of that design and development work happens in this District. Shaper Decl. ¶¶7-13. To the extent the download and use of those applications by users in this District constitute "using" or "selling," those uses and sales bear no nexus to any of the tenuous connections that AGIS identifies in its Complaint, such as GGC servers, Starbucks Wi-Fi, Google Fi, Megaport facilities used for GCI and Direct Peering, or third party repair centers.

CONFIDENTIAL

## V.     ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO NDCA

Where venue is improper, as it is here, the district court "shall dismiss, or if it be in the interest of justice, transfer such [a] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  Should the Court determine that it is in the interest of justice to transfer these cases for lack of venue rather than dismiss them, Google requests that the Court transfer the cases to the NDCA "because 'witnesses, evidence, the underlying events, and [the defendant] are based there.'"  *See Moran v. Smith*, No. 5:15-CV-1121-DAE, 2016 WL 4033268, at *2 (W.D. Tex. July 27, 2016) (citation omitted).  First, the case could have been brought in the NDCA, as Google's Mountain View, California headquarters is a "regular and established place of business."  Second, the relevant evidence and witnesses are centered in the NDCA.  Google developed each of the Accused Google Applications in the NDCA.  Shaper Decl. ¶¶7-13.  Nearly all the documents, including highly proprietary source code, related to the Accused Google Applications are either physically present in NDCA or electronically accessible from Mountain View. *Id*. ¶¶13, 16.  The Google employees with relevant knowledge about the Accused Google Applications are all located in the NDCA, as detailed in Section III.B.  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).  Third, statistics show that the time to trial and time to appeal are no slower in the NDCA, and may even be faster in some respects.  Ex. 6.  Fourth, AGIS's lawsuit "calls into question the work and reputation" of Google and its employees that conduct business in the community, which gives the NDCA a unique interest.

## VI.    CONCLUSION

For these reasons, the Court should dismiss this action for improper venue or, alternatively, transfer it to the NDCA.

**CONFIDENTIAL**

Dated: February 18, 2020

Respectfully submitted,

By: */s/ J. Mark Mann*
J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Darin W. Snyder (*pro hac vice*)
dsnyder@omm.com
Luann L. Simmons (*pro hac vice*)
lsimmons@omm.com
Davis S. Almeling (*Pro Hac Vice*)
dalmeling@omm.com
Mark Liang *(Pro Hac Vice)*
mliang@omm.com
Bill Trac
btrac@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

**ATTORNEYS FOR DEFENDANT GOOGLE
LLC.**

**CONFIDENTIAL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

Dated: February 18, 2020                    */s/ J. Mark Mann*
                                             J. Mark Mann


## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

The undersigned certifies that the foregoing document and all supporting declarations and exhibits thereto are being filed under seal pursuant to Local P.R. 2-2 and in addition Local Rule 7(B) wherein a motion to seal this document has previously been filed with the Court.

Dated: February 18, 2020                    */s/ J. Mark Mann*
                                             J. Mark Mann