# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **AGIS SOFTWARE DEVELOPMENT LLC,**<br><br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**GOOGLE LLC,**<br><br>　　　　**Defendant.** | **CIVIL ACTION NO. 2:19-cv-361-JRG (LEAD CASE)**<br><br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT GOOGLE LLC'S RESPONSE TO AGIS SOFTWARE DEVELOPMENT LLC'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS FOR IMPROPER VENUE (DKT. 25)**

# TABLE OF CONTENTS

Page

I. FACTUAL BACKGROUND ................................................................................................ 1

II. ARGUMENT ........................................................................................................................ 3

    A. Flower Mound Is Not Google's "Regular And Established Place Of Business" .................................................................................................................. 4

        1. CTDI Is Not Google's Agent .................................................................... 4

        2. The Contractual Provisions Do Not Show Agency ................................. 6

    B. CTDI's Flower Mound Facility Is Not "Of Google" ............................................. 9

III. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGIS Software Development, LLC v. ZTE Corp.*,
  No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) .............................. 10

*Arguello v. Conoco, Inc.*,
  207 F.3d 803 (5th Cir. 2000) ........................................................................................................ 8

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) .................................................................................................... 3

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) ........................................................................................... passim

*In re Google LLC*,
  No. 20-144, Dkt. 2 (Fed. Cir. Aug. 4, 2020).................................................................................. 1

*Leon v. Caterpillar Indus., Inc.*,
  69 F.3d 1326 (7th Cir. 1995) ........................................................................................................ 8

*O'Neill v. Dep't of Hous. & Urban Dev.*,
  220 F.3d 1354 (Fed. Cir. 2000) .................................................................................................... 4

*Personalized Media Communications, LLC v. Google LLC*
  No. 2:19-cv-00090-JRG, Dkt. 291 (E.D. Tex. July 16, 2020)....................................................... 1

*Scally v. Hilco Receivables, LLC*,
  392 F. Supp. 2d 1036 (N.D. Ill. 2005) .......................................................................................... 8

*U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*,
  281 F.3d 929 (9th Cir. 2002) ........................................................................................................ 9

*United States v. Schaltenbrand*,
  930 F.2d 1554 (11th Cir. 1991) *accord Griffin v. United States*,
  588 F.2d 521 (5th Cir. 1979) ........................................................................................................ 4

*Zaxcom, Inc. v. Lectrosonics, Inc.*, No.
  17-CV-3408, 2019 WL 418860 (E.D.N.Y. Feb. 1, 2019) ............................................................ 7

**Statutes**

28 U.S.C. § 1694................................................................................................................................ 5

Cal. Civ. Code § 1636........................................................................................................................ 9

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

AGIS's argument for venue over Google in this District is premised on a repair facility that is owned, operated, and controlled by third party service contractor, CTDI. As support, AGIS cites this Court's order in *Personalized Media Communications, LLC v. Google LLC* ("*PMC*") finding that CTDI's facility confers venue over Google. No. 2:19-cv-00090-JRG, Dkt. 291 (E.D. Tex. July 16, 2020). But on August 4, 2020, Google filed a mandamus petition with the Federal Circuit challenging *PMC*. Petition For A Writ Of Mandamus, *In re Google LLC*, No. 20-144, Dkt. 2 (Fed. Cir. Aug. 4, 2020). Briefing on the petition completed on August 17, and a decision is expected within a few months.

As Google argued in its petition, *PMC* extends the patent venue statute too far. It expands the scope of a defendant's "regular and established business" under the statute to include any place where defendant engages with customers, temporarily stores equipment, or where there is a third party who entered into a contract with the defendant. The venue statue is not so broad. Indeed, the Federal Circuit's last word on venue over Google in this District heeded "the Supreme Court['s] . . . caution[] against a broad reading of the venue statute." *In re Google LLC*, 949 F.3d 1338, 1346 (Fed. Cir. 2020) (finding venue improper based on "GGC" servers in this District). Thus, CTDI's facility does not provide a basis to deny Google's motion.

I.   **FACTUAL BACKGROUND**

This Court is familiar with the relevant facts based on its decision in *PMC*. AGIS's supplemental brief, however, omits or mischaracterizes several facts that bear correction.

*First*, AGIS omits broader context about CTDI's operations. CTDI is a repair services contractor for many companies, not just Google. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is based in Pennsylvania and has dozens of facilities in the United States, with only one in this District, located in Flower Mound. https://www.ctdi.com/global_operations_network.html.

-1-

███████████████████████████████████████████████████████
███████████████████████████████████

*Second*, while AGIS spends much of its brief quoting provisions of the ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

*Third,* while AGIS focuses on the ████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████, ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*Fourth*, contrary to AGIS's assertion that CTDI "stores Google inventory" (Dkt. 118 at 7), ████████████████████████████████████████████████████

██████████████████████████████████

*Fifth*, since entering ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

2

**CONTAINS INFORMATION MARKED "RESTRICTED – ATTORNEYS' EYES ONLY" UNDER THE PROTECTIVE ORDER**

*Sixth*, Google does not control where CTDI locates its facilities. ▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

*Seventh*, the repair services that CTDI provides to Google do not include transacting or otherwise interacting with customers. CTDI receives products returned by customer, but Google handles all customer interactions itself. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

*Finally*, while AGIS presented over a dozen bases for venue in its Complaint (Dkt. 1 at ¶¶ 9-74) and opposition to Google's Rule 12 motion (Dkt. 56), AGIS never mentioned CTDI's Flower Mound facility as a basis for venue until its supplemental brief.

## II.     ARGUMENT

In *In re Cray Inc.*, the Federal Circuit explained that for a defendant to have a regular and established place of business in a district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." 871 F.3d 1355, 1360 (Fed. Cir. 2017). In *In re Google*, the Federal Circuit held that under *Cray*'s second factor, a regular and established place of business "requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" 949 F.3d at 1345.

Here, venue fails under *Cray*'s second factor because CTDI is not Google's agent, and AGIS's reliance on the ▬▬▬ contractual provisions does not show otherwise. Venue also fails under the third factor because the Flower Mound facility belongs to CTDI, not Google.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## A. Flower Mound Is Not Google's "Regular And Established Place Of Business"

### 1. CTDI Is Not Google's Agent

CTDI is not Google's agent for at least three reasons. First, in relation to Google, CTDI is a services contractor; it is not an agent who can transact business with Google's customers on behalf of Google as a principal. In assessing whether a third-party contractor is the defendant's agent for purposes of § 1400(b), the Federal Circuit in *In re Google* looked to the Restatement (Third) of Agency (2006). 949 F.3d at 1345.

Under the Restatement, an agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act" in that capacity. Restatement § 1.01. Non-employee agency agreements "always 'contemplate[] three parts—the principal, the agent, and the third party with whom the agent is to deal.'" *Id.*, cmt. c (citation omitted). By definition, an agent "has the authority to 'alter the legal relations between the principal and third persons.'" *O'Neill v. Dep't of Hous. & Urban Dev.*, 220 F.3d 1354, 1360-63 (Fed. Cir. 2000). Indeed, "an *essential characteristic* of an agency is the power of the agent to commit [its] principal to business relationships with third parties[.]" *United States v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir. 1991) (emphasis added; citation omitted); *accord Griffin v. United States*, 588 F.2d 521, 528-29 (5th Cir. 1979).

Here, CTDI has no power to commit Google to any business relationships with anyone, including customers. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*First*, AGIS points to no evidence that CTDI interacts with Google customers. It instead misquotes a Google webpage as telling customers "to send their devices to 'us'—*i.e.*, Google—at the Flower Mound Facility." Dkt. 118 at 5. That webpage nowhere refers to any "Flower Mound Facility" or CTDI. *See* Dkt. 118-4 at GOOG-AGIS-00027159-61. And webpage's statement that customers may "Send it [*i.e.*, their phone] to us"—*i.e.* "a repair center" designated by Google—either "with your own packaging" and a Google-provided label or "with our prepaid packaging," *id.*, merely confirms that Google, rather than CTDI, deals with customers. Indeed, in *PMC*, this Court found that customers "have no idea that CTDI exists," Dkt. 118-2 at 8, underscoring that CTDI does not interact with them and does not act as Google's agent.

*Second*, CTDI is not Google's agent because CTDI cannot accept service of process on behalf of Google under the service statute, 28 U.S.C. § 1694. *In re Google* confirmed that "the venue and service provisions were not just enacted together but expressly linked, and both have always required that the defendant have a 'regular and established place of business.'" 949 F.3d at 1344. Thus, for a contractor to qualify as an "agent" operating a "regular and established place of business" of a defendant, a plaintiff must be able to effectuate service on the defendant by serving the contractor. *Id*. The facts are not so here. CTDI and its personnel at Flower Mound are no more able or authorized to accept service on Google's behalf than the employees of third-party Internet Service Providers (ISPs) in *In re Google* who maintained GGC servers.

*Third*, CTDI is not Google's agent because its repair activities at Flower Mound are ancillary to Google's business. *In re Google* is instructive: it found venue improper over Google because the "maintenance activities" that third party ISPs performed for computer servers "cannot, standing alone, be considered the conduct of Google's business." 949 F.3d at

5

1346. "Maintaining equipment is meaningfully different from—as only ancillary to—the actual producing, storing, and furnishing to customers of what the business offers." *Id*.

The repair activities of CTDI are just as ancillary as the "maintenance activities" of the ISPs in *In re Google*. Google's business includes the design and sale of consumer electronics devices. The subsequent repair of some of those devices is ancillary to, and not part of, Google's business. Indeed, that is precisely why Google contracts with others for the function of repairing devices: that function is *not* part of Google's business and is instead the business of third parties like CTDI who specialize in repairing after-market devices.

By analogy, consider car-repair shops. Such shops repair and temporarily store damaged cars, sometimes pursuant to warranty contracts with automakers. But that does not make car repair the business of automakers. Car-repair shops are in the business of car repair, whereas automakers are in the business of designing and selling new cars. Each is a different business.

Because CTDI does not transact business with Google's customers, cannot accept service for Google, and engages in ancillary repair services, CTDI is not Google's agent.

### 2. The Contractual Provisions Do Not Show Agency

To support an agency relationship between Google and CTDI, AGIS ▮▮▮▮▮

▮▮▮▮▮ AGIS's singular focus on contractual language fails because it disregards the legal requirements for agency and the realities of Google's and CTDI's relationship.

A contract that merely establishes obligations and responsibilities owed by one party to another does not establish agency. In fact, the Federal Circuit in *In re Google* drew a sharp distinction between (1) a service contractor, who provides services to another party under a contract, versus (2) an agent, whose day-to-day activities can be controlled by interim instructions from a principal. 949 F.3d at 1345-46. The Federal Circuit cited the Restatement's

6

emphasis on this distinction: "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id*. (citing Restatement § 1.01 cmt. f(1)). The Federal Circuit concluded that ISPs maintaining GGC servers pursuant to a contract with Google were not agents of Google. *Id*. Instead, the "ISP provides Google with a service, and Google has no right of interim control over the ISP's provision of network access . . .. In this respect, the ISPs are not agents of Google." *Id*. Other districts have likewise found that service contractors of a defendant do not support venue over that defendant. *E.g.*, *Zaxcom, Inc. v. Lectrosonics, Inc.*, No. 17-CV-3408, 2019 WL 418860, at *7-9 (E.D.N.Y. Feb. 1, 2019) (authorized service center in district did not support venue despite extensive contractual restraints).

Here, CTDI is Google's service provider, not its agent. t. In a principal–agent relationship, the principal "has the right to give interim instructions or directions to the agent once their relationship is established." Restatement § 1.01 cmt. f(1). An agency relationship exists only if "the principal has the right throughout the duration of the relationship to control the agent's acts." *Id*. cmt. c. Far from constituting interim instructions,

Looking beyond          and considering the realities of CTDI's and Google's relationship confirms the lack of any interim instructions.

7

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████. They do not constitute interim instructions or directions by Google. *See, e.g., Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036, 1040 (N.D. Ill. 2005) (periodic reports from collection firm to assignee did not give assignee control of collection firm's activities) (cited in Reporter's Notes to Restatement § 1.01 cmt. f(1)).

Ironically, while quoting ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████. Courts have routinely credited "no agency" clauses in contracts. *E.g., Arguello v. Conoco, Inc.*, 207 F.3d 803, 807-08 (5th Cir. 2000) (finding that the "plain language" of a "no agency" clause "defines the relationship" between the parties); *Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1334 (7th Cir. 1995) (finding no agency relationship and crediting a "no agency" clause as "clearly set[ting] forth the intent of the parties"). Further, ███████████████████

8

███████████████████████████████████████████████████████████████████
█████████████████████████████████████ and "[u]nder California law, the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002); Cal. Civ. Code § 1636.  Here, to find an agency relationship would directly contravene the unambiguous mutual intent of Google and CTDI.

The *ex* ████████████████████████████████████ do not therefore constitute interim instructions that could support an agency relationship between Google and CTDI.  Rather, those provisions, combined with the realities of Google's and CTDI's relationship █████████████████████████████████ confirm that CTDI is a services contractor, not an agent.

## B.  CTDI's Flower Mound Facility Is Not "Of Google"

The CTDI Flower Mound facility is not a place of business "of Google" under *Cray*'s third factor for reasons similar to those discussed for the second factor.  The facility is owned and operated by CTDI, not Google.  ████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████ The regular personnel at the facility are CTDI employees who repair products of many companies, Google being only one of many.

AGIS's sole argument under *Cray*'s third factor is ████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

9

███████████████████████████████████████████████████████
███████████████████████████████████████

At any rate, even if ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

███████ It is hardly *Google's* place of business.  By analogy, a retailer of smartphones may contract with Google to resell Google phones in the retailer's stores and place Google phones on floor spaces separate from where phones of other companies are kept.  The store is not *Google's* place of business merely because it sells Google's phones or places them on physically separate floor space.  To hold otherwise would run against "the Supreme Court['s] . . . caution[] against a broad reading of the venue statute." *In re Google*, 949 F.3d at 1346 (citations omitted).

To hold otherwise would also run against this Court's decision in *AGIS Software Development, LLC v. ZTE Corp.*, where the defendant ZTE contracted with a third party call center, iQor, in this District to provide "60 plus dedicated ZTE representatives" who did not sell products, but serviced ZT's customers.  No. 2:17-CV-00517-JRG, 2018 WL 4854023, at *1 (E.D. Tex. Sept. 28, 2018).  The Court found the call center failed to confer venue over ZTE because the record "does not show how ZTE controls the work conducted at the call center . . . and does not demonstrate how the relationship between ZTE and iQor is more intimate and controlling than a traditional arms-length contractual relationship." *Id*. at *2-3.  The record here similarly does not show that Google controls the repair work conducted at CTDI's Flower Mound facility or how the relationship between Google and CTDI is anything more than an arms-length contractual relationship.  *CTDI's* Flower Mound facility cannot therefore provide a basis for venue over Google in this District.

### III. CONCLUSION

For the foregoing reasons, the Court's *PMC* decision does not provide a basis for denying Google's Rule 12 motion (Dkt. 25).  The motion should therefore be granted.

██████████████████████████████████████
████████████████████████████

| | |
|---|---|
| Dated: September 17, 2020 | By: */s/ J. Mark Mann*_____ |

J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Darin W. Snyder *(Pro Hac Vice)*
dsnyder@omm.com
Luann L. Simmons *(Pro Hac Vice)*
lsimmons@omm.com
David S. Almeling *(Pro Hac Vice)*
dalmeling@omm.com
Alexander B. Parker *(Pro Hac Vice)*
aparker@omm.com
Mark Liang (*Pro Hac Vice*)
mliang@omm.com
Bill Trac
btrac@omm.com
Andrew Bledsoe (*Pro Hac Vice*)
abledsoe@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Tel: (415) 984-8700
Fax: (415) 984-8701

*Attorneys for Defendants Google LLC, Waze Mobility Limited, Samsung Electronics Co. Ltd., and Samsung Electronics America, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

Dated: September 17, 2020                  */s/ J. Mark Mann*
                                                          **J. Mark Mann**