## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT LLC, | § | |
| | § | |
| v. | § | CASE NO. 2:19-CV-361-JRG |
| | § | |
| GOOGLE LLC, | § | |
| _____ | § | |
| | § | |
| AGIS SOFTWARE DEVELOPMENT LLC, | § | |
| | § | |
| v. | § | CASE NO. 2:19-CV-359-JRG |
| | § | |
| WAZE MOBILE LTD., | § | |
| _____ | § | |
| | § | |
| AGIS SOFTWARE DEVELOPMENT LLC, | § | |
| | § | |
| v. | § | CASE NO. 2:19-CV-362-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD. and | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC. | § | |

## CLAIM CONSTRUCTION
## MEMORANDUM AND ORDER

Before the Court is the Opening Claim Construction Brief (Dkt. No. 116) filed by Plaintiff AGIS Software Development LLC ("Plaintiff" or "AGIS"). Also before the Court is the Responsive Claim Construction Brief (Dkt. No. 120) filed by Defendants Google LLC, Waze Mobile Ltd., Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. ("Defendants") as well as Plaintiff's reply (Dkt. No. 123). The Court held a hearing on October 30, 2020.

Table of Contents

I.  BACKGROUND ..................................................................................................... 4

II.  LEGAL PRINCIPLES ......................................................................................... 5

III.  AGREED TERMS ............................................................................................... 11

IV.  DISPUTED TERMS ............................................................................................ 11

   A.  "selected response" ............................................................................................ 11

   B.  "the response list" ............................................................................................. 17

   C.  "a response list" ................................................................................................. 23

   D.  "recipient PDA/cell phone" and "sender PDA/cell phone" ................................. 26

   E.  "A method of receiving, acknowledging and responding to a forced message alert from
      a sender PDA/cell phone to a recipient PDA/cell phone, wherein the receipt,
      acknowledgment, and response to said forced message alert is forced by a forced
      message alert software application program, said method comprising the steps of:" ........ 30

   F.  "a data transmission means that facilitates the transmission of electronic files between
      said PDA/cell phones in different locations" ...................................................... 35

   G.  "means for attaching a forced message alert software packet to a voice or text message
      creating a forced message alert that is transmitted by said sender PDA/cell phone, said
      forced message alert software packet containing a list of possible required responses
      and requiring the forced message alert software on said recipient PDA/cell phone to
      transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said
      forced message alert is received by the recipient PDA/cell phone" .................................. 41

   H.  "means for requiring a required manual response from the response list by the recipient
      in order to clear recipient's response list from recipient's cell phone display" .................. 46

   I.  "means for receiving and displaying a listing of which recipient PDA/cell phones have
      automatically acknowledged the forced message alert and which recipient PDA/cell
      phones have not automatically acknowledged the forced message alert" ......................... 51

   J.  "means for periodically resending said forced message alert to said recipient PDA/cell
      phones that have not automatically acknowledged the forced message alert" .................. 55

   K.  "means for receiving and displaying a listing of which recipient PDA/cell phones have
      transmitted a manual response to said forced message alert and details the response
      from each recipient PDA/cell phone that responded" ......................................................... 59

   L.  "means for transmitting the acknowledgement of receipt to said sender PDA/cellphone
      immediately upon receiving a force message alert from the sender PDA/cellphone" ....... 62

   M.  "means for controlling of the recipient PDA/cellphone upon transmitting said
      automatic acknowledgment and causing, in cases where the forced message alert is a
      text message, the text message and a response list to be shown on the display of the
      recipient PDA/cellphone or causes, in cases where the forced message alert is a voice
      message, the voice message being periodically repeated by the speakers of the
      recipient PDA/cellphone while said response list is shown on the display" ..................... 68

N.  "means for allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone" ................................................................................................................ 73

O.  "means for clearing the text message and a response list from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted" ............................................................................................ 77

P.  "spatial coordinates" ............................................................................................ 81

Q.  "Short Message Service (SMS) messages" ........................................................... 86

R.  "facilitating initiation of Internet Protocol (IP) based communication between the first device and the respective second devices" ....................................................... 92

S.  "receiving a message from a second device" ...................................................... 95

**V.  CONCLUSION** ........................................................................................................ **99**

# I. BACKGROUND

Plaintiff alleges infringement of United States Patents No. 8,213,970 ("the '970 Patent"), 9,408,055 ("the '055 Patent"), 9,445,251 ("the '251 Patent"), 9,467,838 ("the '838 Patent"), 9,749,829 ("the '829 Patent") & 9,820,123 ("the '123 Patent") (collectively, "the patents-in-suit"). (Dkt. No. 116, Exs. B–G.)  Plaintiff submits that "[t]he '[f]ield of the [i]nvention' is described generally as related to the field of map-based communication among cellphone/PDA devices, now more commonly referred to as 'smartphones.'"  (Dkt. No. 116, at 1.)

The '970 Patent is titled "Method of Utilizing Forced Alerts for Interactive Remote Communications" and issued on July 3, 2012.  The Abstract of the '970 Patent states:

> The system and method having a specialized software application on a personal computer or a PDA/cell phone that that [*sic*] enables a participant to force an automatic acknowledgement and a manual response to a text or voice message from other participants within the same network.  Each participant's PDA/cell phone includes a forced message alert software application program for both creating and processing these forced message alerts.  The system and method enabled by the forced message alert software application program provides the ability to (a) allow an operator to create and transmit a forced message alert from a sender PDA/cell phone to one or more recipient PCs and PDA/cell phones within the communication network; (b) automatically transmit an acknowledgement of receipt to the sender PDA cell phone upon the receipt of the forced message alert; (c) periodically resend the message to the recipient PCs and PDA/cell phones that have not sent an acknowledgement; (d) provide an indication of which recipient PCs and PDA/cell phones have acknowledged the forced message alert; (e) provide a manual response list on the display of the recipient PC and PDA/cell phone's display that can only be cleared by manually transmitting a response; and (f) provide an indication on the sender PDA/cell phone of the status and content the [*sic*] manual responses.

The '838 Patent is titled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks" and issued on October 11, 2016.  The Abstract of the '838 Patent states:

> A method and system includes the ability for individuals to set up an ad hoc digital and voice network easily and rapidly to allow users to coordinate their activities by eliminating the need for pre-entry of data into a web or identifying others by name, phone numbers or email.  This method is especially useful for police, fire fighters, military, first responders or other emergency situations for

coordinating different organizations at the scene of a disaster to elevate conventional communication problems either up and down the chain of command or cross communication between different emergency units.  The method and system provides that the users are only required to enter a specific Server IP address and an ad hoc event name, a password and perhaps the name of the particular unit.

The '055 Patent, the '251 Patent, and the '829 Patent resulted from continuations of the '838 Patent.  The patents-in-suit all claim priority to United States Patent Application No. 10/711,490 ("the '490 Application"), filed on September 21, 2004, which issued as United States Patent No. 7,031,728.  (Dkt. No. 116, Ex. A.)[1]

The Court previously construed disputed terms in all but one of the patents-in-suit in *AGIS Software Development, LLC v. Huawei Device USA Inc., et al.*, No. 2:17-CV-513, Dkt. No. 205 (E.D. Tex. Oct. 10, 2018) (Gilstrap, J.) ("*Huawei*").[2]

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with preliminary constructions with the aim of focusing the parties' arguments and facilitating discussion.  Those preliminary constructions are noted below within the discussion for each term.

## II.  LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the

---

[1] Plaintiff submits: "In its Preliminary Infringement Contentions, AGIS indicated that each of the asserted claims is entitled to the September 21, 2004 priority date.  The Defendants have indicated, both in this litigation and in *inter partes* reviews that they intend to challenge the 2004 priority date.  AGIS maintains to Defendants that, in the alternative, each claim is at least entitled to the subsequent interim priority dates, e.g., the next application in the priority chain, U.S. Application No. 11/308,648, which is April 17, 2006."  (Dkt. No. 116, at 4 n.3.)

[2] Plaintiff submits: "Although the '123 Patent was not asserted in the Huawei case, Defendants do not propose any terms found only in the '123 Patent require construction.  The same claim terms that Defendants seek construction for that appear in the '123 Patent are also found in the other Asserted Patents."  (Dkt. No. 116, at 2 n.1.)

protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).  Claim construction is clearly an issue of law for the court to decide.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

"In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (citation omitted).  "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence.  These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history.  *Markman*, 52 F.3d at 979.  The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention.  *Id.*  A patent's claims must be read in view of the specification, of which they are a part.  *Id.*  For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims.  *Id.*  "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention.  Otherwise, there would be no need for claims.  *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  The patentee is free to be his own

lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315

(quoting *Markman*, 52 F.3d at 978).   Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id.* at 1314–17.   As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims."   *Bates v. Coe*, 98 U.S. 31, 38 (1878).   In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316.   Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the United States Patent and Trademark Office ("PTO") understood the patent.  *Id.* at 1317.   Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings.  *Id.*   Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.  *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that

"a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony.  The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319–24.  According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent."  *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter.  *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record.  In doing so, the court emphasized that claim construction issues are not resolved by any magic formula.  The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language.  *Id.* at 1323–25.  Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910, 134 S. Ct. 2120, 2129 (2014).  "A determination of claim

indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus*, 134 S. Ct. 2120. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

"[P]rior orders in related cases do not bar the Court from conducting additional construction in order to refine earlier claim constructions." *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-CV-180-WCB, 2014 WL 2810016, at *6 (E.D. Tex. June 20, 2014) (Bryson, J., sitting by designation).

In general, however, prior claim construction proceedings involving the same patents-in-suit are "entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable *per se*." *Maurice Mitchell Innovations, LP v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006) (Davis, J.); *see TQP*, 2014 WL 2810016, at *6 ("[P]revious claim constructions in cases involving the same patent are entitled to substantial weight, and the Court has determined that it will not depart from those constructions absent a strong reason for doing so."); *see also Teva*, 135 S. Ct. at 839–40 ("prior cases will sometimes be binding because of issue preclusion and sometimes will serve as persuasive authority") (citation omitted); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008) (noting "the importance of uniformity in the treatment of a given patent") (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996)).

## III.  AGREED TERMS

In their July 10, 2020 Joint P.R. 4-3 Claim Construction and Prehearing Statement (Dkt. No. 109) and in their September 20, 2020 Joint Claim Construction Chart Pursuant to P.R. 4-5(d) (Dkt. No. 128), the parties submitted the following agreements:

| Term | Agreed Construction |
| --- | --- |
| "manual response"<br><br>('970 Pat., Cls. 1, 2) | "recipient-selectable response message" |
| "a CPU and a touch screen display a CPU and memory"<br><br>('970 Pat., Cl. 1) | "a CPU, a touch screen display, and memory" |
| "a forced message alert software application program"<br><br>('970 Pat., Cls. 1, 2, 10–12) | "application software that allows an operator to create and transmit forced message alerts" |
| "group"<br><br>('251 Pat., Cls. 1, 24, 31;<br>'838 Pat., Cls. 1, 5, 19, 54;<br>'829 Pat., Cls. 1, 34, 35;<br>'123 Pat., Cls. 1, 14–17, 23, 36, 37, 45–47) | "more than two participants associated together" |

## IV.  DISPUTED TERMS

### A.  "selected response"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "recipient selected response message" |

(Dkt. No. 109, Ex. B, at 1; *id.*, Ex. C, at 1; Dkt. No. 116, at 6; Dkt. No. 120, at 2; Dkt. No. 128, App'x A, at 37.)  The parties submit that this term appears in Claim 10 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 1; *id.*, Ex. C, at 1; Dkt. No. 128, App'x A, at 37.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "recipient-selectable response message."

(1)  The Parties' Positions

Plaintiff argues that "Defendants' proposed construction would conflate a 'selected response' with the Court's prior construction of a 'manual response,'" and "Defendants' construction unnecessarily complicates and adds ambiguity to the claims by adding numerous unclaimed and undefined phrases, increases confusion instead of providing clarity, and unduly limits the scope of 'selected response.'"  (Dkt. No. 116, at 7.)

Defendants respond that as to whether the response is a "message" and as to whether the response is selected by a recipient, both issues were decided in favor of Defendants' proposed construction in *Huawei* as to the related term "manual response."   (Dkt. No. 120, at 2.) Defendants argue that "the intrinsic record demonstrates that the 'selected response' is an actual content-bearing message," including the claim language, the specification, and the prosecution history.  (*Id.*, at 2–4.)  Defendants likewise argue that the claim language, the specification, and the prosecution history demonstrate that a "selected response" must be selected by the recipient. (*Id.*, at 5–6.)

Plaintiff replies that "Claim 10 mandates that 'selected response' is broader than a 'recipient selected response message' because it has to be an 'option' that is chosen."  (Dkt. No. 123, at 2.)  "Claim 1 does not mirror Claim 10," Plaintiff argues, "and this Court should not disturb the patentee's decision to pursue different coverage in Claim 10."  (*Id.*)

At the October 30, 2020 hearing, Plaintiff argued that a "selected response" message need not include the full text of the selected response option but rather could include an indication of which response option was selected.  Defendants argued that the Court in *Huawei*

found that the "selected response" message must include the full "content" of the selected response option.  *See Huawei* at 41.

(2)  Analysis

Claim 10 of the '970 Patent recites (emphasis added):

10.  A method of receiving, acknowledging and responding to a forced message alert from a sender PDA/cell phone to a recipient PDA/cell phone, wherein the receipt, acknowledgment, and response to said forced message alert is forced by a forced message alert software application program, said method comprising the steps of:
   receiving an electronically transmitted electronic message; identifying said electronic message as a forced message alert, wherein said forced message alert comprises of a voice or text message and a forced message alert application software packet, which triggers the activation of the forced message alert software application program within the recipient PDA/cell phone;
   transmitting an automatic acknowledgment of receipt to the sender PDA/cell phone, which triggers the forced message alert software application program to take control of the recipient PDA/cell phone and show the content of the text message and a required response list on the display recipient PDA/cell phone or to repeat audibly the content of the voice message on the speakers of the recipient PDA/cell phone and show the required response list on the display recipient PDA/cell phone; and
   transmitting a selected required response from the response list in order to allow the message required response list to be cleared from the recipient's cell phone display, whether said *selected response* is a chosen option from the response list, causing the forced message alert software to release control of the recipient PDA/cell phone and stop showing the content of the text message and a response list on the display recipient PDA/cell phone and[/]or stop repeating the content of the voice message on the speakers of the recipient PDA/cell phone;
   displaying the response received from the PDA cell phone that transmitted the response on the sender of the forced alert PDA/cell phone; and
   providing a list of the recipient PDA/cell phones [that] have automatically acknowledged receipt of a forced alert message and their response to the forced alert message.

As to the first dispute, a "selected response" must be selectable by the recipient.  This understanding is consistent with the context in which the term is used in the claim, which recites that a selected response is chosen from a response list at a "recipient PDA/cell phone."  The

Court reached substantially the same conclusion in *Huawei* as to the similar term "manual response" in Claim 1 of the '970 Patent.  *See Huawei* at 39–42.[3]

> Disclosure cited by Plaintiff is further consistent with the Court's understanding:
>
> A required response list which will be either preinstalled in the phone application software or sent with the forced message alert will be presented to the user operator upon receipt of the forced message.  When the forced text or voice alert is received, the user operator is presented with the required response list.  In order to clear the forced text message alert from the user operator's PC or PDA/cell phone display, *the user operator is required to select a reply from this list.*

'970 Patent at 7:17–24 (emphasis added).  This disclosure that "the user operator is required to select a reply" is consistent with interpreting the "selected response" as being selected by the recipient.  And although "patent coverage is not necessarily limited to inventions that look like the ones in the figures," *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007), it is nonetheless noteworthy that Defendants' proposal is consistent with Figure 4 of the '970 Patent, which discloses that "[t]he recipient selects a response from the response list and the recipient cell phone and [*sic*] transmits the response to the sender[']s cell phone."

As to whether the "selected response" must be a "message," Defendants read the recital of "transmitting a selected required response from the response list in order to allow the *message* required response list to be cleared from the recipient's cell phone display" as meaning that the "response" is a "message."  In the context of the claim as a whole, however, this recital of "message" is better read as referring to the required response list being part of the forced

---

[3] *Huawei* also considered prosecution history (*see Huawei* at 41), but the cited statements pertained to different claims, not the claim that is at issue in the above-captioned case.  (*See* Dkt. No. 120, Ex. 3, Dec. 17, 2010 Response and Amendment, at 8 ("Applicant's invention is about sending commands to individuals using any communications means that require a manual response from the individual to whom the command was issued . . . ."); *see also id.*, Ex. 2, Sept. 9, 2011 Response and Amendment, at 8 (similar).)  Therefore, although this prosecution history can be considered here, it is of somewhat limited weight.

message alert.   Further, the claim refers to the selected response being a "chosen option from the response list," but the claim does not explicitly recite that this "chosen option" is a "message."

Additional evidence, however, warrants construing the "selected response" as being a message.  *Huawei* cited a statement in the Summary of the Invention regarding software with an ability to "provide a manual response list on the display of the recipient PC and PDA/cell phone's display that can only be cleared by manually *selecting and transmitting a response* from the list or recording and transmitting a voice response."  *See* '970 Patent at 2:26–29; *see also Huawei* at 40–41.  The specification thus discloses that a response is not only selected but is also transmitted, which is consistent with the selected response being a message.

Further, the recital in Claim 10 of "displaying the response received from the PDA cell phone that transmitted the response on the sender of the forced alert PDA/cell phone" is consistent with the selected response being a message because it is "transmitted" and it has content that can be "display[ed]."   Likewise, this is consistent with disclosure that, for example, "[a] military default response list would typically consist of choices such as, 'will comply,' 'will not comply,' and 'have complied.'"  '970 Patent at 7:27–29.

Even if it might be "poor drafting practice," any presumption that different terms have different meanings "is not conclusive," and "it is not unknown for different words to be used to express similar concepts."  *Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004).  This is particularly true where, as here, the terms at issue appear in separate claims ("manual response" appears in Claim 1, and "selected response" appears in Claim 10).  *See Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) ("[S]imply noting the difference in the use of claim language does not end the matter.  Different terms or phrases in

separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper.").

Thus, as to Defendants' concern that "[u]nder AGIS's interpretation, a 'selected response' can come from a menu of options that are not responses at all, but rather a list of actions that can be performed entirely on the recipient's device, without sending anything back to the sender" (Dkt. No. 120, at 4), based on the foregoing the Court expressly rejects any such interpretation by Plaintiff.

Finally, as to the parties' dispute at the October 30, 2020 hearing regarding whether a "selected response" message must include the full content of a selected response option, Defendants' reliance on *Huawei* is unavailing. *Huawei* found (emphasis in original):

> [T]he foregoing evidence demonstrates that the *content* of the response must be sent, not merely an indication of whether or not a response has been selected. To whatever extent Plaintiff is interpreting the disputed term otherwise, the Court hereby expressly rejects Plaintiff's interpretation. Likewise, to whatever extent Plaintiff is arguing that a possible response to a message could be merely ignoring it, such an interpretation would be inconsistent with the foregoing evidence (including the context provided by other claim language) that a "manual response" must be an affirmative response.

*Huawei* at 41. In *Huawei*, the Court rejected any interpretation that a "manual response" could be "merely an indication of whether or not a response has been selected," that is, that *some* response was selected (without necessarily specifying *which* response). *Id.* Instead, the "manual response" needed to indicate *which* response option was selected. Thus, the reference to "content" in *Huawei* did not refer to the entire content of a response option necessarily being transmitted within the response message. *See id.* The Court hereby expressly rejects Defendants' argument that a "selected response" must necessarily include the full content of a response (rather than perhaps an indication or representation of a particular response).

16 / 99

The Court therefore hereby construes **"selected response"** to mean **"recipient-selectable response message."**

**B. "the response list"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite<br><br>*[Defendants] initially proposed that the antecedent basis is "a list of possible required responses," but now asserts the limitation is indefinite in view of AGIS's arguments. |

(Dkt. No. 109, Ex. B, at 1; Dkt. No. 116, at 7; Dkt. No. 120, at 6; *see* Dkt. No. 109, Ex. B, at 1; Dkt. No. 128, App'x A, at 39.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 1; *id.*, Ex. C, at 1; Dkt. No. 128, App'x A, at 39.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "The antecedent basis for 'the response list' is the 'list of possible required responses' recited in the 'means for attaching . . .' limitation."

(1)  The Parties' Positions

Plaintiff argues that "[t]here is no recited claim limitation that requires that each possible required response make it to the response list that is displayed on the recipient phone."  (Dkt. No. 116, at 7.)

Defendants respond that "[t]he fact that 'the response list' could refer to many possible recited features [in] Claim 1, as AGIS argues (AGIS Br. at 7-8), only reinforces the term's indefiniteness."  (Dkt. No. 120, at 7.)

Plaintiff replies that Defendants did not obtain leave of Court to assert their previously undisclosed indefiniteness argument.  (Dkt. No. 123, at 2.)  Alternatively, Plaintiff argues that

"Defendants' new argument should fail for lack of evidence regarding a POSITA's knowledge or understanding" and because Defendants "conflate the existence of multiple embodiments for a finding that a term has multiple interpretations" and "improperly isolate the 'response list' term from the surrounding claim language . . . ." (*Id.*, at 3.)  For example, Plaintiff argues that "each of the options included in the application program do not necessarily need to be included in the packet that is transmitted to the recipient." (*Id.*, at 4.)

At the October 30, 2020 hearing, Defendants submitted that prior to briefing, as a proposed compromise to resolve the indefiniteness issue, Defendants offered to interpret this disputed term as referring to the list recited as part of the forced message alert software packet, but Plaintiff refused.   Defendants submitted at the hearing that its proposed compromise interpretation is more plausible than referring to the list that is included with the forced message alert software application program, but Defendants maintained their indefiniteness arguments. Plaintiff responded that it agrees with the Court's preliminary construction, and Plaintiff argued that the response options on the list contained in the packet could include the response options that are on the list included with the application program.

<u>(2)  Analysis</u>

In *Huawei*, no party asserted indefiniteness as to "the response list" in Claim 1 of the '970 Patent.  This claim recites (emphasis added):

> 1.  A communication system for transmitting, receiving, confirming receipt, and responding to an electronic message, comprising:
>
> a predetermined network of participants, wherein each participant has a similarly equipped PDA/cell phone that includes [a CPU, a touch screen display, and memory];
>
> a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations;
>
> a sender PDA/cell phone and at least one recipient PDA/cell phone for each electronic message;

a forced message alert *software application program* including *a list of required possible responses* to be selected by a participant recipient of a forced message response *loaded on each participating PDA/cell phone*;

means for attaching a *forced message alert software packet* to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing *a list of possible required responses* and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone;

means for requiring a required manual response from *the response list* by the recipient in order to clear recipient's response list from recipient's cell phone display;

means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert;

means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert; and

means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded.

As a threshold matter, Plaintiff argues that Defendants' indefiniteness argument is untimely.  But whereas Defendants originally proposed that "the response list" refers back to "said forced message alert software packet containing a list of possible required responses" (Dkt. No. 109, Ex. C, at 1), Plaintiff argued in its opening claim construction brief that "'a list of possible required responses' cover[s] multiple embodiments presented in the specification including those preinstalled in the phone application software or sent with the forced message alert." (Dkt. No. 116, at 8.)  Defendants responded by pointing out that the claim itself refers to these two possibilities, and Defendants argued that, as a result, Plaintiff's own interpretation gives rise to indefiniteness.  (Dkt. No. 120, at 7–8.)  Defendants' indefiniteness argument is therefore responsive to Plaintiff's opening brief and will be considered.

The *RevoLaze* case cited by Plaintiff does not compel otherwise.  *See RevoLaze LLC v. J.C. Penney Co., Inc.*, No. 2:19-CV-43, 2020 WL 697891, at *18 (E.D. Tex. Feb. 11, 2020) (Gilstrap, J.) ("the Court interprets Defendants' withdrawal of terms as abandoning their claim-scope positions on these terms, including indefiniteness").  Unlike in the cited portion of *RovoLaze*, *id.*, Defendants' argument in the present case is based on the manner in which Plaintiff explains its "plain and ordinary meaning interpretation" in Plaintiff's opening brief, as discussed above.

Turning to the claim language at issue, the phrase "a list of required possible responses" is not identical to the phrase "a list of possible required responses."  In these two phrases, the words "required" and "possible" are transposed.  This could perhaps be reconciled by finding that, in both phrases, "required" and "possible" modify the same other word, "responses," and therefore these phrases could be treated as identical.  The context in which these phrases as a whole are used, however, are different, such that these two phrases do not necessarily refer to the same list of responses, as explained herein.

In the first recital—"a forced message alert software application *program* including a list of required possible responses to be selected by a participant recipient of a forced message response loaded on each participating PDA/cell phone"—the list of required possible responses is on a PDA/cell phone as part of software.

In the second recital—"means for attaching a forced message alert software *packet* to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software *packet* containing a list of possible required responses"—the list of possible required responses is in a packet that is transmitted.

The specification, by presenting these in "either . . . or" fashion, reinforces that these are distinct lists:

> Referring now to FIG. 2, in order to set up a communication network that utilizes the forced message alert system, the forced message alert software application program must be installed on a plurality of PCs and/or PDA/cell phones. The application will provide for a forced alert message that can be designated for transmission according to several criteria: a.) A single PC and/or PDA/cell phone, b.) The list of users currently participating in the network, and c.) A user or administrator predefined list of network participants.

> A required response list which will be *either* preinstalled in the phone application software *or* sent with the forced message alert will be presented to the user operator upon receipt of the forced message.  When the forced text or voice alert is received, the user operator is presented with the required response list.

> * * *

> The response list from which the message receiver must select can *either* be included in the forced alert message *or* be preloaded in each phone.

'970 Patent at 7:12–22 & 7:56–58 (emphasis added).  Figure 4 of the '970 Patent refers to "a list of responses to be shown on the display of the recipient cell phone," and Figure 3A illustrates a step in which (emphasis added): "The sender then selects the default response list *or* creates a new response list that is sent with the text message or voice recording."

The relevant claim language, reproduced above, mirrors this distinction between alternatives by referring to a *recipient* both in the context of the forced message alert software application *program* as well as in the context of the forced message alert software *packet*.  *See id.* at 9:12 & 9:23.

Plaintiff argues that "the response list" is simply "the response list presented to the recipient" (Dkt. No. 116, at 8), whatever it may be, but the definite article ("the") in patent claim drafting is understood as referring back to an antecedent.  *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008) (as part of discussion that "a" is understood in patent

drafting as referring to one or more, noting that "the use of a definite article ('said' or *the*') to *refer back to an initial indefinite article* [('a' or 'an')]" "carries either a singular or plural meaning").

"[A] claim could be indefinite if a term does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not reasonably ascertainable." *Halliburton Energy Serv., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

Plaintiff's proposal that "the response list" is simply "the response list presented to the recipient" (Dkt. No. 116, at 8) is untenable and perhaps amounts to a proposal to replace "the response list" with "a response list" in Claim 1. This would amount to an impermissible redrafting of the claim. *See K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."); *see also Chef Am., Inc. v. Lamb–Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[C]ourts may not redraft claims, whether to make them operable or to sustain their validity.").

In its reply brief, Plaintiff states that the "response list" "that is displayed to the recipient for selection . . . is the response list *transmitted with the packet* that is received and the options shown to the recipient for selection." (Dkt. No. 123, at 4 (emphasis added).) At the October 30, 2020 hearing, Defendants conceded that this reading is more "plausible" than reading "the response list" as referring to the list included with the software application program. Defendants argued that Plaintiff's statement in its briefing is equivocal, and Defendants submitted that Plaintiff's refusal to agree to this interpretation during the claim construction meet-and-confer process led Defendants to assert indefiniteness. Plaintiff made clear at the October 30, 2020 hearing, however, that Plaintiff believes "the response list" refers to the "list of possible required responses" recited in the "means for attaching . . ." limitation, which was Defendants' position prior to briefing. The parties thus essentially reached agreement on how to interpret this claim

language.   Defendants nonetheless maintained their indefiniteness position, arguing at the hearing that Defendants' prior position was merely offered as a "compromise."

While the Court is mindful that Plaintiff's seemingly amorphous position on this disputed term during these claim construction proceedings has been counterproductive, the above-discussed interpretation advanced by both sides is consistent with the Court's view of the most natural reading of the claim language.  This interpretation comports with the surrounding claim language, which recites that a forced message alert software packet (which contains a list of possible required responses) is transmitted to the recipient PDA/cell phone and requires automatic acknowledgment, followed by requiring a response in order to clear recipient's response list from recipient's cell phone display.   Thus, the claim language here at issue "inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 134 S. Ct. at 2129.

The Court therefore hereby finds that **the antecedent basis for "the response list" is the "list of possible required responses" recited in the "means for attaching . . ." limitation**.

## C.  "a response list"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite<br><br>*[Defendants] initially proposed that this term be construed the same as "the response list" in Claim 1, but now asserts the limitation is indefinite in view of AGIS's arguments. |

(Dkt. No. 109, Ex. B, at 1; Dkt. No. 116, at 8; Dkt. No. 120, at 8; Dkt. No. 109, Ex. C, at 1; Dkt. No. 128, App'x A, at 41.)   The parties submit that this term appears in Claim 2 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 1; *id.*, Ex. C, at 1; Dkt. No. 128, App'x A, at 41.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Plain and ordinary meaning.  Note: Not required to be the same list."

(1)  The Parties' Positions

Plaintiff argues that "there is no requirement that the response list of Claim 1 is the same 'response list to be shown' in Claim 2."  (Dkt. No. 116, at 8.)  In other words, Plaintiff argues that "[o]ne of ordinary skill in the art would have understood with reasonable certainty that 'a response list' may not necessarily be the same response list found in Claim 1."  (*Id.*)

Defendants respond that "AGIS's position leaves it wholly uncertain what 'a response list' in Claim 2 is referencing, particularly given that Claim 1 already recites two separate response lists as discussed above for 'the response list.'"  (Dkt. No. 120, at 8.)

Plaintiff replies: "Because each of these Claim 2 response lists are recited in the context of displayed lists, they also each correspond to the second, packetized 'response list' that is received by the recipient and displayed to the recipient for selection.  Accordingly, Defendants cannot establish that the term 'response list' is indefinite when read in the context of the claim as a whole and not in isolation."  (Dkt. No. 123, at 4.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction and presented no oral argument.  Defendants opposed the Court's preliminary construction but rested on their briefing and presented no oral argument.

(2)  Analysis

In *Huawei*, no party asserted indefiniteness as to "a response list" in Claim 2 of the '970 Patent.  This claim recites (emphasis added):

2.   The system as in claim 1, wherein the forced message alert software application program on the recipient PDA/cell phone includes:

24 / 99

means for transmitting the acknowledgment of receipt to said sender PDA/cell phone immediately upon receiving a forced message alert from the sender PDA/cell phone;

means for controlling of the recipient PDA/cell phone upon transmitting said automatic acknowledgment and causing, in cases where the force message alert is a text message, the text message and *a response list* to be shown on the display of the recipient PDA/cell phone or causes, in cases where the forced message alert is a voice message, the voice message being periodically repeated by the speakers of the recipient PDA/cell phone while said response list is shown on the display;

means for allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone; and

means for clearing the text message and *a response list* from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted.

Unlike the term "the response list" in Claim 1 of the '970 (from which Claim 2 depends and which is discussed above), the term "a response list" in Claim 2 is introduced by the indefinite article, "a," and therefore does not appear to refer to an antecedent. *See Baldwin*, 512 F.3d at 1343 (quoted above). Thus, as Plaintiff argues, "there is no requirement that the response list of Claim 1 is the same 'response list to be shown' in Claim 2." (Dkt. No. 116, at 8.) The Federal Circuit authority cited by Plaintiff provides additional support for the proposition that the same words, when used in different contexts, might not have identical meaning. *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) ("[T]he patentee's mere use of a term with an antecedent does not require that both terms have the same meaning.").

The Court therefore hereby expressly rejects Defendants' indefiniteness argument as to Claim 2 of the '970 Patent. The recitals of "a response list" in Claim 2 need not refer to the same list within Claim 2 and need not necessarily refer to any of the lists recited in Claim 1, from which Claim 2 depends.

No further construction is necessary.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction."); *ActiveVideo Networks, Inc. v. Verizon Commcn's, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).

The Court accordingly hereby construes **"a response list"** to have its **plain meaning**.

### D.  "recipient PDA/cell phone" and "sender PDA/cell phone"

| **"recipient PDA/cell phone"**<br>('970 Patent, Claims 1, 2, 10) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "a PDA/cell phone belonging to the recipient to a forced message alert, different from the sender" |

| **"sender PDA/cell phone"**<br>('970 Patent, Claims 1, 2, 10, 13) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "a PDA/cell phone belonging to the sender of a forced message alert, different from the recipient" |

(Dkt. No. 109, Ex. B, at 1–2; *id.*, Ex. C, at 2; Dkt. No. 116, at 9; Dkt. No. 120, at 10; Dkt. No. 128, App'x A, at 42 & 46.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Plain and ordinary meaning.  Note: The 'recipient' and the 'sender' cannot be the same in a given communication."

(1)  The Parties' Positions

Plaintiff argues that "Defendants seek to impermissibly add negative limitations," and "Defendants' proposed constructions improperly deviate[] from the claims, specification, and the ordinary and customary meanings of the terms."  (Dkt. No. 116, at 10.)

Defendants respond that "the claim language and intrinsic record establish that the 'recipient' and 'sender' are different individuals."  (Dkt. No. 120, at 10.)  Defendants also argue that "[t]he specification's stated problem to be solved and proposed solution confirm that a 'sender' and a 'recipient' are distinct individuals, since the purpose of the alleged invention is to force a recipient to respond to a sender."  (*Id.*, at 11.)  Further, Defendants argue that during prosecution "[t]he applicant repeatedly affirmed that the '[a]pplicant's invention' relates to messages sent from an individual sender to one or more individual recipients . . . ."  (*Id.*, at 13.)

Plaintiff replies that "[t]he claims do not preclude the same individual from owning all devices," and "[t]he claims do not preclude a device from being a sender in one instance and a recipient in another."  (Dkt. No. 123, at 4.)  That is, Plaintiff argues, "Defendants' citations do not preclude situations where the recipient PDA/cell phone may be a sender PDA/cell phone in a different instance."  (*Id.*, at 4–5.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction.  Defendants argued that "sender" and "recipient" refer to people and that the "sender" and "recipient" cannot be the same person as to a particular communication.

Defendants argued that allowing the sender and recipient to be the same person would be inconsistent with the objectives disclosed in the specification.

### (2)  Analysis

In *Huawei*, although these terms appeared as part of larger disputed terms, the parties there did not present any dispute as to the meaning of "recipient PDA/cell phone" or "sender PDA/cell phone."

Claim 10 of the '970 Patent, for example, recites (emphasis added):

10.  A method of receiving, acknowledging and responding to a forced message alert from a *sender PDA/cell phone* to a *recipient PDA/cell phone*, wherein the receipt, acknowledgment, and response to said forced message alert is forced by a forced message alert software application program, said method comprising the steps of:

receiving an electronically transmitted electronic message; identifying said electronic message as a forced message alert, wherein said forced message alert comprises of a voice or text message and a forced message alert application software packet, which triggers the activation of the forced message alert software application program within the *recipient PDA/cell phone*;

transmitting an automatic acknowledgment of receipt to the *sender PDA/cell phone*, which triggers the forced message alert software application program to take control of the *recipient PDA/cell phone* and show the content of the text message and a required response list on the display *recipient PDA/cell phone* or to repeat audibly the content of the voice message on the speakers of the *recipient PDA/cell phone* and show the required response list on the display *recipient PDA/cell phone*; and

transmitting a selected required response from the response list in order to allow the message required response list to be cleared from the *recipient's cell phone* display, whether said selected response is a chosen option from the response list, causing the forced message alert software to release control of the *recipient PDA/cell phone* and stop showing the content of the text message and a response list on the display *recipient PDA/cell phone* and[/]or stop repeating the content of the voice message on the speakers of the *recipient PDA/cell phone*;

displaying the response received from the PDA cell phone that transmitted the response on the *sender of the forced alert PDA/cell phone*; and

providing a list of the *recipient PDA/cell phones* [that] have automatically acknowledged receipt of a forced alert message and their response to the forced alert message.

The specification provides context, at the beginning of the Preferred Embodiment of the Invention section, as follows:

> A communication system and method that joins participants in a communications network using personal computers ("PC") and handheld cell phones having integrated personal digital assistant ("PDA/cell phone") with a forced message alert software application program that *allows a participant to send a text or voice message to a group of people* and force an automatic acknowledgment of receipt and a manual response.

'970 Patent at 3:22–28 (emphasis added); *see id.* at 2:40–43 ("permitting the transmission of forced text or voice messages, other messages, photographs, video, E-mail and URL data from one network participant to other selected network participants").   The Background of the Invention likewise states:

> [W]hat is needed is a method in which a *sender* of a text or voice message can force an automatic acknowledgement upon receipt from a recipient's cell phone or PC and a manual response from the *recipient* via the recipient's cell phone or PC when sending the text or voice message.

*Id.* at 1:62–67 (emphasis added); *see id.* at 2:49–55 (similar).

Plaintiff argues that "[t]he claims do not preclude a device from being a sender in one instance and a recipient in another" (Dkt. No. 116, at 10), and "the circumstances will dictate which device is the sender or recipient" (Dkt. No. 123, at 5).

Defendants substantially agree.   (*See* Dkt. No. 120, at 13–14.)   This also comports with Claim 1 of the '970 Patent, for example, which refers to (emphasis added) "a sender PDA/cell phone and at least one recipient PDA/cell phone *for each electronic message*."

To whatever extent Plaintiff is arguing that the "recipient PDA/cell phone" and the "sender PDA/cell phone" could be one and the same device in the context of *one particular communication*, the Court hereby rejects any such interpretation as contrary to the above-discussed intrinsic evidence.   Plaintiff did not contest this point at the October 30, 2020 hearing.

As to Defendants' argument that the words "sender" and "recipient" refer to people, the prosecution history provides at least some support, referring to sending commands "to individuals." (Dkt. No. 120, Ex. 3, Dec. 17, 2010 Response and Amendment, at 8 ("Applicant's invention is about sending commands to individuals using any communications means that require a manual response from the individual to whom the command was issued . . . ."); *see id.*, Ex. 2, Sept. 9, 2011 Response and Amendment, at 8 ("the recipient must respond with a particular answer").)

In the context of the claims, however, the words "sender" and "recipient" refer to the role of a *device* in the context of a particular communication. Claims 1 and 2 refer to systems of devices and do not require human beings as part of the systems. Claim 10 is a method claim that refers to steps performed by devices rather than by human beings. The Court therefore rejects Defendants' interpretation to the contrary, particularly as to Defendants' proposals of "belonging to the recipient" and "belonging to the sender."

The Court therefore hereby expressly rejects Defendants' proposed constructions, and no further construction is necessary. *See O2 Micro*, 521 F.3d at 1362; *see also Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291.

The Court accordingly hereby construes **"recipient PDA/cell phone"** and **"sender PDA/cell phone"** to have their **plain meaning**.

**E. "A method of receiving, acknowledging and responding to a forced message alert from a sender PDA/cell phone to a recipient PDA/cell phone, wherein the receipt, acknowledgment, and response to said forced message alert is forced by a forced message alert software application program, said method comprising the steps of:"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Not limiting; alternatively, plain and ordinary meaning | The preamble is limiting. |

(Dkt. No. 109, Ex. B, at 2; *id.*, Ex. C, at 2; Dkt. No. 116, at 11; Dkt. No. 120, at 14; Dkt. No. 128, App'x A, at 51.)  The parties submit that this term appears in the preamble of Claim 10 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 2; *id.*, Ex. C, at 2; Dkt. No. 128, App'x A, at 51.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "The preamble is limiting."

(1)  The Parties' Positions

Plaintiff argues that "the preamble merely states a purpose or intended use of the invention and provides a description of the limitations set forth in the body of the claim."  (Dkt. No. 116, at 11 (citations omitted).)

Defendants respond that this preamble "is limiting because it provides the antecedent basis for three terms in the claim body" and because it is "a statement about a particular structure—the forced message alert software application program—and not merely a purpose." (Dkt. No. 120, at 15.)   Also, Defendants submit that "the preamble adds an additional requirement not found in the body of the claims—that the forced message alert software application program forces the 'receipt, acknowledgement, and response' steps."  (*Id.*)

Plaintiff argues that "Claim 10 discloses a structurally complete invention," "[t]he preamble does not provide the sole relevant antecedent basis for any term," and the "preamble merely states a purpose or intended use of the invention."  (Dkt. No. 123, at 5.)

At the October 30, 2020 hearing, Plaintiff argued that whereas the body of the claim is complete and recites details regarding the forced message alert software application program, the preamble merely characterizes the forced message alert software application program and states the purpose of the invention.  Defendants responded that the preamble is necessary to understand

the claim and includes a requirement that all three of "receiving, acknowledging and responding" are performed by the forced message alert software application program.

(2) Analysis

In *Huawei*, no party presented any dispute as to this term, which is the preamble of Claim 10 of the '970 Patent.

> In general, a preamble limits the invention if it recites essential structure or steps, or if it is "necessary to give life, meaning, and vitality" to the claim. *Pitney Bowes*[*, Inc. v. Hewlett-Packard Co.*], 182 F.3d [1298,] 1305 [(Fed. Cir. 1999)]. Conversely, a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Rowe v. Dror*, 112 F.3d 473, 478, 42 USPQ2d 1550, 1553 (Fed. Cir. 1997).

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002); *see, e.g., Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) ("When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention."); *C.W. Zumbiel Co. v. Kappos*, 702 F.3d 1371, 1385 (Fed. Cir. 2012) (finding preambles limiting because "'containers' as recited in the claim body depend on 'a plurality of containers' in the preamble as an antecedent basis").

Also, "the purpose or intended use of the invention . . . is of no significance to claim construction . . . ." *See Pitney Bowes*, 182 F.3d at 1305. This principle has sometimes been characterized as "the presumption against reading a statement of purpose in the preamble as a claim limitation." *Marrin v. Griffin*, 599 F.3d 1290, 1294–95 (Fed. Cir. 2010); *see Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002) ("Generally, the preamble does not limit the claims."); *see also Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 769–71 (Fed. Cir. 2018) (in preamble reciting "[a] computer network for providing an

information delivery service for a plurality of participants," finding "information delivery service" to be non-limiting because it "merely describe[s] intended uses for what is otherwise a structurally complete invention").

In some cases, language in the preamble may be merely "descriptive" of the limitations set forth in the body of the claim. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000) ("The phrase 'control apparatus' in the preamble merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention."); *see also Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) ("if the body of the claim describes a structurally complete invention, a preamble is not limiting where it 'merely gives a name' to the invention, extols its features or benefits, or describes a use for the invention") (quoting *Catalina*, 289 F.3d at 809).

Claim 10 of the '970 Patent recites (underlining, italics, and bold added):

10.  A method of receiving, acknowledging and responding to a forced message alert from *a sender PDA/cell phone* to <u>a recipient PDA/cell phone</u>, wherein the receipt, acknowledgment, and response to said forced message alert is forced by **a forced message alert software application program**, said method comprising the steps of:

transmitting an electronically transmitted electronic message; identifying said electronic message as a forced message alert, wherein said forced message alert comprises of a voice or text message and a forced message alert application software packet, which triggers the activation of **the forced message alert software application program** within <u>the recipient PDA/cell phone</u>;

transmitting an automatic acknowledgment of receipt to *the sender PDA/cell phone*, which triggers the forced message alert software application program to take control of <u>the recipient PDA/cell phone</u> and show the content of the text message and a required response list on the display <u>recipient PDA/cell phone</u> or to repeat audibly the content of the voice message on the speakers of <u>the recipient PDA/cell phone</u> and show the required response list on the display <u>recipient PDA/cell phone</u>; and

transmitting a selected required response from the response list in order to allow the message required response list to be cleared from <u>the recipient's cell phone</u> display, whether said selected response is a chosen option from the response list, causing the forced message alert software to release control of <u>the recipient PDA/cell phone</u> and stop showing the content of the text message and a

response list on the display <u>recipient PDA/cell phone</u> and[/]or stop repeating the content of the voice message on the speakers of the <u>recipient PDA/cell phone</u>;

displaying the response received from the PDA cell phone that transmitted the response on *the sender of the forced alert PDA/cell phone*; and

providing a list of the <u>recipient PDA/cell phones</u> [that] have automatically acknowledged receipt of a forced alert message and their response to the forced alert message.

The preamble thus provides antecedent basis for "the sender PDA/cell phone," "the recipient PDA/cell phone," and "the forced message alert software application program." The entirety of the preamble provides details regarding these structures. In particular, "receiving, acknowledging and responding to" refers to "a forced message alert from a sender PDA/cell phone to a recipient PDA/cell phone," and "the receipt, acknowledgment, and response to said forced message alert is *forced by* a forced message alert software application program."

The patentee thus "use[d] *both* the preamble and the body to define the subject matter of the claimed invention." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995). The entire preamble is therefore limiting. *See Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1373 (Fed. Cir. 2014) ("The phrase 'the image data' clearly derives antecedent basis from the 'image data' that is *defined in greater detail in the preamble* as being 'representative of at least one sequential set of images of a spray plume.'"). The Court expressly rejects Plaintiff's argument that "wherein the receipt, acknowledgement, and response to said forced message alert is forced by a forced message alert software application program" merely "states an intended result." (Dkt. No. 123, at 5.)

The *Infernal Technology* and *EON Corp* cases cited by Plaintiff addressed different language in unrelated patents and are not persuasive in the above-captioned case. *See Infernal Tech., LLC v. Sony Interactive Entm't Am., LLC*, No. 2:19-CV-00248, 2020 WL 3050821,

at *11–*12 (E.D. Tex. June 7, 2020) (Payne, J.); *see also EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, 741 F. Supp. 2d 783, 790–92 (E.D. Tex. 2010) (Love, J.).

The Court therefore hereby finds that **"A method of receiving, acknowledging and responding to a forced message alert from a sender PDA/cell phone to a recipient PDA/cell phone, wherein the receipt, acknowledgment, and response to said forced message alert is forced by a forced message alert software application program, said method comprising the steps of"** in the preamble of Claim 10 of the '970 Patent is limiting.

**F.  "a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by § 112, ¶ 6.<br><br>Function:<br>    "facilitating the transmission of electronic files between said PDA/cell phones in different locations"<br><br>Structure:<br>    "communications network server; and equivalents thereof" | Governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "facilitate the transmission of electronic files between said PDA/cell phones in different locations"<br><br>Structure:<br>    "a PDA/cell phone programmed to implement transmission of a forced message alert using TCP/IP or another communications protocol, and equivalents thereof" |

(Dkt. No. 109, Ex. B, at 2–3; *id.*, Ex. C, at 2–3; Dkt. No. 116, at 12; Dkt. No. 120, at 16; Dkt. No. 128, App'x A, at 52–53.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 2–3; *id.*, Ex. C, at 2–3; Dkt. No. 128, App'x A, at 52–53.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6. / Function: 'facilitating the transmission of electronic files between said PDA/cell phones in different

locations' / Structure: 'communications network server using TCP/IP or other digital transmission means; and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff urges that "the Court's prior construction should stand," and Plaintiff argues: "Defendants[] attempt to read a non-infringement position into its proposed construction that precludes the use of a server.  However, the specification clearly links the function of facilitating data transmission to a communications network server."  (Dkt. No. 116, at 13.)

Defendants respond that "the defendants in *Huawei* agreed to AGIS's proposal during briefing and never proposed the structure identified in [Defendants'] construction, as they had originally proposed indefiniteness."  (Dkt. No. 120, at 16.)  Defendants submit that their proposal is supported by findings of the USPTO's Patent Trial and Appeal Board ("PTAB") that post-date the *Huawei* claim construction.  (*Id.*, at 16–17.)

Plaintiff replies that "[t]his Court is not required to adopt PTAB constructions," and "Defendants do not provide a strong reason for the Court to deviate from the prior construction [in *Huawei*]."  (Dkt. No. 123, at 5.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction and presented no oral argument.  Defendants disagreed with the Court's preliminary construction but rested on their briefing and presented no oral argument.

(2)  Analysis

Title 35 U.S.C. § 112(f) provides: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  "In exchange

for using this form of claiming, the patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly link that structure to the function." *Triton Tech of Tex., LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378 (Fed. Cir. 2014).

In *Huawei*, the parties reached agreement during the course of claim construction briefing, and the Court adopted the agreed-upon construction that this term "is a means-plus-function term, the claimed function is 'facilitating the transmission of electronic files between said PDA/cell phones in different locations,' and the corresponding structure is 'communications network server; and equivalents thereof.'" *Huawei* at 10; *see id.* at 9–10.

Defendants cite analysis and construction by the PTAB as part of *Inter Partes* Review ("IPR") proceedings regarding the '970 Patent.  In rejecting the *Huawei* construction, the PTAB's written analysis, in full, was as follows:

> We construe the term "data transmission means" under 35 U.S.C. § 112, ¶ 6.  The parties agree that the function is to "facilitate the transmission of electronic files between said PDA/cell phones in different locations," as recited in limitation 1.2. Pet. 10; PO Resp. 10.  We agree that this is the recited function.
>
> Petitioner asserts that the corresponding structure is a server that communicates according to either (1) Wifi, WiMax, or other peer-to-peer communications or (2) SMS, TCP/IP, or other messaging protocols.  Pet. 10 (citing Ex. 1001, 4:1–36). Patent Owner proposes we adopt the district court's determination that the corresponding structure is a "communications network server; and equivalents thereof."  PO Resp. 10; Ex. 3001, 10.  In pertinent part, both parties assert the corresponding structure is a server.
>
> Neither party, however, explains why the corresponding structure is a server. Petitioner provides a bare assertion, without any explanation as to why its construction is correct, and cites to Mr. William's declaration which likewise includes a bare assertion without any explanation.  Pet. 10 (citing Ex. 1003 ¶ 33). Patent Owner does not explain why we should adopt its construction, other than we should do so "for the purposes of consistency" with the district court's construction.  PO Resp. 10.

Although Petitioner does not provide any explanation, Petitioner cites to a description of a communication server that forwards data addressed from one network participant to another, "thus permitting the transmission of forced message alerts, other text and voice messages, photographs, video, Email, and URL data" between network participants.   Pet. 10 (citing Ex. 1001, 4:1–6). Notably, the Specification does not refer to a server as a transmission means. Neither party addresses other descriptions in the Specification that refer explicitly to two types of transmission means.   The Specification refers to the Internet as a transmission means: "[t]o operate on the network, obviously the PC must be on and have an active connection to the Internet or other digital *transmission means*." Ex. 1001, 3:43–45 (emphasis added).     The Specification also refers to communications protocols, such as TCP/IP, as digital transmission means: "[a] plurality of PCs and PDA/cell phones each having forced alert software installed providing a communication network . . . with the ability to: 1) allow an operator to create and transmit (via TCP/IP or another digital *transmission means*) a forced voice alert." *Id.* at 2:7–11 (emphasis added).   Nor do the parties address claim 2, which depends directly from claim 1, and recites "wherein said data transmission means is TCP/IP or another communications protocol." *Id.* at 9:40–63.

Based on our review of claim 2 and the above-noted disclosure in the Specification, we determine the corresponding structure for a "data transmission means" is "a PDA/cell phone programmed to implement transmission of a forced message alert using TCP/IP or another communications protocol, and equivalents thereof."

We note that the district court's claim construction order does not provide analysis as to why a server is the corresponding structure for a "data transmission means," instead stating that the construction was agreed upon by the parties.   Ex. 3001, 10.   Furthermore, there is no indication in the district court's claim construction order that the court considered the language of claim 2, or the portions of the Specification we discuss above about the network and communications protocols being *transmission means*.   *Id.*

(Dkt. No. 120, Ex. 1, Nov. 19, 2019 Final Written Decision, at 12–14.)

The claim language cited by the PTAB appears in a dependent claim, and "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."   *Phillips*, 415 F.3d at 1315. Further, corresponding structure is normally found in the written description rather than in claim language.   *See, e.g., Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007) ("in order for a means-plus-function claim to be valid under § 112, the corresponding structure of

the limitation must be disclosed in the written description in such a manner that one skilled in the art will know and understand what structure corresponds to the means limitation") (citation and internal quotation marks omitted).   The PTAB cited no authority for deriving means-plus-function corresponding structure from a claim, let alone a dependent claim.  The Court therefore finds the PTAB's analysis to be unpersuasive as to dependent Claim 2.

As to the portions of the specification cited by the PTAB, those portions disclose as follows:

> A plurality of PCs and PDA/cell phones each having forced alert software installed providing a communication network of PCs and PDA/cell phones with the ability to: a) allow an operator to create and transmit (via TCP/IP or another digital transmission means) a forced voice alert . . . .
>
> * * *
>
> To operate on the network, obviously the PC must be on and have an active connection to the Internet or other digital transmission means.

'970 Patent at 2:7–11 (Summary of the Invention) & 3:43–45 (Preferred Embodiment of the Invention).

This disclosure that PCs and PDA/cell phones can form a network are not clearly linked to the claimed function of "facilitat[ing] the transmission of electronic files between said PDA/cell phones in different locations."  *See Triton*, 753 F.3d at 1378 ("the patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and *clearly link* that structure to the function") (emphasis added).

The Summary of the Invention states:

> A *communication network server* can act as a forwarder for *TCP/IP communications between any combination of PC users or PDA/cell phone users*. The server can also act as a forwarder of data addressed from one participant to one or more addressed participants, thus permitting the transmission of forced text or voice messages, other messages, photographs, video, E-mail and URL data *from one network participant to other selected network participants*.

'970 Patent at 2:36–43 (emphasis added).  The specification further discloses:

> The communication system also includes a server that acts as a forwarder for IP communications between any combination of PDA/cell phone users and/or PC based users.
>
> * * *
>
> *The server also acts as a forwarder of data addressed from one participant to one or more addressed participants*, thus permitting the transmission of forced message alerts, other text and voice messages, photographs, video, E-mail and URL data from one network participant to other selected network participants.
>
> * * *
>
> Referring now to FIG. 3A and FIG. 3B, the process of sending a forced message alert from a PC or PDA/cell phone begins with a sender selecting the forced message alert software application program on a sender PC or PDA/cell phone. The sender can then select by said sender PC or PDA/cell phone to type a text message or record a voice message or select the text alert or voice alert from a list.  Once the sender types a text message or records a voice message or selects a voice or text message on said PC or PDA/cell phone, the sender can then use a soft switch or selection from a list to send the forced alert to: a.) Another network participant, b.) The current PC or PDA/cell phone network participants or c.) A user or administrator predefined list of network participants.  The response list from which the message receiver must select can either be included in the forced alert message or be preloaded in each phone.  The forced alert message is then transmitted via *TCP/IP or other digital transmission means* to every PC or PDA/cell phone designated to receive the forced message alert either directly or through a server whose function is to retransmit the messages to the correct users in the communications network.

*Id.* at 3:52–54, 4:1–6 & 7:43–63 (emphasis added).

On balance, these disclosures "clearly link" the "communication network server" using "TCP/IP or other digital transmission means" with the claimed function of "facilitat[ing] the transmission of electronic files between said PDA/cell phones in different locations."  *Triton*, 753 F.3d at 1378.

The Court therefore hereby finds that **"a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations"** is a

means-plus-function term, the claimed function is **"facilitating the transmission of electronic files between said PDA/cell phones in different locations,"** and the corresponding structure is **"communications network server using TCP/IP or other digital transmission means; and equivalents thereof."**

**G. "means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by § 112, ¶ 6.<br><br>Function:<br>    "attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone"<br><br>Structure:<br>    "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:8–8:36; and equivalents thereof" | Governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said forced message alert is received by the received PDA/cell phone"<br><br>Structure:<br>    "a PDA/cell phone configured to perform a portion of the forced-message alert software application program that allows a user to create a message, select recipients of that message, select a default or new response list to be sent with the message, and then send the message to the recipients.  (*See* '970 patent, 2:7–16, 7:8–20, 7:43–63, 8:25–30, FIG. 3A)." |

(Dkt. No. 109, Ex. B, at 3–4; *id.*, Ex. C, at 3–4; Dkt. No. 120, at 18; *see* Dkt. No. 116, at 14; Dkt. No. 128, App'x A, at 54–55.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 3–4; *id.*, Ex. C, at 3–4; Dkt. No. 128, App'x A, at 54–55.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6. / Function: 'attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone' / Structure: 'a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:8–8:36; and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff urges that "the Court's prior construction should stand," and as to Defendants' proposed corresponding structure in the present case, Plaintiff argues that "[t]his Court already considered and rejected a similar argument [in *Huawei*]."  (Dkt. No. 116, at 15.)

Defendants respond that Plaintiff's proposal "leaves the algorithm's steps unspecified and simply lists an over-inclusive citation to nearly two full columns in the specification."  (Dkt. No. 120, at 19.)  Defendants submit that "the defendants in *Huawei* proposed indefiniteness, not [Defendants'] construction," and whereas "the structure quoted by AGIS comes from the PTAB's preliminary construction from its institution decision," "the PTAB's FWD [(Final Written Decision)] considered and declined to adopt the court's construction, instead issuing the construction that [Defendants] now propose[]."  (*Id.*, at 19 & 22.)

Plaintiff replies that "Defendants present no strong reason for the Court to abandon its prior construction in favor of a PTAB construction." (Dkt. No. 123, at 6.)  Plaintiff argues that "[w]hile the structure proposed by Defendants may be used to perform the function, the specification is not limited to the one embodiment." (*Id.*)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction.  Defendants argued that the Court should follow the PTAB's analysis.  Plaintiff responded that Defendants' interpretation improperly allows for more prior art to be asserted.

<u>(2) Analysis</u>

In *Huawei*, the parties agreed that 35 U.S.C. § 112, ¶ 6 applied, but the parties disputed the claimed function, and the defendants in *Huawei* argued that the term is indefinite because of lack of corresponding structure.  *See Huawei* at 11–12.  The Court found that the claimed function is "attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone." *Id.* at 18; *see id.* at 13.  The Court also rejected the indefiniteness argument and found that the corresponding structure is "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:8–8:36; and equivalents thereof." *Id.* at 18; *see id.* at 14–18.

In the present case, the parties agree upon the claimed function but dispute the corresponding structure.  In IPR proceedings, the PTAB considered the *Huawei* construction and arrived at a different corresponding structure:

> We find that the features disclosed at Ex. 1001 [('970 Patent)], 7:21–42, 8:1–25 and 8:31–36 are not part of the algorithm for performing the function recited in limitation 1.5.  For example, Ex. 1001, 7:21–42 describes repeating a message at a defined rate until a user makes a selection from a required response list.  The disclosure at Exhibit 1001, 8:1–25 and 8:31–36 describes features unrelated to the recited function including a sender PC or PDA/cell phone monitoring for manual responses, and a recipient PC or PDA/cell phone separating a forced message alert packet from a text or voice message.  None of these features are part of the function specified in limitation 1.5.
>
> For the foregoing reasons, we determine that the corresponding structure is a PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001, 2:11–13, 7:8–20, 7:43–63, 8:25–30, and Fig. 3A, and equivalents thereof.

(Dkt. No. 120, Ex. 1, Nov. 19, 2019 Final Written Decision, at 17–19.)

The disclosures excluded by the PTAB, however, describe functionality that is part of the disclosure of performing the claimed function, including as to the nature of the forced message alert.  *See* '970 Patent at 7:21–42, 8:1–25 & 8:31–36.  Also, the disclosure in the '970 Patent at 2:11–13 is cited by the PTAB and is part of Defendants' proposal in the present case, but this disclosure that "said forced voice alert is comprised of a text or voice message file and a forced alert software packet" is not clearly linked to the claimed function and is not necessary to understand the corresponding structure identified in *Huawei*.

Finally, Defendants' proposal of "a PDA/cell phone configured to perform a portion of the forced-message alert software application program that allows a user to create a message, select recipients of that message, select a default or new response list to be sent with the message, and then send the message to the recipients" appears to be an effort to paraphrase the disclosures that Defendants cite, but this paraphrasing is unnecessary and would risk being over- or under-inclusive with respect to the cited corresponding structure in the specification.

The Court therefore hereby finds that **"means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is**

transmitted by said sender PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgement to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone" is a means-plus-function term, the claimed function is **"attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone,"** and the corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:8–8:36; and equivalents thereof."**

**H.   "means for requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Governed by § 112, ¶ 6. | Governed by 35 U.S.C. § 112(6). |
| Function:<br>    "requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display" | Function:<br>    "requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display" |
| Structure:<br>    "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:37–57; and equivalents thereof" | Structure:<br>    "forced-message alert software-application program on the recipient PDA/cellular phone that causes the message and manual response list to be displayed on the screen of the recipient PDA/cellular phone and clears the forced alert text data when a response is selected from the manual response list. (*See* '970 patent, 8:39–46, FIG. 4)." |

(Dkt. No. 109, Ex. B, at 4; *id.*, Ex. C, at 5; Dkt. No. 116, at 16; Dkt. No. 120, at 22; Dkt. No. 128, App'x A, at 56.)   The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 4; *id.*, Ex. C, at 5; Dkt. No. 128, App'x A, at 56.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6. / Function: 'requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display' / Structure: 'a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:37–57; and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff urges that "the Court's prior construction should stand," and "Defendants' proposed construction does not provide any clarity to the factfinder and instead, only adds confusion by improperly inserting additional narrowing limitations."  (Dkt. No. 116, at 17.)

Defendants respond that whereas their proposal "is a forced-message alert *software*-application program running on the PDA/cellular phone of the *recipient* of a forced message alert, which performs an algorithm having steps specified in [Defendants'] proposal," "AGIS's proposed structure encompasses a PC or PDA/cell phone belonging to a *sender* of a forced message alert and does not require a forced-message alert software-application program running on the device."  (Dkt. No. 120, at 22–23.)  Defendants also argue that Plaintiff's proposal is over-inclusive because the disclosures at 8:37–39 and 8:52–57 describe functions that are not related to the claimed function.  (*Id.*, at 23.)

Plaintiff replies that "Defendants present no strong reason for the Court to abandon its prior construction in favor of a PTAB construction."  (Dkt. No. 123, at 7.)  Plaintiff argues that "Defendants misconstrue the prior construction" because "[t]he 'forced message alert software application program' is not a general purpose machine" and "[t]he prior construction properly identifies the special purpose machine . . . ."  (*Id.*)  Plaintiff also argues that "Defendants propose that the corresponding structure should include . . . additional limitations that are not recited in the relevant portion of the specification reciting the algorithm, such as 'clears the forced alert text data when a response is selected from the manual response list.'"  (*Id.* (citing Dkt. No. 120, at 28).)  Further, Plaintiff argues that "Defendants exclude the portion of the specification regarding receipt of a voice message."  (Dkt. No. 123, at 7 (citing '970 Patent at 8:46–51).)  Finally, Plaintiff argues that "[t]aking and releasing effective control of the device are necessary

parts of the algorithm for requiring a response in order to clear the list from the display." (Dkt. No. 123, at 8.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction. Defendants argued that the claim language refers to operations occurring on the recipient's device. Plaintiff responded that there is no reason to define this term according to who owns the device or who operates the device.

(2)  Analysis

In *Huawei*, the parties agreed that 35 U.S.C. § 112, ¶ 6 applied and agreed on the claimed function, but the defendants in *Huawei* argued that the term is indefinite because of lack of corresponding structure. *See Huawei* at 20–21. The Court rejected the indefiniteness argument and found that the corresponding structure is "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:37–57; and equivalents thereof." *See Huawei* at 21–22.

The PTAB declined to include the disclosures at 8:37–39 and 8:52–57 because, the PTAB reasoned, taking control of the recipient device is not part of the claimed function, and the PTAB noted that dependent Claim 2 explicitly recites means for controlling the recipient PDA/cell phone:

> [C]ontrary to Patent Owner's assertion, we find the disclosure at Ex. 1001 [('970 Patent)], 8:37–39 and 8:52–57, does not describe the algorithm for the recited function. Patent Owner does not provide any explanation to support its position, other than its argument that the district court included this disclosure in its claim construction. PO Resp. 11–12. The disclosure at Ex. 1001, 8:37–39 and 8:52–57 describes the forced voice alert software application program "effectively tak[ing] control" of the recipient device and releasing effective control of the recipient PDA/cell phone. Ex. 1001, 8:37–39, 8:52–57. However, the function specified in limitation 1.6 does not mention taking or releasing control of the PDA/cell phone. On the other hand, claim 2, which depends directly from claim 1, explicitly claims a means for taking control of the recipient PDA/cell phone. Ex. 1001, 9:46–54 ("means for controlling of the recipient PDA/cell phone upon transmitting said

> automatic acknowledgment and causing . . . the text message and a response list
> to be shown on the display of the recipient PDA cell phone").  Accordingly, we
> find the feature of taking and releasing control of the PDA/cell phone does not
> constitute part of the algorithm that achieves the function recited in limitation 1.6,
> and does not serve as a limitation on the claim.  *Cf. Asyst Techs*, 268 F.3d at
> 1369–70 ("Structural features that do not actually perform the recited function do
> not constitute corresponding structure and thus do not serve as claim[]
> limitations").
>
> For the foregoing reasons, we determine that the corresponding structure is a
> PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001,
> 8:39–46 and the portions of Figure 4 described at 8:39–46, and equivalents
> thereof.

(Dkt. No. 120, Ex. 1, Nov. 19, 2019 Final Written Decision, at 20.)

Taking control, however, is an essential aspect of *requiring* a response (until there is a response, the response list cannot be cleared from the recipient's cell phone display).  The PTAB's finding to the contrary is unpersuasive.  The recital of a "means for controlling" in dependent Claim 2 does not compel otherwise.  To the extent the PTAB's argument amounts to claim differentiation, "[c]laim differentiation is not conclusive; it is a guide, not a rigid rule." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1323 (Fed. Cir. 2016).

As to Defendants' proposal of "forced-message alert software-application program on the recipient PDA/cellular phone that causes the message and manual response list to be displayed on the screen of the recipient PDA/cellular phone and clears the forced alert text data when a response is selected from the manual response list," this appears to be an effort to paraphrase the cited disclosure, but this paraphrasing is unnecessary and would risk being over- or under-inclusive with respect to the cited corresponding structure in the specification.  Also, as to Defendants' argument that Plaintiff's interpretation "does not require a forced-message alert software-application program running on the device" (Dkt. No. 120, at 22–23), the

corresponding structure disclosure explicitly refers to "the forced voice alert software application program." '970 Patent at 8:37–39.

Finally, at the October 30, 2020 hearing, Defendants urged that the device that performs the algorithm must be a "recipient" device. Based on the arguments presented at the hearing and in the parties' briefing, and based upon the Court's review of the evidence cited by the parties, the Court finds as follows. To the extent the corresponding structure refers to a device operating as a sender or operating as a recipient, such limitations are set forth in the disclosed algorithms and need not, indeed should not, be imposed so as to limit a particular device to being a "sender" device or a "recipient" device. For example, a device could be configured with capability to operate as a sender device and could *also* be configured with capability to operate as a recipient device (so long as it does not operate as *both* with respect to the same communication).

The Court therefore hereby finds that **"means for requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display"** is a means-plus-function term, the claimed function is **"requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display,"** and the corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:37–57; and equivalents thereof."**

**I. "means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by § 112, ¶ 6.<br><br>Function:<br>    "receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert"<br><br>Structure:<br>    "PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem; and equivalents thereof" | Governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert"<br><br>Structure:<br>    "hardware on the sender's PDA/cell phone including a display, such as display 16, and a wireless receiver and/or transceiver that receives electronic transmissions with acknowledgement receipts. (*See* '970 patent, 4:7–11, 8:1–5, 8:12–15, FIG. 1)." |

(Dkt. No. 109, Ex. B, at 4–5; *id.*, Ex. C, at 6; Dkt. No. 116, at 18; Dkt. No. 120, at 24; Dkt. No. 128, App'x A, at 57–58.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 4–5; *id.*, Ex. C, at 6; Dkt. No. 128, App'x A, at 57–58.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6. / Function: 'receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert' / Structure: 'PDA/cell phone hardware including display 16 and a wireless receiver and/or transceiver; and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff urges that "the Court's prior construction should stand," and "Defendants' proposed construction reads in additional narrowing limitations that are inconsistent with the specification." (Dkt. No. 116, at 19.)

Defendants respond that Plaintiff's proposal of a "cellular modem" lacks support.  (Dkt. No. 120, at 25.)  Defendants also argue that Defendants' proposal "specifies that the PDA/cell phone must belong to the 'sender,' which is the only device capable of performing the claimed function according to the specification, whereas AGIS's proposal permits the device to belong to the 'recipient.'" (*Id.*, at 25.)

Plaintiff replies that "Defendants present no strong reason for the Court to abandon its prior construction in favor of a PTAB construction," and "nothing in the specification compels the addition of any corresponding structure beyond 'PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem; and equivalents thereof.'" (Dkt. No. 123, at 8.)  Plaintiff also submits that the specification supports finding that the hardware can include a cellular modem.  (*Id.*)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction.  Defendants argued that the claimed function can be performed only on a sender's device.

(2)  Analysis

In *Huawei*, the parties reached agreement during the course of claim construction briefing, and the Court adopted the agreed-upon construction that this term is a means-plus-function term, the claimed function is "receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient

PDA/cell phones have not automatically acknowledged the forced message alert," and the corresponding structure is "PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem; and equivalents thereof."  *Huawei* at 23–24.

> The PTAB found:
>
> [T]he dispute raised by the parties' proposals is whether the corresponding structure is: (1) a computer configured to implement or perform an algorithm, or (2) a hardware transmitter (presumably for "receiving") and a hardware display (presumably for "displaying").  We adopt Patent Owner's approach, namely that the corresponding structures are a hardware display and receiver and/or transceiver.  With regard to the function of displaying, the Specification discloses a hardware display of the PDA/cell phone (*see, e.g.*, Figure 1, LCD display 16) that displays an indication of which recipients have sent acknowledgements and an indication of the response from each recipient cell phone.  Ex. 1001 [('970 Patent)], 8:1–5, 8:12–15.  As to the function of receiving, the Specification discloses that the PC and PDA/cell phone can communicate using WiFi or WiMax, both of which are wireless, and the PDA/cell phone can communicate over a wireless cellular network, thereby indicating the PC and PDA/cell phone each have a wireless receiver and/or transceiver for receiving automatic acknowledgements.  Ex. 1001, 4:7–11.
>
> Therefore, we find the corresponding structure is PDA/cell phone hardware including a display, such as display 16, and a wireless receiver and/or transceiver, and equivalents thereof.
>
> We decline to adopt Patent Owner's proposal that a wireless *transmitter* performs the receiving function, because a transmitter transmits rather than receives.  PO Resp. 12–14.  We also decline to adopt Patent Owner's proposal that a "cellular modem" corresponds to the receiving function because Patent Owner does not identify any disclosure in the Specification of a cellular modem performing the receiving function.  *Id.*

(Dkt. No. 120, Ex. 1, Nov. 19, 2019 Final Written Decision, at 22–23.)

Although the PTAB found that "Patent Owner does not identify any disclosure in the Specification of a cellular modem performing the receiving function," the PTAB noted that "the PDA/cell phone can communicate over a wireless cellular network."  *Id.* at 23 (citing '970 Patent at 4:7–11); *see* '970 Patent at 4:7–11 ("The above functions can also be accomplished using WiFi, WiMax, or other peer to peer communications.  However, for use with cellular

communications and to assure the level of security that cell phone companies require, a centralized static IP routable server is used."); *see also id.* at 4:12–36 ("Inside housing 12 is contained the conventional cellular phone elements including a modem, a CPU for use with a PDA and associated circuitry connected to speaker 24 and microphone 38.  Conventional PDA/cellular phones are currently on sale and sold as a unit that can be used for cellular telephone calls and sending cellular SMS and TCP/IP or other messages using the PDA's display 16 and CPU.").

Defendants fail to adequately justify their proposal of "receives electronic transmissions with acknowledgement receipts."  *See Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1352 (Fed. Cir. 2003) ("A court may not import into the claim features that are unnecessary to perform the claimed function.  Features that do not perform the recited function do not constitute corresponding structure and thus do not serve as claim limitations.") (citations omitted).

Likewise, as discussed above with regard to the "means for requiring . . ." term, Defendants have not shown that the claimed function for this term imposes any limitation that the PDA/cell phone must belong to the sender.  To the extent the claim distinguishes between "a sender PDA/cell phone and at least one recipient PDA/cell phone for each electronic message," this distinction need not be set forth as part of the corresponding structure for the present term. The disclosures cited by Defendants do not compel otherwise.  *See* '970 Patent at 8:1–5 & 8:12–15.

The Court therefore hereby finds that **"means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert"** is a means-plus-function term, the claimed function is **"receiving and**

displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert," and the corresponding structure is "PDA/cell phone hardware including display 16 and a wireless receiver and/or transceiver; and equivalents thereof."

**J.   "means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by § 112, ¶ 6.<br><br>Function:<br>    "periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert"<br><br>Structure:<br>    "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:64–8:8; and equivalents thereof" | Governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert"<br><br>Structure:<br>    "the forced-message alert software-application program on the sender PDA/cell phone that will 'periodically resend the forced message alert to the PC or PDA/cell phone that have [*sic*] not acknowledged receipt.' ('970 patent, 8:6–8, FIG. 3B)." |

(Dkt. No. 109, Ex. B, at 5–6; *id.*, Ex. C, at 7; Dkt. No. 116, at 20; Dkt. No. 128, App'x A, at 59.) The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 5–6; *id.*, Ex. C, at 7; Dkt. No. 128, App'x A, at 59.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6. / Function: 'periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert' / Structure: 'a PC or PDA/cell phone

configured to implement the algorithm disclosed in the '970 Patent at 7:64–67 and 8:6–8; and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff urges that "the Court's prior construction should stand" and that the Court should reject Defendants' proposal to modify the corresponding structure.  (Dkt. No. 116, at 20–21.)

Defendants respond that "it is *software* on the *sender* device—not the recipient's physical PDA/cell phone device as permitted by AGIS's proposal—that performs the claimed function." (Dkt. No. 120, at 28.)  Defendants also argue that "AGIS's inclusion of the disclosure at 7:64–8:5 in the corresponding structure is incorrect because that passage describes features unrelated to the recited function of periodically resending alerts, as the PTAB concluded."  (*Id.*, at 29.)

Plaintiff replies that "Defendants present no strong reason for the Court to abandon the prior construction in favor of a PTAB construction."  (Dkt. No. 123, at 8.)  Plaintiff argues that "[t]he prior construction properly identifies the special purpose machine," Defendants do not "identify[] any particular 'unrelated functions,'" and "Defendants' proposed structure unnecessarily incorporates additional function into the structure."  (*Id.*, at 9.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction.  Defendants argued that even though monitoring may precede resending, monitoring is a separate function.

(2)  Analysis

In *Huawei*, the parties agreed that 35 U.S.C. § 112, ¶ 6 applied and agreed on the claimed function, but the defendants in *Huawei* asserted indefiniteness because of a purported lack of corresponding structure.  *See Huawei* at 25–26.  The Court rejected the indefiniteness argument

and found that the corresponding structure is "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:64–8:8; and equivalents thereof." *See Huawei* at 26–28.

The PTAB found, in full, as follows:

> For the structure corresponding to the specified function of limitation 1.8, Petitioner identifies the forced message alert software application program functionality described at Ex. 1001 [('970 Patent)], 8:6–9 and Fig. 3A and 3B. Pet. 11–12. Patent Owner asserts we should adopt the "the algorithm disclosed . . . at 7:64–8:8; and equivalents thereof." PO Resp. 13.
>
> We are persuaded that Ex. 1001, 8:6–8 and the corresponding step in Figure 3B (second step) provide sufficient detail to disclose the applicable algorithm because they disclose "[t]he sender PC or PDA/cell phone will then periodically resend the forced message alert to the PC or PDA/cell phone that have not acknowledged receipt," and "[t]he sender cell phone, integrated PDA/cell phone or PC periodically resends the message alert to the recipient cell phones, integrated PDA/cell phones or PCs that have not acknowledged receipt," respectively. Ex. 1001, 8:6–8.
>
> Patent Owner is over-inclusive because the disclosure at Ex. 1001, 7:64–8:5 describes features unrelated to the function recited in limitation 1.8. *Cf. Asyst Techs*, 268 F.3d at 1369–70 ("Structural features that do not actually perform the recited function do not constitute corresponding structure and thus do not serve as claims limitations"). The features relate, for example, to monitoring for and receiving acknowledgments of receipt of forced message alerts, Ex. 1001, 7:64–67, and the sender PC or PDA/cell phone providing an indication on a display of which of the recipients have and have not acknowledged receipt, Ex. 1001, 8:1–5.
>
> For the foregoing reasons, we determine that the corresponding structure is a PDA/cell phone programmed to carry out the algorithm disclosed at Ex. 1001, 8:6–8 and corresponding step in Fig. 3B (second step in Figure 3B), and equivalents thereof.

(Dkt. No. 120, Ex. 1, Nov. 19, 2019 Final Written Decision, at 21–22 (footnote omitted).)

The parties and the PTAB thus all agree that the corresponding structure appears at least somewhere within the following disclosure in the specification (as well as in Figure 3B):

> After the forced message alert is transmitted, the sender PC or PDA/cell phone monitors for and receives electronic transmissions with acknowledgments of receipt from the PCs or PDA/cell phones that have received the forced message

alert.  Then, the sender PC or PDA/cell phone provides an indication of which of the PC or PDA/cell phone that the forced message alert was sent to have acknowledged receipt and which of the PC or PDA/cell phone that the forced message alert was sent to have not acknowledged receipt on its display.  The sender PC or PDA/cell phone will then periodically resend the forced message alert to the PC or PDA/cell phone that have not acknowledged receipt.

'970 Patent at 7:64–8:8.  The parties agree that the corresponding structure includes the last sentence of this paragraph, which appears at 8:6–8.

On balance, the beginning sentence of this paragraph, regarding monitoring for acknowledgements, is an integral part of periodically resending an alert to phones that have *not* acknowledged the alert.

As to the middle sentence of this paragraph, however, regarding providing an "indication" of which have acknowledged and which have not acknowledged, this is not necessary to perform the claimed function of periodically resending the alert.

The PTAB also cited the second step shown in Figure 3B, which states: "The sender cell phone, integrated PDA/cell phone or PC periodically resends the message alert to the recipient cell phones, integrated PDA/cell phones or PCs that have not acknowledged receipt."  This is substantially the same as the disclosure in the first and last sentences of the above-reproduced paragraph from the specification, so Figure 3B need not be included as part of the construction for corresponding structure.

Finally, as discussed above with regard to the "means for requiring . . ." term, Defendants have not shown that the claimed function for this term imposes any limitation that the PDA/cell phone must belong to the sender.  To the extent the claim distinguishes between "a sender PDA/cell phone and at least one recipient PDA/cell phone for each electronic message," this distinction need not be set forth as part of the corresponding structure for the present term.

The Court therefore hereby finds that **"means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert"** is a means-plus-function term, the claimed function is **"periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert,"** and the corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:64–67 and 8:6–8; and equivalents thereof."**

**K.  "means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by § 112, ¶ 6.<br><br>Function:<br>    "receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded"<br><br>Structure:<br>    "PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem; and equivalents thereof" | Governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded"<br><br>Structure:<br>    "hardware on the sender's PDA/cell phone including a display, such as display 16, and a wireless receiver and/or transceiver that receives electronic transmissions with manual responses and displays those responses on the sender's PDA/cell phone. (*See* '970 patent, 4:7–11, 8:1–5, 8:12–15, FIG. 1)." |

(Dkt. No. 109, Ex. B, at 6; *id.*, Ex. C, at 7–8; Dkt. No. 116, at 22; Dkt. No. 120, at 24–25; Dkt. No. 128, App'x A, at 61.)  The parties submit that this term appears in Claim 1 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 6; *id.*, Ex. C, at 7–8; Dkt. No. 128, App'x A, at 61.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6. / Function: 'receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded' / Structure: 'PDA/cell phone hardware including display 16 and a wireless receiver and/or transceiver; and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff urges that "the Court's prior construction should stand," and Plaintiff argues that "Defendants' proposed construction reads in additional narrowing limitations that are inconsistent with the specification." (Dkt. No. 116, at 22–23.)

Defendants responds as to this term together with a similar term in the same claim, "means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert," which is addressed above. (*See* Dkt. No. 120, at 25–27.)

Plaintiff does the same in its reply (*see* Dkt. No. 123, at 8), and the parties likewise submitted at the October 30, 2020 hearing that the same arguments apply to both terms.

(2)  Analysis

In *Huawei*, the parties reached agreement during the course of claim construction briefing, and the Court adopted the agreed-upon construction that this term is a means-plus-function term, the claimed function is "receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded," and the corresponding structure is

"PDA/cell phone hardware including touch screen 16, and wireless transmitter or cellular modem; and equivalents thereof."  *Huawei* at 28–29.

The PTAB analyzed this term together with a similar term in the same claim, "means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert," which is addressed above.  (*See* Dkt. No. 120, Ex. 1, Nov. 19, 2019 Final Written Decision, at 22-23.)

The Court reaches the same conclusions for the same reasons set forth above as to the similar term in the same claim.

The Court therefore hereby finds that **"means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded"** is a means-plus-function term, the claimed function is **"receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded,"** and the corresponding structure is **"PDA/cell phone hardware including display 16 and a wireless receiver and/or transceiver; and equivalents thereof."**

**L.  "means for transmitting the acknowledgment of receipt to said sender PDA/cellphone immediately upon receiving a forced message alert from the sender PDA/cellphone"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 112, ¶ 6.<br><br>Function:<br>    "transmitting the acknowledgement of receipt to said sender PDA/cellphone immediately upon receiving a forced message alert from the sender PDA/cellphone"<br><br>Structure:<br>    "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:8–8:36 and Fig. 4; and equivalents thereof" or "a PDA/cell phone hardware including wireless transmitter or cellular modem; and equivalents thereof" | Governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "transmit the acknowledgment of receipt to the sender PDA/cell phone immediately upon receiving a forced message alert from the sender PDA/cell phone. (*See* '970 patent, 9:40–63 (claim 2))."<br><br>Structure:<br>    "the forced message alert software on the recipient PDA/cell phone. (*See* '970 patent, 8:25–30, FIG. 4 at step 1))." |

(Dkt. No. 109, Ex. C, at 8–9; Dkt. No. 116, at 24; Dkt. No. 120, at 29–30; Dkt. No. 128, App'x A, at 62–63; *see* Dkt. No. 109, Ex. B, at 6–7.)  The parties submit that this term appears in Claim 2 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 6–7; *id.*, Ex. C, at 8–9; Dkt. No. 128, App'x A, at 62–63.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6. / Function: 'transmitting the acknowledgment of receipt to said sender PDA/cellphone immediately upon receiving a forced message alert from the sender PDA/cellphone' / Structure: 'a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:20–30; and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff argues that "[t]he disclosures of the '970 Patent show that the PC or PDA/cell phone on which the application is installed implements the algorithm disclosed at 7:8–8:36 and

Fig. 4," and "AGIS's proposed structure is in accordance with the Court's constructions of other means-plus terms." (Dkt. No. 116, at 25.) Plaintiff also submits that "Defendants' proposal would preclude the embodiment in which the structure is the 'recipient PC' expressly disclosed in the same passage of the specification which Defendants cite." (*Id.*, at 25–26 (citing '970 Patent at 8:25–30).) Plaintiff concludes that "Defendants' proposed construction both contradicts the disclosures of the '970 Patent and needlessly risks narrowing claim scope by reading structural elements in isolation." (*Id.*, at 26.)

Defendants respond that "[t]he specification explains that it is software running on the recipient's device that prepares and electronically transmits an acknowledgment of receipt to sender PDA/cell phones immediately after receiving a forced message alert." (Dkt. No. 120, at 32 (citing '970 Patent at 8:25–30 & Fig. 4).) Defendants also argue that "[t]he subject noun of th[e] 'receiving' step can only be the recipient device because a sender device would not receive a forced message alert from *itself*." (Dkt. No. 120, at 32.) Further, Defendants argue that "AGIS's identified algorithm spans nearly two full columns at 7:8–8:36, and describes many features that are unrelated to 'transmitting an acknowledgment of receipt' . . . ." (*Id.*, at 36.)

Plaintiff replies that Defendants' proposal of referring to "the forced message alert software on the recipient PDA/cell phone" should be rejected because "[t]he search for corresponding structure is not limited to the claims, but the whole disclosure." (Dkt. No. 123, at 9.) Plaintiff thus argues that "Defendants improperly isolate the claim language from the specification to find that the corresponding structure is limited to the *software* alone." (*Id.*, at 9–10.) Further, Plaintiff argues that "[w]hile the structure proposed by Defendants may be used to perform the function, the specification does not indicate that it is limited to one embodiment." (*Id.*, at 10.) "Lastly, AGIS incorporates by reference its discussion regarding the 'wireless

transmitter or cellular modem' structure from the foregoing discussion of the 'means for receiving and listing' claim limitations." (*Id.*, at 11.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction.  Defendants reiterated their arguments that the device for performing this function must be a recipient device.

(2)  Analysis

In *Huawei*, the parties did not present this term as a disputed term, so the Court did not address this term in *Huawei*.

In the present case, the parties agree that this is a means-plus-function term governed by 35 U.S.C. § 112, ¶ 6, and the parties substantially agree on the claimed function, but the parties dispute the corresponding structure.

Claim 2 of the '970 Patent recites (emphasis added):

2.   The system as in claim 1, wherein the forced message alert software application program on the recipient PDA/cell phone includes:
> *means for transmitting the acknowledgment of receipt to said sender PDA/cell phone immediately upon receiving a forced message alert from the sender PDA/cell phone*;
> means for controlling of the recipient PDA/cell phone upon transmitting said automatic acknowledgment and causing, in cases where the forced message alert is a text message, the text message and a response list to be shown on the display of the recipient PDA/cell phone or causes, in cases where the forced message alert is a voice message, the voice message being periodically repeated by the speakers of the recipient PDA/cell phone while said response list is shown on the display;
> means for allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone; and
> means for clearing the text message and a response list from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted.

The portion of the specification cited by Plaintiff discloses:

Referring now to FIG. 2, in order to set up a communication network that utilizes the forced message alert system, the forced message alert software application program must be installed on a plurality of PCs and/or PDA/cell phones. The application will provide for a forced alert message that can be designated for transmission according to several criteria: a.) A single PC and/or PDA/cell phone, b.) The list of users currently participating in the network, and c.) A user or administrator predefined list of network participants.

A required response list which will be either preinstalled in the phone application software or sent with the forced message alert will be presented to the user operator upon receipt of the forced message. When the forced text or voice alert is received, the user operator is presented with the required response list. In order to clear the forced text message alert from the user operator's PC or PDA/cell phone display, the user operator is required to select a reply from this list. If the alert is a voice message, the message keeps repeating at a defined rate until the user operator selects from the required response list. A military default response list would typically consist of choices such as, "will comply," "will not comply," and "have complied." However, depending on the nature of the industry in which the users in the communication network are in, this default response list could vary significantly.

The contact and identifying information for each PC and PDA/cell phone that is anticipated to be a member of the communication network and the default response list is loaded on to every member PC and PDA/cell phone in the preferred embodiment. This step makes sure the [*sic*, that] each user of the communication network has, in addition to the necessary software, the necessary information to send a forced message alert to any and every known member of the communication network. When operating in an open network mode where all that know the password can join the network, the default list is created or expanded as new members join.

Referring now to FIG. 3A and FIG. 3B, the process of sending a forced message alert from a PC or PDA/cell phone begins with a sender selecting the forced message alert software application program on a sender PC or PDA/cell phone. The sender can then select by said sender PC or PDA/cell phone to type a text message or record a voice message or select the text alert or voice alert from a list. Once the sender types a text message or records a voice message or selects a voice or text message on said PC or PDA/cell phone, the sender can then use a soft switch or selection from a list to send the forced alert to: a.) Another network participant, b.) The current PC or PDA/cell phone network participants or c.) A user or administrator predefined list of network participants. The response list from which the message receiver must select can either be included in the forced alert message or be preloaded in each phone. The forced alert message is then transmitted via TCP/IP or other digital transmission means to every PC or PDA/cell phone designated to receive the forced message alert either directly or

through a server whose function is to retransmit the messages to the correct users in the communications network.

After the forced message alert is transmitted, the sender PC or PDA/cell phone monitors for and receives electronic transmissions with acknowledgments of receipt from the PCs or PDA/cell phones that have received the forced message alert.  Then, the sender PC or PDA/cell phone provides an indication of which of the PC or PDA/cell phone that the forced message alert was sent to have acknowledged receipt and which of the PC or PDA/cell phone that the forced message alert was sent to have not acknowledged receipt on its display.  The sender PC or PDA/cell phone will then periodically resend the forced message alert to the PC or PDA/cell phone that have not acknowledged receipt.

The sender PC or PDA/cell phone also monitors for and receives electronic transmissions with manual responses to the forced message alert from the PC or PDA/cell phone that received the message.  As these electronic transmissions with manual responses are received, the sender PC or PDA/cell phone displays an indication of the response from each recipient cell phone, integrated PDA/cell phone and PC.

Referring now to FIG. 4, the process of receiving, acknowledging and responding to a forced message alert from the sender PC or PDA/cell phone begins when an electronic transmission is received by a recipient PC or PDA/cell phone.  When the electronic transmission is received by the recipient PC or PDA/cell phone, the recipient PC or PDA/cell phone identifies the transmission as a forced message alert and the forced message alert software application program on the recipient PC or PDA/cell phone separates the text or voice message and the forced message alert software packet.  *Immediately following the detection of the forced message alert, the forced message alert software application program on the recipient PC or PDA/cell phone prepares and electronically transmits an automatic acknowledgement of receipt to the sender PC or PDA/cell phone.*  However, if the recipient PC or PDA/cell phone is powered off or is not able to receive electronic transmissions, the forced message alert is not received by the recipient PC or PDA/cell phone and no acknowledgment is transmitted.  If no acknowledgement is received, the sender PC or PDA/cell phone continues to transmit the forced alert at a predefined rate until acknowledged.

'970 Patent at 7:8–8:36 (emphasis added); *see id.* at Fig. 4.

The emphasized portion of this disclosure, at 8:25–30, is Defendants' proposal for corresponding structure.  This portion of the disclosure pertains directly to the function of transmitting the acknowledgment of receipt immediately upon receiving a forced message alert.  Also, the preceding sentence relates to "identif[ying] the transmission as a forced message alert."

This is part of the corresponding structure because whereas the disclosure cited by Defendants refers to "*detection* of the forced message alert," the claimed function recites transmitting acknowledgement "upon *receiving* a forced message alert."   The disclosure regarding "identif[ying] the [received] transmission as a forced message alert" is therefore necessary for the claimed function.  *Id.* at 8:20–25.

As to the remainder of this disclosure, however, Plaintiff fails to show that those other portions are "clearly link[ed]" to the claimed function of transmitting the acknowledgment of receipt immediately upon receiving a forced message alert.  *Triton*, 753 F.3d at 1378.

Also, Defendants' proposal of including the first step of Figure 4 as part of the corresponding structure is unnecessary because this step in Figure 4—"The forced alert message is received by the recipient cell phone, integrated PDA/cell phone or PC.  In response to receipt of the forced alert message, the recipient phone software prepares and sends an automatic acknowledgement of the receipt to the sender cell phone, integrated PDA/cell phone or PC"—is substantially similar to the above-discussed disclosure in the written description.

Plaintiff fails to adequately justify its alternative proposal of "a PDA/cell phone hardware including wireless transmitter or cellular modem; and equivalents thereof."  (*See* Dkt. No. 116, at 24–26.)

Finally, as discussed above with regard to the "means for requiring . . ." term, Defendants propose "the forced message alert software on the *recipient* PDA/cell phone," but to the extent the claim distinguishes between a sender PDA/cell phone and a recipient PDA/cell phone, this distinction need not be set forth as part of the corresponding structure for the present term.

The Court therefore hereby finds that **"means for transmitting the acknowledgment of receipt to said sender PDA/cellphone immediately upon receiving a forced message alert**

from the sender PDA/cellphone" is a means-plus-function term, the claimed function is **"transmitting the acknowledgment of receipt to said sender PDA/cellphone immediately upon receiving a forced message alert from the sender PDA/cellphone,"** and the corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:20–30; and equivalents thereof."**

**M.   "means for controlling of the recipient PDA/cellphone upon transmitting said automatic acknowledgment and causing, in cases where the forced message alert is a text message, the text message and a response list to be shown on the display of the recipient PDA/cellphone or causes, in cases where the forced message alert is a voice message, the voice message being periodically repeated by the speakers of the recipient PDA/cellphone while said response list is shown on the display"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 112, ¶ 6.<br><br>Function:<br>    "controlling of the recipient PDA/cellphone upon transmitting said automatic acknowledgement and causing, in cases where the forced message alert is a text message, the text message and a response list to be shown on the display of the recipient PDA/cellphone or causes, in cases where the forced message alert is a voice message, the voice message being periodically repeated by the speakers of the recipient PDA/cellphone while said response list is shown on the display"<br><br>Structure:<br>    "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 patent at 7:43–63, 8:37–57; and equivalents thereof" | Governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "control the recipient PDA/cell phone upon transmitting the automatic acknowledgment and cause, in cases where the forced message alert is a text message, the text message and a response list to be shown on the display of the recipient PDA/cell phone or cause, in cases where the forced message alert is a voice message, the voice message to be periodically repeated by the speakers of the recipient PDA/cell phone while the response list is shown on the display. (*See* '970 patent, 9:40–63 (claim 2))."<br><br>Structure:<br>    "the forced message alert software on the recipient PDA/cell phone. (*See* '970 patent, 8:37–44, 8:46–50, FIG. 4 at step 2)." |

(Dkt. No. 109, Ex. C, at 9–10; Dkt. No. 116, at 27; Dkt. No. 120, at 30; Dkt. No. 128, App'x A, at 63–64; *see* Dkt. No. 109, Ex. B, at 6–7.)  The parties submit that this term appears in Claim 2

of the '970 Patent.  (Dkt. No. 109, Ex. B, at 6–7; *id.*, Ex. C, at 9–10; Dkt. No. 128, App'x A, at 62–63.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6.  Function: 'controlling of the recipient PDA/cellphone upon transmitting said automatic acknowledgment and causing, in cases where the forced message alert is a text message, the text message and a response list to be shown on the display of the recipient PDA/cellphone or causes, in cases where the forced message alert is a voice message, the voice message being periodically repeated by the speakers of the recipient PDA/cellphone while said response list is shown on the display' / Structure: 'a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:37–44 and 8:46–51; and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff argues that "[t]he disclosures of the '970 Patent show that the PC or PDA/cell phone configured to implement the algorithm is necessary to performing the claimed function," and "AGIS's proposed structure is in accordance with the Court's constructions of other means-plus terms."  (Dkt. No. 116, at 28.)

Defendants respond that "it only makes sense that software running on the recipient's PDA/cell phone could take control of that very PDA/cell phone."  (Dkt. No. 120, at 33.) Defendants argue that "AGIS's proposal, meanwhile, would permit the absurd outcome of a sender PDA/cell phone taking control of a PDA/cell phone belonging to another person, the recipient."  (*Id.*)  Defendants also argue that Plaintiff's proposed structure is over-inclusive because, as to the disclosures at 7:43–63, 8:44–46, and 8:51–57, "none of these disclosures relate

to the function of 'control[ling] the recipient PDA/cell phone upon transmitting the automatic acknowledgment.'" (*Id.*, at 37.)

Plaintiff replies as to this term together with the "means for transmitting . . ." term addressed above. (*See* Dkt. No. 123, at 9–11.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction. The parties presented substantially the same general arguments for this term as for the "means for transmitting . . ." term addressed above. Also, Defendants disagreed with the Court's preliminary construction including the disclosure at 8:50–51 as part of the corresponding structure, but Defendants stated that "it's not something we strongly oppose."

(2)  Analysis

In *Huawei*, the parties did not present this term as a disputed term, so the Court did not address this term in *Huawei*.

In the present case, the parties agree that this is a means-plus-function term governed by 35 U.S.C. § 112, ¶ 6, and the parties substantially agree on the claimed function, but the parties dispute the corresponding structure. The portion of the specification cited by Plaintiff discloses:

> Referring now to FIG. 3A and FIG. 3B, the process of sending a forced message alert from a PC or PDA/cell phone begins with a sender selecting the forced message alert software application program on a sender PC or PDA/cell phone. The sender can then select by said sender PC or PDA/cell phone to type a text message or record a voice message or select the text alert or voice alert from a list. Once the sender types a text message or records a voice message or selects a voice or text message on said PC or PDA/cell phone, the sender can then use a soft switch or selection from a list to send the forced alert to: a.) Another network participant, b.) The current PC or PDA/cell phone network participants or c.) A user or administrator predefined list of network participants. The response list from which the message receiver must select can either be included in the forced alert message or be preloaded in each phone. The forced alert message is then transmitted via TCP/IP or other digital transmission means to every PC or PDA/cell phone designated to receive the forced message alert either directly or through a server whose function is to retransmit the messages to the correct users in the communications network.

\* \* \*

*After the acknowledgement of receipt is transmitted, the forced voice alert software application program effectively takes control of the recipient PC or PDA/cell phone.  If a text message was received, the forced voice alert software application program causes the text message and the response list to be shown on the display of the recipient PC or PDA/cell phone until a manual response is selected from the response list.*  Upon selection of the desired response, the forced alert text data is cleared from the recipient PC or PDA/cell phone display.  *If a voice message was received, the forced voice alert software application program causes the voice message to be periodically repeated using the speakers of the recipient PC or PDA/cell phone while the response list is shown on the display.*  This voice message cannot be stopped from repeating until one of the entries on the response list is selected.

Once a response is selected or recorded and transmitted to the sender PC or PDA/cell phone, the forced message alert software application program releases effective control of the recipient PC or PDA/cell phone, clears the display, and[/]or stops repeating the voice message and transmits the response to the forced [*sic*] alert sender.

'970 Patent at 7:43–63 & 8:37–57 (emphasis added); *see id.* at Fig. 4.

The emphasized portions of the above-reproduced disclosures, at 8:37–44 and 8:46–50, are Defendants' proposal for corresponding structure.  These portions of the disclosure pertain directly to the function of controlling the recipient PDA/cellphone upon transmitting the automatic acknowledgment and showing a text message or repeatedly playing a voice message.  Also, the disclosure that "[t]his voice message cannot be stopped from repeating until one of the entries on the response list is selected" (*id.* at 8:50–51) relates to function of "the voice message being periodically repeated by the speakers of the recipient PDA/cellphone while said response list is shown on the display" and should therefore be included as part of the corresponding structure.

As to the remainder of these above-reproduced disclosures, however, Plaintiff fails to show that these portions are "clearly link[ed]" to the claimed function.  *Triton*, 753 F.3d at 1378.

Defendants' proposal of including the second step of Figure 4 as part of the corresponding structure is unnecessary because this step in Figure 4—"After the acknowledgement of receipt is sent, the forced voice alert software takes control of the recipient's cell phone, integrated PDA/cell phone or PC and causes the text message to be displayed or the voice message to be periodically repeated and a list of responses to be shown on the display of the recipient cell phone integrated PDA/cell phone or PC PDA/cell"—is substantially similar to the above-discussed disclosure in the written description.

Finally, as discussed above with regard to the "means for requiring . . ." term, Defendants propose "the forced message alert software on the *recipient* PDA/cell phone," but to the extent the claim distinguishes between a sender PDA/cell phone and a recipient PDA/cell phone, this distinction need not be set forth as part of the corresponding structure for the present term.

The Court therefore hereby finds that **"means for controlling of the recipient PDA/cellphone upon transmitting said automatic acknowledgment and causing, in cases where the forced message alert is a text message, the text message and a response list to be shown on the display of the recipient PDA/cellphone or causes, in cases where the forced message alert is a voice message, the voice message being periodically repeated by the speakers of the recipient PDA/cellphone while said response list is shown on the display"** is a means-plus-function term, the claimed function is **"controlling of the recipient PDA/cellphone upon transmitting said automatic acknowledgment and causing, in cases where the forced message alert is a text message, the text message and a response list to be shown on the display of the recipient PDA/cellphone or causes, in cases where the forced message alert is a voice message, the voice message being periodically repeated by the speakers of the recipient PDA/cellphone while said response list is shown on the display,"**

72 / 99

and the corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:37–44 and 8:46–51; and equivalents thereof."**

**N.  "means for allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 112, ¶ 6.<br><br>Function:<br>    "allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone"<br><br>Structure:<br>    "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 patent at 7:43–63, 8:9–57; and equivalents thereof" | Governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "allow a manual response to be manually selected from the response list or manually recorded and to transmit the manual response to the sender PDA/cell phone.  (*See* '970 patent, 9:40–63 (claim 2))."<br><br>Structure:<br>    "the forced message alert software on the recipient PDA/cell phone.  (*See* '970 patent, 8:52–57, FIG. 4 at step 3)." |

(Dkt. No. 109, Ex. C, at 10–11; Dkt. No. 116, at 29; Dkt. No. 120, at 30–31; Dkt. No. 128, App'x A, at 65; *see* Dkt. No. 109, Ex. B, at 8.)  The parties submit that this term appears in Claim 2 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 8; *id.*, Ex. C, at 10–11; Dkt. No. 128, App'x A, at 65.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6. / Function: 'allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone' / Structure: 'a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:39–44 & 8:52–57; and equivalents thereof.'"

<u>(1)  The Parties' Positions</u>

Plaintiff argues that "[t]he disclosures of the '970 Patent show that the PC or PDA/cell phone configured to implement the algorithm is necessary to performing the claimed function," and "AGIS's proposed structure is in accordance with the Court's constructions of other means-plus terms."  (Dkt. No. 116, at 29.)

Defendants respond that "[t]he device performing the step of 'transmitting . . . to the sender' must [be] the 'recipient' because a sender would not transmit a manual response to *itself*."  (Dkt. No. 120, at 33.)  Defendants also argue that "AGIS's cited sections encompass many unrelated functions."  (*Id.*, at 37.)

Plaintiff replies as to this term together with the "means for transmitting . . ." term addressed above.  (*See* Dkt. No. 123, at 9–11.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction.  The parties presented substantially the same general arguments for this term as for the "means for transmitting . . ." term addressed above.

<u>(2)  Analysis</u>

In *Huawei*, the parties did not present this term as a disputed term, so the Court did not address this term in *Huawei*.

In the present case, the parties agree that this is a means-plus-function term governed by 35 U.S.C. § 112, ¶ 6, and the parties substantially agree on the claimed function, but the parties dispute the corresponding structure.  The portion of the specification cited by Plaintiff discloses:

> Referring now to FIG. 3A and FIG. 3B, the process of sending a forced message alert from a PC or PDA/cell phone begins with a sender selecting the forced message alert software application program on a sender PC or PDA/cell phone. The sender can then select by said sender PC or PDA/cell phone to type a text message or record a voice message or select the text alert or voice alert from a list.  Once the sender types a text message or records a voice message or selects a

voice or text message on said PC or PDA/cell phone, the sender can then use a soft switch or selection from a list to send the forced alert to: a.) Another network participant, b.) The current PC or PDA/cell phone network participants or c.) A user or administrator predefined list of network participants.  The response list from which the message receiver must select can either be included in the forced alert message or be preloaded in each phone.  The forced alert message is then transmitted via TCP/IP or other digital transmission means to every PC or PDA/cell phone designated to receive the forced message alert either directly or through a server whose function is to retransmit the messages to the correct users in the communications network.

* * *

The sender PC or PDA/cell phone also monitors for and receives electronic transmissions with manual responses to the forced message alert from the PC or PDA/cell phone that received the message.  As these electronic transmissions with manual responses are received, the sender PC or PDA/cell phone displays an indication of the response from each recipient cell phone, integrated PDA/cell phone and PC.

Referring now to FIG. 4, the process of receiving, acknowledging and responding to a forced message alert from the sender PC or PDA/cell phone begins when an electronic transmission is received by a recipient PC or PDA/cell phone.  When the electronic transmission is received by the recipient PC or PDA/cell phone, the recipient PC or PDA/cell phone identifies the transmission as a forced message alert and the forced message alert software application program on the recipient PC or PDA/cell phone separates the text or voice message and the forced message alert software packet.  Immediately following the detection of the forced message alert, the forced message alert software application program on the recipient PC or PDA/cell phone prepares and electronically transmits an automatic acknowledgement of receipt to the sender PC or PDA/cell phone.  However, if the recipient PC or PDA/cell phone is powered off or is not able to receive electronic transmissions, the forced message alert is not received by the recipient PC or PDA/cell phone and no acknowledgment is transmitted.  If no acknowledgement is received, the sender PC or PDA/cell phone continues to transmit the forced alert at a predefined rate until acknowledged.

After the acknowledgement of receipt is transmitted, the forced voice alert software application program effectively takes control of the recipient PC or PDA/cell phone.  *If a text message was received, the forced voice alert software application program causes the text message and the response list to be shown on the display of the recipient PC or PDA/cell phone until a manual response is selected from the response list.*  Upon selection of the desired response, the forced alert text data is cleared from the recipient PC or PDA/cell phone display.  If a voice message was received, the forced voice alert software application program causes the voice message to be periodically repeated using the speakers of the

recipient PC or PDA/cell phone while the response list is shown on the display. This voice message cannot be stopped from repeating until one of the entries on the response list is selected.

*Once a response is selected or recorded and transmitted to the sender PC or PDA/cell phone, the forced message alert software application program releases effective control of the recipient PC or PDA/cell phone, clears the display, and[/]or stops repeating the voice message and transmits the response to the force [sic] alert sender.*

'970 Patent at 7:43–63 & 8:9–57 (emphasis added); *see id.* at Fig. 4.

The second emphasized portion of the above-reproduced disclosure, at 8:52–57, is Defendants' proposal for corresponding structure. Defendants also cite the first emphasized portion of the above-reproduced disclosure, at 8:39–44, in Defendants' responsive claim construction brief. (Dkt. No. 120, at 33.) Both of these portions of the disclosure pertain directly to the function of allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone.

As to the remainder of this disclosure, however, Plaintiff fails to show that these portions are "clearly link[ed]" to claimed function. *Triton*, 753 F.3d at 1378.

Also, Defendants' proposal of including the third step of Figure 4 as part of the corresponding structure is unnecessary because this step in Figure 4—"The recipient selects a response from the response list and the recipient cell phone and [*sic*] transmits the response to the sender[']s cell phone"—is substantially similar to the above-discussed disclosure in the written description.

Finally, as discussed above with regard to the "means for requiring . . ." term, Defendants propose "the forced message alert software on the *recipient* PDA/cell phone," but to the extent the claim distinguishes between a sender PDA/cell phone and a recipient PDA/cell phone, this distinction need not be set forth as part of the corresponding structure for the present term.

The Court therefore hereby finds that **"means for allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone"** is a means-plus-function term, the claimed function is **"allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone,"** and the corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:39–44 & 8:52–57; and equivalents thereof."**

**O. "means for clearing the text message and a response list from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Governed by 112, ¶ 6.<br><br>Function:<br>    "clearing the text message and a response list from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted"<br><br>Structure:<br>    "a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 7:17–27, 8:37–57; and equivalents thereof" | Governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "clear the text message and a response list from the display of the recipient PDA/cell phone, or stop the repeating voice message and clear the response list from the display of the recipient PDA/cell phone once the manual response is transmitted.   (*See* '970 patent, 9:40–63 (claim 2))."<br><br>Structure:<br>    "the forced message alert software on the recipient PDA/cell phone.   (*See* '970 patent, 8:44–46, 8:52–57, FIG. 4 at step 4)." |

(Dkt. No. 109, Ex. B, at 8–9; *id.*, Ex. C, at 11; Dkt. No. 116, at 30; Dkt. No. 120, at 31; Dkt. No. 128, App'x A, at 66.)   The parties submit that this term appears in Claim 2 of the '970 Patent.  (Dkt. No. 109, Ex. B, at 8–9; *id.*, Ex. C, at 11; Dkt. No. 128, App'x A, at 66.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Governed by 35 U.S.C. § 112, ¶ 6. / Function: 'clearing the text message and a response list from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted' / Structure: 'a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:44–46 and 8:52–57; and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff argues that "[t]he disclosures of the '970 Patent show that the PC or PDA/cell phone configured to implement the algorithm is necessary to performing the claimed function," and "AGIS's proposed structure is in accordance with the Court's constructions of other means-plus terms."  (Dkt. No. 116, at 30.)

Defendants respond that "[t]he steps of clearing messages and lists from the 'recipient' device could only be performed by the 'recipient' device itself and software running on it, not by another 'sender' device."  (Dkt. No. 120, at 34.)  Defendants also argue that Plaintiff's proposed algorithm is overbroad.  (*Id.*, at 38.)

Plaintiff replies as to this term together with the "means for transmitting . . ." term addressed above.  (*See* Dkt. No. 123, at 9–11.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction.  The parties presented substantially the same general arguments for this term as for the "means for transmitting . . ." term addressed above.

(2)  Analysis

In *Huawei*, the parties did not present this term as a disputed term, so the Court did not address this term in *Huawei*.

In the present case, the parties agree that this is a means-plus-function term governed by 35 U.S.C. § 112, ¶ 6, and the parties substantially agree on the claimed function, but the parties dispute the corresponding structure.  The portion of the specification cited by Plaintiff discloses:

> A required response list which will be either preinstalled in the phone application software or sent with the forced message alert will be presented to the user operator upon receipt of the forced message.  When the forced text or voice alert is received, the user operator is presented with the required response list.  In order to clear the forced text message alert from the user operator's PC or PDA/cell phone display, the user operator is required to select a reply from this list.  If the alert is a voice message, the message keeps repeating at a defined rate until the user operator selects from the required response list.
>
> * * *
>
> After the acknowledgement of receipt is transmitted, the forced voice alert software application program effectively takes control of the recipient PC or PDA/cell phone.  If a text message was received, the forced voice alert software application program causes the text message and the response list to be shown on the display of the recipient PC or PDA/cell phone until a manual response is selected from the response list.  *Upon selection of the desired response, the forced alert text data is cleared from the recipient PC or PDA/cell phone display.*  If a voice message was received, the forced voice alert software application program causes the voice message to be periodically repeated using the speakers of the recipient PC or PDA/cell phone while the response list is shown on the display.  This voice message cannot be stopped from repeating until one of the entries on the response list is selected.
>
> *Once a response is selected or recorded and transmitted to the sender PC or PDA/cell phone, the forced message alert software application program releases effective control of the recipient PC or PDA/cell phone, clears the display, and*[/]*or stops repeating the voice message and transmits the response to the force* [*sic*] *alert sender.*

'970 Patent at 7:17–27 & 8:37–57 (emphasis added); *see id.* at Fig. 4.

The emphasized portions of the above-reproduced disclosures, at 8:44–46 and 8:52–57, are Defendants' proposal for corresponding structure.  These portions of the disclosure pertain directly to the function of clearing the text message and a response list from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted.

As to the remainder of this disclosure, however, Plaintiff fails to show that these portions are "clearly link[ed]" to the claimed function.  *Triton*, 753 F.3d at 1378.

Also, Defendants' proposal of including the fourth step of Figure 4 as part of the corresponding structure is unnecessary because this step in Figure 4—"The forced message alert software releases control of the recipient cell phone, integrated PDA/cell phone or PC and clears the display or stops repeating the voice message"—is substantially similar to the above-discussed disclosure in the written description.

Finally, as discussed above with regard to the "means for requiring . . ." term, Defendants propose "the forced message alert software on the *recipient* PDA/cell phone," but to the extent the claim distinguishes between a sender PDA/cell phone and a recipient PDA/cell phone, this distinction need not be set forth as part of the corresponding structure for the present term.

The Court therefore hereby finds that **"means for clearing the text message and a response list from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted"** is a means-plus-function term, the claimed function is **"clearing the text message and a response list from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted,"** and

the corresponding structure is **"a PC or PDA/cell phone configured to implement the algorithm disclosed in the '970 Patent at 8:44–46 and 8:52–57; and equivalents thereof."**

**P. "spatial coordinates"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "two or more numbers that together define a geographic position, such as latitude and longitude" |

(Dkt. No. 109, Ex. B, at 9–10; *id.*, Ex. C, at 12; Dkt. No. 116, at 31; Dkt. No. 120, at 38; Dkt. No. 128, App'x A, at 67.)  The parties submit that this term appears in Claims 1, 14, 19, and 24 of the '251 Patent, Claims 1, 22, 23, and 54 of the '838 Patent, Claims 1, 34, and 35 of the '829 Patent, and Claims 1, 14, 18, 23, 36, 41, and 48 of the '123 Patent.  (Dkt. No. 109, Ex. B, at 9–10; *id.*, Ex. C, at 12; Dkt. No. 128, App'x A, at 67.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "'characters that together define a geographic position' / Note: Reject Defendants' proposal of 'numbers' and 'such as latitude and longitude.'"

(1)  The Parties' Positions

Plaintiff argues that "Defendants' proposed construction improperly limits the term to 'numbers' such as latitude and longitude," and "Defendants' construction is contrary to the disclosures of the specification."  (Dkt. No. 116, at 32.)  Plaintiff submits that "the '251 Patent does not disclose that the x and y location *must* be represented as numbers or that the spatial coordinates cannot be encoded or encrypted in any way."  (*Id.*)  Further, Plaintiff argues that Defendants' reliance on extrinsic evidence should be rejected because the term at issue is not ambiguous.  (*Id.*, at 32–33.)

Defendants respond that they "propose that 'spatial coordinates' are numbers because this is consistent with both the intrinsic and extrinsic evidence and the ordinary meaning of the term in the art." (Dkt. No. 120, at 38.)  Defendants also respond to Plaintiff's reliance on disclosures regarding "x" and "y" by arguing that "even if 'x and y' are spatial coordinates as AGIS contends, these passages make clear that 'x and y' are two variables, each representing a number in a mathematical algorithm."  (*Id.*, at 39.)  Further, Defendants argue that "the extrinsic evidence sheds light on the relevant art as different dictionaries define 'coordinates' as including a 'set of numbers.'"  (*Id.*, at 40.)  Defendants urge that "[t]he specification does not define 'spatial coordinates' differently from its ordinary meaning, which makes sense because that is a well-known phrase that has an accepted meaning."  (*Id.*)

Plaintiff replies that "[i]ntroducing an example embodiment into the claim is unnecessary and unhelpful to the jury."  (Dkt. No. 123, at 11.)  "Moreover," Plaintiff argues, "it is well-known that the spatial coordinates may be implemented in numerous ways, including text strings."  (*Id.*)  Plaintiff also urges that "Defendants' argument that spatial coordinates cannot []represent a 'display screen location' and 'selected position' contradicts the language of the claims which recite, for example, 'identifying the particular user-selectable symbol based, at least in part, on the spatial coordinates represented by the selected position.'"  (*Id.* (citing '251 Patent at Cl. 13) (emphasis omitted).)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction.  Defendants urged that "spatial coordinates" is not a coined term.  Rather, Defendants argued, this term is well-known and is known as referring to numbers.

(2)  Analysis

The parties have discussed, as examples, Claims 1, 13, and 22 of the '251 Patent, which

recite (emphasis added):

1.  A computer-implemented method comprising:
      with a first device, receiving a message from a second device, wherein the message relates to joining a group;
      based on receiving the message from the second device, participating in the group, wherein participating in the group includes sending first location information to a server and receiving second location information from the server, the first location information comprising a location of the first device, the second location information comprising a plurality of locations of a respective plurality of second devices included in the group;
      presenting, via an interactive display of the first device, a first interactive, georeferenced map and a plurality of user-selectable symbols corresponding to the plurality of second devices, *wherein the symbols are positioned on the first georeferenced map at respective positions corresponding to the locations of the second devices, and wherein the first georeferenced map includes data relating positions on the first georeferenced map to spatial coordinates*;
      sending, from the first device to the server, a request for a second georeferenced map different from the first georeferenced map, wherein the request specifies a map location;
      receiving, from the server, the second georeferenced map, wherein the second georeferenced map includes the requested location and data relating positions on the second georeferenced map to *spatial coordinates*;
      presenting, via the interactive display of the first device, the second georeferenced map and the plurality of user-selectable symbols corresponding to the plurality of second devices, wherein the symbols are positioned on the second georeferenced map at respective positions corresponding to the locations of the second devices; and
      identifying user interaction with the interactive display selecting one or more of the user-selectable symbols corresponding to one or more of the second devices and positioned on the second georeferenced map and user interaction with the display specifying an action and, based thereon, using an Internet Protocol to send data to the one or more second devices via the server,
      wherein the first device does not have access to respective Internet Protocol addresses of the second devices.

* * *

13.  The method of claim 1, further comprising identifying, by the first device, user interaction with the display selecting a particular user-selectable symbol positioned on the second georeferenced map and corresponding to a particular

second device, wherein identifying the user interaction selecting the particular user-selectable symbol comprises:

detecting user selection of a portion of the interactive display corresponding to a position on the second georeferenced map;

based at least in part on coordinates of the selected position on the second georeferenced map and on the data relating positions on the second georeferenced map to *spatial coordinates*, *determining spatial coordinates of a location represented by the selected position on the second georeferenced map*; and

identifying the particular user-selectable symbol based, at least in part, on the *spatial coordinates represented by the selected position*.

\* \* \*

22.  The method of claim 1, wherein the *spatial coordinates* comprise latitude and longitude coordinates.

No party contends that the patents-in-suit define the term "spatial coordinates" or otherwise set forth any lexicography for this term.

Surrounding claim language—such as the recitals of a "georeferenced map," "positions corresponding to the locations," and "wherein the first georeferenced map includes data relating positions on the first georeferenced map to spatial coordinates"—imposes no restriction on how the "corresponding" or "relating" must occur.

The specification of the '251 Patent discloses:

The map, fixed entities, events and cellular phone/PDA/GPS device communication net participants' latitude and longitude information is related to the "x" and "y" location on the touch screen display map by a mathematical correlation algorithm.

'251 Patent at 7:66–8:3; *see id.* at 7:4–6 ("The software has an algorithm that relates the x and y coordinates to latitude and longitude . . . ."); *see also id.* at 8:64–67 ("the application code detects the x, y display screen location of the symbol that is designated by the user's stylus and translates the x, y coordinates to latitude and longitude").

Although the parties appear to agree that latitude and longitude are ordinarily represented as numbers, a limitation that "the spatial coordinates comprise latitude and longitude coordinates" is recited in a *dependent* claim.  '251 Patent at Cl. 22.

The specification does not address whether "x" and "y" must be numbers or whether "coordinates" must be numbers.  Defendants submit that "coordinates" is a well-understood term in the relevant art and that "extrinsic evidence sheds light on the relevant art as different dictionaries define 'coordinates' as including a 'set of numbers'" (Dkt. No. 120, at 40):

> "any of a set of numbers used in specifying the location of a point on a line, on a surface, or in space" (Dkt. No. 120, Ex. 5, *Merriam-Webster Collegiate Dictionary* 275 (11th ed. 2005));[4]
>
> "any of a set of numbers that defines the location of a point in space" (*id.*, Ex. 6, *Collins English Dictionary* 371 (7th ed. 2005));[5] and
>
> "[a]ny of a set of numbers that determines the position of a point in a space of a given dimension" (*id.*, Ex. 7, *The American Heritage Desk Dictionary and Thesaurus* 168 (2005).)[6]

On balance, however, these extrinsic general-purpose dictionaries cited by Defendants fail to adequately support Defendants' assertions that spatial coordinates must be numbers and that "[a] mathematical algorithm as described in these passages operates on numbers, not other expressions such as letters."  (Dkt. No. 120, at 39.)  Defendants cite authority that dictionaries can be consulted "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent document."  *Phillips*, 415 F.3d at 1322–23 (quoting *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996)).  Here, however,

---

[4] This dictionary also includes definitions of "spatial" as: "1 : relating to, occupying, or having the character of space  2 : of or relating to facility in perceiving relations (as of objects) in space."  (*Id.* at 1196.)

[5] This dictionary also includes definitions of "spatial" as: "1[.] of or relating to space  2[.] existing or happening in space."  (*Id.* at 1546.)

[6] This dictionary defines "spatial" as: "Relating to space."  (*Id.* at 698.)

relying heavily on the dictionary definitions submitted by Defendants would "risk[] transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id.* at 1321.  The above-reproduced claims and above-cited disclosures reflect that using latitude and longitude relate to implementation details of embodiments.   To the extent, if any, that disclosures regarding latitude, longitude, and algorithms imply that spatial coordinates are numbers, these specific features of particular disclosed embodiments should not be imported into the claims.  *See Phillips*, 415 F.3d at 1323 ("persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments").

Based on all of the foregoing, construction is appropriate to resolve the parties' dispute regarding this term, and Defendants fail to persuasively justify limiting this term to "numbers." Instead, the broader word "characters" is appropriate, and the above-discussed evidence demonstrates that the word "characters" will be readily understood in the context of the patents-in-suit and will assist the finder of fact in understanding the scope of the claims.

The Court therefore hereby construes **"spatial coordinates"** to mean **"characters that together define a geographic position."**

### Q.  "Short Message Service (SMS) messages"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "cellular based messages of limited size consisting of text and numbers" | "cellular based messages of limited size consisting of text and numbers that follow the Short Message Service protocol defined in the GSM cellular phone standard"[7] |

---

[7] Defendants previously proposed: "cellular based messages of limited size consisting of text and numbers *that are sent over the cellular network signaling channel* and that follow the Short Message Service protocol defined in the GSM cellular phone standard."  (Dkt. No. 109, Ex. C, at 12–13 (emphasis added).)  Defendants submit that "[i]n an effort to narrow the disputes at

(Dkt. No. 109, Ex. B, at 10; Dkt. No. 116, at 33; Dkt. No. 120, at 41; Dkt. No. 128, App'x A, at 93.)  The parties submit that this term appears in Claims 1, 28, 31, and 41 of the '055 Patent. (Dkt. No. 109, Ex. B, at 10; *id.*, Ex. C, at 12–13; Dkt. No. 128, App'x A, at 93.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "cellular based messages of limited size consisting of text and numbers."

(1)  The Parties' Positions

Plaintiff submits that it proposes the Court's prior construction, and Plaintiff argues that "[t]he specification does not identify any specific protocols or methods by which Short Message Service (SMS) messages must be sent."  (Dkt. No. 116, at 33.)  Plaintiff also argues that Defendants' reliance on extrinsic evidence should be rejected because the term at issue is not ambiguous.  (*Id.*, at 33–34.)

Defendants respond that "[w]here, as here, a term refers to a technology or standard known in the art, it is appropriate to construe such terms by referencing that technology or standard."  (Dkt. No. 120, at 42.)  Defendants urge that "[t]he patentee wrote the claims to require 'Short Message Service (SMS) messages' without further elaboration, understanding that the intended reader would know this to reference the SMS protocol."  (Dkt. No. 120, at 44.)

Plaintiff replies that "Defendants' proposal improperly limits the term to a particular embodiment that ties the short message service (SMS) messages specifically to the GSM standard, an outdated 2G standard that is no longer used by many networks across the United States."  (Dkt. No. 123, at 12.)  Plaintiff argues that Defendants' proposal "is unhelpful to the

---

issue, [Defendants] ha[ve] dropped from [their] proposal the following language as unnecessary: 'that are sent over the cellular network signaling channel.'"  (Dkt. No. 120, at 41.)

jury because it introduces new terms that are not present in the specification and a technical standard that is not explained in the specification." (*Id.*) Plaintiff also submits that "short message service (SMS) messages are used in other mobile communication standards including 3G, LTE, and 5G," "SMS is currently defined by a different standard of the 3GPP alliance," and "SMS messages come in a variety of implementations for numerous modern applications." (*Id.*) Plaintiff concludes that "this issue is appropriate for technical expert testimony, not attorney argument on claim construction." (*Id.*)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction.

Defendants argued that the Court's preliminary construction would improperly encompass all manner of communications sent from a cell phone, such as e-mail, calendar invitations, Tweets, and Facebook posts. Defendants noted that Claim 7 of the '251 Patent refers to (emphasis added): "a Short Message Service ('SMS') message *or* text message." Defendants also argued that this disputed term is well-known in the relevant art and is used in various standards promulgated by the 3rd Generation Partnership Project ("3GPP"). Defendants presented the following alternative proposed construction: "cellular based messages of limited size consisting of text and numbers that follow the Short Message Service protocols published by the 3rd Generation Partnership Project (3GPP)." Defendants submitted that their proposal in this regard would account for changes in the meaning of the disputed term over time.

Plaintiff responded that "limited size" would be understood by persons of ordinary skill in the art. Plaintiff also argued that the patentee used this SMS term, which refers to cellular-based messages, to distinguish such messages from the "IP-based messages" that are recited elsewhere in the claims at issue.

(2)  Analysis

In *Huawei*, after the close of claim construction briefing, the parties agreed that this term should be construed to mean "cellular based messages of limited size consisting of text and numbers," and the Court adopted this agreed-upon construction.  *Huawei* at 56.

Defendants propose that Short Message Service (SMS) refers to particular cellular communications standards, such as the Global System for Mobile Communications ("GSM"). Defendant cites the Court's claim construction in *E2E Processing, Inc. v. Cabela's Inc., et al.*, No. 2:14-CV-36, 2015 WL 4051423, at *12 (E.D. Tex. Jul. 2, 2015) (Payne, J.), which found that the term "internet server application program interface component" was a term of art and meant "a dynamic link library ('DLL') used by Internet Information Server ('IIS'), a product of Microsoft Corporation."  *Id.*, at *13.  *E2E* noted that "the patentee used a term with a well-known meaning in the relevant art," "the specification contains no clear basis for departing from that well-known meaning," and "[u]nder such circumstances, the well-known meaning in the relevant art applies."  *Id.*, at *14.

*E2E* noted, however, that the patentee "appears to acknowledge that 'ISAPI' is commonly used as an acronym for a dynamic link library ('DLL') used by Internet Information Server ('IIS'), a product of Microsoft Corporation."  *Id.*, at *13 (citing briefing and evidence).  In *E2E*, the patentee argued that because the claim was amended during prosecution to replace "ISAPI" with "internet server application program interface component," the term should not be limited to the Microsoft product.  *Id.*  *E2E* rejected this argument, noting that the examiner objected that the acronym ISAPI should be spelled out, and "the patentee did not remove the 'ISAPI' limitation entirely but rather merely spelled out that acronym in response to the examiner's objection . . . ."  *Id.*, at *13–*14.

In the present case, unlike in *E2E*, Plaintiff has *not* acknowledged that the term at issue (either spelled out or in acronym form) is commonly used to refer to a particular product or standard.  *See id.*  *E2E* is therefore distinguishable and is unpersuasive.  The *Boehringer* case cited by Defendants, in which the patentee "chose to claim its virus using the term 'ATCC–VR2332,' a term on its face referring to a particular ATCC deposit," is likewise distinguishable because there was no dispute that "ATCC" was known in the relevant art as referring to the American Type Culture Collection.  *See Boehringer Ingelheim Vetmedica, Inc. v. Schering–Plough Corp.*, 320 F.3d 1339, 1348 (Fed. Cir. 2003).

Defendants purport to prove that the term "Short Message Service (SMS)" is known in the relevant art as referring to GSM.  Defendants submit extrinsic evidence in the form of two technical dictionaries and one technical specification:

> Hargrave's Communications Dictionary defines "short message service (SMS)" to mean "An add-on facility of the Global System for Mobile communications (GSM) digital cellular service that allows the transmission of limited text messages similar to those of pagers."  [(Dkt. No. 120,] Ex. 8[, *Hargrave's Communications Dictionary*] 467 [(2001)].

> The Dictionary of Multimedia entry for Short Message Service explains "Global System for Mobile Communications (GSM) phones have SMS capability."  [(Dkt. No. 120,] Ex. 9[, *The Dictionary of Multimedia Terms & Acronyms*] 380 (4th ed. 2005)].

> The introduction to a technical specification for SMS explains "The Point-to-Point Short Message Service (SMS) provides a means of sending messages of limited size to and from GSM mobiles."  [(Dkt. No. 120,] Ex. 10[, 3G TS 23.040 V2.0.0] 6 [(June 1996).]

(Dkt. No. 120, at 42.)

Although this evidence perhaps establishes that the term "Short Message Service (SMS)" has been known in the art as having a *particular meaning in the context of* GSM, Defendants fail to adequately demonstrate that the term "Short Message Service (SMS)" has been known in the

art as *limited to* GSM.  At the October 30, 2020 hearing, Defendants alternatively proposed referring to "the Short Message Service protocols published by the 3rd Generation Partnership Project (3GPP)" so as to account for changes over time, but here again Defendants fail to demonstrate that a person of ordinary skill in the art would necessarily understand "Short Message Service (SMS)" as limited to these standards.

Instead, the context in which the patentee used "Short Message Service (SMS)" reflects a distinction between cellular-based messages and "IP-based" messages.  The specification discloses that "SMS is integrated with the cell phone's voice communications."  '055 Patent at 13:55–56.  Claim 1 of the '055 Patent, for example, recites in relevant part (emphasis added):

> 1.  A method comprising:
>     performing by a first device:
>         obtaining contact information of a plurality of second devices, wherein the contact information comprises respective telephone numbers of the second devices;
>         facilitating initiation of *Internet Protocol (IP) based communication* between the first device and the respective second devices by using respective telephone numbers to send, from the first device to the second devices, respective *Short Message Service (SMS)* messages including a telephone number of the first device and information usable b[y] the respective second device to send *IP-based communication* to the first device;
>         receiving respective *IP-based responses* to the *SMS messages*, wherein the *IP-based responses* to the *SMS messages* include location information of the respective second devices; * * *

Based on all of the foregoing, the Court rejects Defendants' proposed construction and adopts a construction that gives effect to the patentee's distinction between cellular-based messages and "IP-based" messages.

The Court accordingly hereby construes **"Short Message Service (SMS) messages"** to mean **"cellular-based (rather than IP-based) messages of limited size consisting of text and numbers."**

**R.  "facilitating initiation of Internet Protocol (IP) based communication between the first device and the respective second devices"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "activating inactive Internet Protocol (IP) communication systems in the respective second devices to allow IP-based communications between the first device and the respective second devices" |

(Dkt. No. 109, Ex. B, at 10–11; *id.*, Ex. C, at 14–15; Dkt. No. 116, at 34; Dkt. No. 120, at 44; Dkt. No. 128, App'x A, at 99.)  The parties submit that this term appears in Claims 1, 28, and 41 of the '055 Patent.  (Dkt. No. 109, Ex. B, at 10–11; *id.*, Ex. C, at 14–15; Dkt. No. 128, App'x A, at 99.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Plain and ordinary meaning.  Note: Reject 'activating inactive.'"

(1)  The Parties' Positions

Plaintiff argues that "Defendants' construction unnecessarily complicates and adds ambiguity to the claims . . . ."  (Dkt. No. 116, at 35.)  Plaintiff also argues that "Defendants identify no lexicography or disavowal of scope with respect to the term 'facilitating initiation.'" (*Id.*)

Defendants respond that "[t]he surrounding claim language and specification's description of the 'facilitating initiation' step demonstrate that the step refers to activating an IP communication system that was off."  (Dkt. No. 120, at 45.)

Plaintiff replies:

> Defendants inject a new limitation, "IP communication systems in the respective second devices," and then further introduce ambiguity as to whether these systems are inactive or activated.   This is an issue for expert testimony.   Starting communication does not require an initiation from inactive systems.   Phones are always on, and Defendants' identification of an unclaimed battery-saving embodiment does not warrant the addition of the new limitation.

(Dkt. No. 123, at 12–13.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction and presented no oral argument.   Defendants opposed the Court's preliminary construction but rested on their briefing and presented no oral argument.

(2)  Analysis

In *Huawei*, the parties did not present this term as a disputed term, so the Court did not address this term in *Huawei*.

Claim 1 of the '055 Patent, for example, recites in relevant part (emphasis added):

1.  A method comprising:
    performing by a first device:
       obtaining contact information of a plurality of second devices, wherein the contact information comprises respective telephone numbers of the second devices;
       *facilitating initiation of Internet Protocol (IP) based communication between the first device and the respective second devices* by using respective telephone numbers to send, from the first device to the second devices, respective Short Message Service (SMS) messages including a telephone number of the first device and information usable b[y] the respective second device to send IP-based communication to the first device;
       receiving respective IP-based responses to the SMS messages, wherein the IP-based responses to the SMS messages include location information of the respective second devices; * * *

The specification discloses:

In disasters, battery life is essential as there may not be extra batteries available or a power available to recharge the battery. *It is therefore essential to lessen battery utilization. The normal method by which this is accomplished is to not use software that keeps the display on, uses the GPS or transmits on the communications.* However, deactivating any one of these processes produces a problem with providing location data to all on the network.

With location sharing there are essentially two times when the location information is essential: a) Where the user wants all to know his/her location and status and the location and status of others and b) When the commander wants to know the location and status of all or of a particular unit.

When the user wants others to know the user location and status, the user can simply turn on location reporting software which then turns on the display, the GPS and the communications reporting software causing the reporting of the user location to the ad hoc password protected digital network. However, when the commander or someone else wants to know the location and status of the PDA/PC unit that is conserving battery usage by having user display, GPS and communications transmission turned on [*sic*, off], the commander has no method to accomplish this.

This problem is overcome by enabling the commander to transmit a *"turn on" IP message* to the battery conserving(s) unit(s) by addressing the message to the ad hoc network Server which then sends an SMS message to the addressed phone. The SMS message will be received as long as the phone is powered on, as SMS is integrated with the cell phone's voice communications. The Server could also send a *turn on IP message* to networked radios, which will then cause the radio's computer to send a digital message to the receiving PC/PDA to *activate the user display and location and status reporting software.*

'055 Patent at 13:27–60 (emphasis added).

These disclosures are directed to "lessen[ing] battery utilization," but no such limitation appears in the claims here at issue. The claims thus do not express or imply that Internet Protocol (IP) communication systems in the respective second devices are inactive.

Defendants argue that "[i]f IP-based communications were still active, then the commander could simply send a normal IP-based message requesting the device's location." (Dkt. No. 120, at 46.) Defendants thus appear to assume that if a second device has active IP communication capability, then the first device is able to send IP-based messages to the second

device.  Defendants fail to demonstrate why this is necessary so.  Instead, the claim language at issue can be readily understood as encompassing a situation in which the first device has a telephone number of the second device but does not have information necessary to send an IP message to the second device.  Indeed, as recited in the claim, the SMS message sent from the first device to the second device includes "information usable b[y] the respective second device to send IP-based communication to the first device."  By providing this information, the first device can facilitate IP-based communication.

The Court therefore hereby expressly rejects Defendants' proposed construction.  No further construction is necessary.  *See O2 Micro*, 521 F.3d at 1362; *see also Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291.

The Court accordingly hereby construes **"facilitating initiation of Internet Protocol (IP) based communication between the first device and the respective second devices"** to have its **plain meaning**.

**S.  "receiving a message from a second device"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | "receiving a message directly from a second device without the use of a server" |

(Dkt. No. 109, Ex. B, at 11; *id.*, Ex. C, at 15; Dkt. No. 116, at 36; Dkt. No. 120, at 47; Dkt. No. 128, App'x A, at 106.)  The parties submit that this term appears in Claims 1 and 24 of the '251 Patent.  (Dkt. No. 109, Ex. B, at 11; *id.*, Ex. C, at 15; Dkt. No. 128, App'x A, at 106.)

Shortly before the start of the October 30, 2020 hearing, the Court provided the parties with the following preliminary construction: "Plain and ordinary meaning.  Note: Reject Defendants' proposal of 'directly' and 'without the use of the server.'"

(1)  The Parties' Positions

Plaintiff argues: "Defendants seek to relitigate the *same* construction proposed and rejected by the Court in the *Huawei* case.  Defendants' proposed construction is not supported by the claims or the intrinsic evidence and accordingly should be rejected."  (Dkt. No. 116, at 36.) Plaintiff urges that "[t]he '251 Patent's specification contains no expression of exclusion or restriction as to the use of a server."  (*Id.*, at 37.)

Defendants respond that "[b]efore AGIS filed its brief, [Defendants] proposed and AGIS agreed that to save the Court's resources, the parties would file a joint motion to adopt the construction from *Huawei* for this term, while preserving the arguments from that case for appeal."  (Dkt. No. 120, at 47.)  Defendants argue that "[t]he plain language of the claims and the applicant's disavowal of using server during prosecution confirm that 'receiving a message from a second device' should be construed as 'receiving a message directly from a second device *without the use of a server*.'"  (*Id.*)  For example, Defendants argue that "the claims include a 'server,' but they only recite using the 'server' for other steps besides the first device 'receiving a message from a second device.'"  (*Id.*)

Plaintiff replies that "there is no disavowal or disclaimer by the applicant or any other valid reason to require direct communication between devices without the use of a server as proposed by Defendants, and this claim term should be accorded its plain and ordinary meaning."  (Dkt. No. 123, at 13.)  For example, Plaintiff argues that Defendants' proposal "contradicts the '251 Patent which discloses that a 'Server acts as a forwarder for IP communications between any combination of cell phone / PDA users and/or PC based users.'" (*Id.* (citing '251 Patent at 3:15–17).)  Plaintiff also argues that the prosecution history contains no disavowal because "applicant did not distinguish [the] Melen [reference] on the grounds that

Melen used a server as an intermediary to receive a message from a second device." (Dkt. No. 123, at 13.)

At the October 30, 2020 hearing, Plaintiff agreed with the Court's preliminary construction and presented no oral argument. Defendants opposed the Court's preliminary construction but rested on their briefing and presented no oral argument.

(2) Analysis

Claim 1 of the '251 Patent, for example, recites (emphasis added):

1. A computer-implemented method comprising:
    with a first device, *receiving a message from a second device*, wherein the message relates to joining a group;
    based on receiving the message from the second device, participating in the group, wherein participating in the group includes sending first location information to a *server* and receiving second location information from the *server*, the first location information comprising a location of the first device, the second location information comprising a plurality of locations of a respective plurality of second devices included in the group;
    presenting, via an interactive display of the first device, a first interactive, georeferenced map and a plurality of user-selectable symbols corresponding to the plurality of second devices, wherein the symbols are positioned on the first georeferenced map at respective positions corresponding to the locations of the second devices, and wherein the first georeferenced map includes data relating positions on the first georeferenced map to spatial coordinates;
    sending, from the first device to the *server*, a request for a second georeferenced map different from the first georeferenced map, wherein the request specifies a map location;
    receiving, from the *server*, the second georeferenced map, wherein the second georeferenced map includes the requested location and data relating positions on the second georeferenced map to spatial coordinates;
    presenting, via the interactive display of the first device, the second georeferenced map and the plurality of user-selectable symbols corresponding to the plurality of second devices, wherein the symbols are positioned on the second georeferenced map at respective positions corresponding to the locations of the second devices; and
    identifying user interaction with the interactive display selecting one or more of the user-selectable symbols corresponding to one or more of the second devices and positioned on the second georeferenced map and user interaction with the display specifying an action and, based thereon, using an Internet Protocol to send data to the one or more second devices via the *server*,

wherein the first device does not have access to respective Internet Protocol addresses of the second devices.

In *Huawei*, the defendants presented the same proposed construction that Defendants are proposing in the present case. *See Huawei* at 49–50. *Huawei* found that the defendants "ha[d] not shown that anything in the claims warrants requiring that a message be received 'directly' and 'without the use of a server.'" *Id.* at 50. Defendants here argue that "the claims include a 'server,' but they only recite using the 'server' for other steps besides the first device 'receiving a message from a second device.'" (Dkt. No. 120, at 47). This mere absence of a recital of "server" in the disputed term, however, does not warrant precluding the use of a server. *See, e.g.,* '251 Patent at 3:15–17 ("A communication Server acts as a forwarder for IP communications between any combination of cell phone/PDA users and/or PC based users.").

*Huawei* also considered prosecution history involving the "Melen" reference (United States Patent Application Publication No. 2004/0148090). *Huawei* at 48–49. Defendants cite this prosecution history in the present case as well. (*See* Dkt. No. 120, Ex. 12, Office Action; *see also id.*, Ex. 14, Nov. 13, 2015 Amendments, at 13.) Defendants also cite a subsequent assertion by the examiner that "Melen further discussed and/or stated that the navigation systems are capable of establishing groups of members and communicating wirelessly with other navigation systems without the use of a vehicle network server." (*Id.*, Ex. 15, Dec. 10, 2015 Office Action, at 2 (emphasis omitted).) As found in *Huawei* (*see Huawei* at 52), however, the patentee distinguished a particular use of a server rather than use of a server generally or use of a server to receive a message. (*See* Dkt. No. 120, Ex. 14, Nov. 13, 2015 Amendments, at 13 ("the first and second navigation systems do not communicate with each other until *the server adds the first navigation system 300 to the group*") (emphasis added).)

Defendants fail to justify departing from the analysis and conclusions reached in *Huawei*. *See Huawei* at 49–53.   The Court therefore hereby expressly rejects Defendants' proposed construction, and no further construction is necessary.  *See O2 Micro*, 521 F.3d at 1362; *see also Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291.

The Court accordingly hereby construes **"receiving a message from a second device"** to have its **plain meaning**.

## V.  CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 8th day of December, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE