**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| AGIS SOFTWARE DEVELOPMENT LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>        Defendant. | CIVIL ACTION NO. 2:19-cv-361-JRG (LEAD CASE)<br><br>JURY TRIAL DEMANDED |

**DEFENDANT GOOGLE LLC'S RESPONSE TO PLAINTIFF AGIS SOFTWARE DEVELOPMENT LLC'S SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION (DKT. 191) TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS FOR IMPROPER VENUE (DKT. 25)**

# TABLE OF CONTENTS

**Page**

I.    LEGAL STANDARDS ................................................................. 2

II.    ARGUMENT ............................................................................. 2

    A.    Third Party CTDI's Flower Mound Repair Facility Does Not Confer Venue ................................................................................................. 2

        1.    *Cray* Factor 2 - CTDI Is Not Google's Agent ........................... 2

            a.    CTDI Cannot Bind Google To Business Relationships ................ 2

            b.    CTDI Does Not Receive Interim Instructions ............................. 4

            c.    CTDI's Repair Activities Are Ancillary To Google's Business ................................................................................. 8

            d.    If CTDI Were Google's Agent, CTDI Could Accept Service Of Process On Google's Behalf ....................................... 8

        2.    *Cray* Factor 3 - CTDI's Flower Mound Facility Is Not "Of Google" ................................................................................. 9

    B.    Third Party Level 3's Optical Fiber Equipment Does Not Confer Venue .......... 12

    C.    Third Party-Hosted GGC Servers Do Not Confer Venue Under *In re Google* ................................................................................................. 14

III.    CONCLUSION ........................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andra Grp., LP v. Victoria's Secret Stores, LLC*,
No. 4:19-CV-288-ALM-KPJ, 2020 WL 2478546 (E.D. Tex. Feb. 24, 2020), *report and recommendation adopted*, No. 2020 WL 1465894 (E.D. Tex. Mar. 26, 2020) ......................... 4

*Arguello v. Conoco, Inc.*,
207 F.3d 803 (5th Cir. 2000) ....................................................................................... 7

*Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*,
643 F. Supp. 2d 883 (S.D. Tex. 2008) .......................................................................... 7

*CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., Inc.*,
No. 13-CV-5669(NSR), 2018 WL 2388534 (S.D.N.Y. May 24, 2018) .................................. 11

*Desai v. ADT Security Systems, Inc.*,
78 F. Supp. 3d 896 (N.D. Ill. 2015) ........................................................................... 5, 7

*ES Distribution, LLC v. Hangtime LLC*,
No. 20-469 (FLW) (DEA), 2020 WL 6689755 (D.N.J. Nov. 13, 2020) ......................... 4, 9, 10

*Griffin v. United States*,
588 F.2d 521 (5th Cir. 1979) ....................................................................................... 3

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ............................................................................... 2, 14

*In re Google*,
949 F.3d at 1338 (Fed. Cir. 2020) ........................................................................ passim

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd*,
No. SA CV 17-1748-DOC (JDEx), 2018 WL 4963129 (C.D. Cal. June 22, 2018) ................ 11

*Lahman v. Nationwide Provider Sols.*,
No. 4:17-CV-00305, 2017 WL 4169000 (E.D. Tex. Sept. 20, 2017) ...................................... 9

*Leon v. Caterpillar Indus., Inc.*,
69 F.3d 1326 (7th Cir. 1995) ....................................................................................... 7

*O'Neill v. Dep't of Hous. & Urban Dev.*,
220 F.3d 1354 (Fed. Cir. 2000) ................................................................................... 3

*Omega Patents, LLC v. Bayerische Motoren Werke AG et al*,
1:20-cv-01907, Dkt. 70, Order  (N.D. Ga. Dec. 21, 2020) .................................................. 10

*Scally v. Hilco Receivables, LLC*,
392 F. Supp. 2d 1036 (N.D. Ill. 2005) .......................................................................... 6

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*SportPet Designs Inc. v. Cat1st Corp.*,
  No. 17-CV-0554, 2018 WL 1157925 (E.D. Wis. Mar. 2, 2018) ........................................ 10, 11

*United States v. Schaltenbrand*,
  930 F.2d 1554 (11th Cir. 1991) ........................................................................................... 3

*Xodus Medical, Inc. v. Allen Medical Sys., Inc.*,
  No. 2:17-CV-00581, 2018 WL 2338763 (W.D. Pa. May 22, 2018) ...................................... 10

*Zaxcom, Inc. v. Lectrosonics, Inc.*,
  No. 17-CV-3408, 2019 WL 418860 (E.D.N.Y. Feb. 1, 2019) ................................................ 10

**Statutes**

Tex. Bus. Orgs. Code § 5.255 ..................................................................................................... 9

**Rules**

Fed. R. Civ. P. 4(h)(1) ................................................................................................................. 9

The three proposed grounds for venue presented in AGIS's supplemental brief (Dkt. 191) fail the three-factor test for venue under 28 U.S.C. § 1400(b) set forth in *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017). All three grounds — (1) CTDI's repair center in Flower Mound, Texas; (2) Level 3's fiber optic lines and in-line amplifiers (ILAs); and (3) GGC servers — are facilities or equipment that are owned, controlled, and operated by third parties, not Google. Thus, none qualifies as a place of business "of Google" as required under *Cray* factor three.

Under *Cray* factor two, AGIS has not alleged that an agency relationship exists between Google and the third parties who control the fiber equipment and GGC servers that could satisfy the requirements of *In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020), which rejected venue based on GGC servers. ████████████████████████████

████████████████████████████

AGIS has only argued that there is an agency relationship with respect to Google and CTDI's Flower Mound facility. Google acknowledges that AGIS's argument follows from this Court's order in *Personalized Media Communications, LLC v. Google LLC* ("*PMC*"), No. 2:19-cv-00090-JRG, Dkt. 291 at 8 (E.D. Tex. July 16, 2020). But Google respectfully disagrees with the Court's *PMC* decision, which contravenes patent venue decisions from other courts. The relationship between Google and CTDI lacks the essential characteristics of an agency relationship. CTDI has no authority to commit Google to any business relationships, and CTDI performs its repair services without any supervision or interim instructions from Google. Like the third parties who maintained GGC servers, CTDI's repair activities are ancillary to Google's businesses, and CTDI's employees cannot accept service of process on Google's behalf.

Because none of the CTDI Flower Mound facility, Level 3 fiber optic equipment, or GGC servers provides a basis for venue, Google's motion to dismiss or transfer should be granted.

## I.    LEGAL STANDARDS

For a defendant to have a regular and established place of business in a district:  "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d at 1360.  Under *Cray*'s second factor, a regular and established place of business "requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"  *In re Google*, 949 F.3d at 1345.

## II.    ARGUMENT

### A.    Third Party CTDI's Flower Mound Repair Facility Does Not Confer Venue

CTDI's Flower Mound facility does not provide venue over Google in this District under either of *Cray* factors 2 and 3.  Under *Cray* factor 2, there is no "regular, physical presence of an employee or other agent of" Google at Flower Mound because: (1) CTDI cannot interact with any Google customers; (2) CTDI does not receive any interim instructions from Google in conducting repair activities; (3) CTDI's repair activities are ancillary to Google's actual businesses; and (4) CTDI cannot accept service of process on Google's behalf.  AGIS's brief only addresses the second of these four considerations, and its discussion relies on incomplete quotations from ███████ ████████████████ between Google and CTDI.  Under *Cray* factor 3, the Flower Mound facility belongs to CTDI, and is not a place "of Google."

#### 1.    *Cray* Factor 2 - CTDI Is Not Google's Agent

##### a.    CTDI Cannot Bind Google To Business Relationships

Under the Restatement, an agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act" in that capacity.  Restatement § 1.01.  By definition, an agent "has the authority to 'alter the legal

relations between the principal and third persons.'" *O'Neill v. Dep't of Hous. & Urban Dev.*, 220 F.3d 1354, 1360-63 (Fed. Cir. 2000). Indeed, "an essential characteristic of an agency is the power of the agent to commit [its] principal to business relationships with third parties[.]" *U.S. v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir. 1991) (citation omitted); *accord Griffin v. U.S.*, 588 F.2d 521, 528-29 (5th Cir. 1979).

Here, CTDI has no power to commit Google to any business relationships with anyone, including customers. CTDI's services are limited to receiving shipments of products returned by customers and then shipping the repaired products back to the customers, ███████████████████ ████████████████████████████████████████ CTDI is, by design, detached from customer interaction; it simply mails devices out, and the package a customer receives does not identify it. Dkt. 118-8 at 254:3-256:1. As this Court remarked in *PMC*, Google's customers "have no idea that CTDI exists." Dkt. 118-2 at 8.

The repair services that CTDI provides to Google do not include transacting or serving as Google's representatives in interacting with consumers in the Eastern District or anywhere else. AGIS does not argue otherwise. In fact, AGIS's arguments only reinforce CTDI's detachment from customers. For example, AGIS cites a Google webpage identifying "Google," rather than CTDI, as the "Provider" for repairing "All Pixel phones" in the "United States," and AGIS notes that "Google-branded packing [is used] for the repaired phones to ship back to the customers." Dkt. 191 at 2; Dkt. 191-3. ███████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████ These facts all confirm that CTDI is unknown to Google's customers and CTDI cannot deal with customers on Google's behalf. CTDI cannot therefore be Google's agent.

### b.    CTDI Does Not Receive Interim Instructions

In a principal–agent relationship, the principal "has the right to give interim instructions or directions to the agent once their relationship is established."  Restatement § 1.01 cmt. f(1).  To address this requirement, ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Other courts have found on similar facts that service contractors of defendants are not agents.  In *ES Distribution, LLC v. Hangtime LLC*, a New Jersey court found venue improper where a defendant used a third party's Fulfillrite facility in the state to store, receive, and ship defendant's products.  No. 20-469 (FLW) (DEA), 2020 WL 6689755, at *2-3 (D.N.J. Nov. 13, 2020).  Under the second *Cray* factor, the court concluded the third-party operator of the Fulfillrite facility was not an agent of defendant because "[w]hile Defendant provides some instruction to Fulfillrite as to how it would prefer its shipments be made, Defendant has no power to control Fulfillrite's conduct."  *Id*. at *3.  And in *Andra Grp., LP v. Victoria's Secret Stores, LLC*, a court in this District found that defendants' activities for third-party retailers — including "supplying improvements, paying operating costs such as utilities, investing in technology, posting Stores' job listings on [defendant's] website, and requiring [third-party retailer] employees to sign the [defendant's] code of conduct" — failed to "demonstrate exercise of control over [retailer's] employees" needed for an agency relationship under *Cray* factor 2.  No. 4:19-CV-288-ALM-KPJ, 2020 WL 2478546, at *5 (E.D. Tex. Feb. 24, 2020), *report and recommendation adopted*, No. 2020 WL 1465894 (E.D. Tex. Mar. 26, 2020).

AGIS, meanwhile, cites only one case to support its position, *Desai v. ADT Security Systems, Inc.*, 78 F. Supp. 3d 896 (N.D. Ill. 2015).  But in *Desai*, Elephant Group ("EG") contracted

with another company, "PMG," to market ADT homes security services, and EG controlled virtually all aspects of PMG's marketing activities. The parties' agreement provided that PMG's marketing activities were "subject to detailed restrictions on telemarketing" and "EG also reserved the right to inspect PMG's call records and request any information ADT wanted." *Id*. at 903. "In short, EG controlled what products and services PMG promoted; what telemarketing techniques PMG could use; and what information PMG was required to provide to ensure compliance with the contract." *Id*. Critical to the court's decision — and absent here — was that "EG routinely exercised its contractual rights to control PMG's telemarketing activities," including the following:

> (1) "EG trained PMG employees on how they were supposed to market ADT's products and services";
>
> (2) "EG provided PMG employees with ADT's call scrubbing instructions and a call script to follow";
>
> (3) "[o]n about five occasions, EG performed quality assurance on PMG's calls and brought any problems to PMG's attention";
>
> (4) "EG also reviewed PMG's marketing tactics; asked PMG to confirm or deny whether it was working with particular lead providers; and requested a full list of call identification numbers that PMG and its lead providers used." *Id*.

CTDI's relationship with Google resembles the service provider relationships in *ES Distribution*, rather than the relationship in *Desai*. ███████████████████

███████████████████████████████████████

███████████████████████████████████████

████ ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

But a party's passive receipt of "weekly and monthly routine reports of its activities" from another does not create an agency relationship between them.  *Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036, 1040 (N.D. Ill. 2005).

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████        This lack of authority is critical because Texas courts have identified the "power to hire and fire and the power of supervision over the agent's employees" as basic rights that a

6

principal holds over its agent.  *E.g.*, *Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 889 (S.D. Tex. 2008).

████████████████████████████████████████████████████████████

███████████████████████████████████████████ The court in *Desai* found an agency relationship because principal "EG routinely exercised its contractual rights to control PMG's telemarketing activities."  78 F. Supp. 3d at 903.  ██████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

Google and CTDI also expressed their intent not to create an agency relationship.  ██████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████    █████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████.  Courts routinely credit "no agency" clauses in contracts.  *E.g., Arguello v. Conoco, Inc.*, 207 F.3d 803, 807-08 (5th Cir. 2000) (finding that the "plain language" of a "no agency" clause "defines the relationship" between the parties); *Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1334 (7th Cir. 1995) (same).

███████████████████████████████████████████ therefore constitute interim instructions that could support an agency relationship between Google and CTDI.  Rather, those

provisions, combined with the realities of Google's and CTDI's relationship and the "no agency" clause in the ISA, confirm that CTDI is a services contractor, not an agent, of Google.

### c.    CTDI's Repair Activities Are Ancillary To Google's Business

CTDI is not Google's agent for a third reason:  CTDI's repair activities at Flower Mound are ancillary to Google's business, and AGIS's brief presents no argument to the contrary.

*In re Google* is instructive.  It found venue improper over Google because the "maintenance activities" that third-party ISPs performed for computer servers "cannot, standing alone, be considered the conduct of Google's business."  949 F.3d at 1346.  "Maintaining equipment is meaningfully different from—as only ancillary to—the actual producing, storing, and furnishing to customers of what the business offers."  *Id*.

The repair activities of CTDI are just as ancillary as the "maintenance activities" of the ISPs in *In re Google*.  Google's business includes the design and sale of consumer electronics devices.  The subsequent repair of some of those devices is ancillary to, and not part of, Google's business.  Indeed, that is precisely why Google contracts with others to repair those devices: repairing is not part of Google's business and is better performed by third parties like CTDI who specialize in repairing after-market devices.

### d.    If CTDI Were Google's Agent, CTDI Could Accept Service Of Process On Google's Behalf

CTDI is not Google's agent for a fourth reason:  CTDI cannot accept service of process on behalf of Google under the service statute, 28 U.S.C. § 1694.  *In re Google* confirmed that "the venue and service provisions were not just enacted together but expressly linked, and both have always required that the defendant have a 'regular and established place of business.'"  949 F.3d at 1344.  Thus, if a contractor were an "agent" operating a "regular and established place of business" of a defendant, a plaintiff would be able to effectuate service on the defendant by serving

the contractor.  *Id.*  This District has also recognized that "[u]nder the federal rules, service of process upon a corporation must be made upon 'an officer, a managing or general agent, or . . . any other agent authorized . . . to receive service of process,'" and similarly, "Texas allows service of process on a corporation's registered agent[.]"  *Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2017 WL 4169000, at *2 (E.D. Tex. Sept. 20, 2017) (citing Fed. R. Civ. P. 4(h)(1); Tex. Bus. Orgs. Code § 5.255).  CTDI and its personnel at Flower Mound are no more able to accept service on Google's behalf than the employees of third-party ISPs in *In re Google* who maintained GGC servers.  AGIS has not offered evidence or even alleged that CTDI has any authorization from Google to accept service on Google's behalf.

### 2.      *Cray* Factor 3 - CTDI's Flower Mound Facility Is Not "Of Google"

The CTDI Flower Mound facility is not a place of business "of Google" under *Cray*'s third factor.  The facility is owned and operated by CTDI, not Google.  ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████

AGIS's arguments to the contrary are unavailing.  ████████████████████

████████████████████████████████████████████████████  Dkt. 191 at

2.  But AGIS cites no authority suggesting that a defendant somehow ratifies a third party's business location as its own by telling customers to ship to that location.  Indeed, the court in *ES Distribution* recently rejected that very argument, holding that the defendant's "mere act of placing the Fulfillrite address [of a third-party warehouse in Lakewood] on shipping labels does not suggest that Defendant actually conducts its business in Lakewood, New Jersey" or that the Fulfillrite facility is a place of business "of the defendant."  2020 WL 6689755, at *3.  Another

court recently reached a similar conclusion, holding that a defendant "facilitating business and services through an independent entity is not enough for ratification" of that entity's location as defendant's own. *Omega Patents, LLC v. Bayerische Motoren Werke AG et al*, 1:20-cv-01907, Dkt. 70, Order at *15-18 (N.D. Ga. Dec. 21, 2020) (finding independent BMW car dealerships in Georgia did not confer venue over BMW).

AGIS next asserts that Google specified Flower Mound as the location where CTDI should conduct its repairs. Dkt. 191 at 2. Not so: ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████████

AGIS also asserts that Google "owns equipment located in Flower Mound." Dkt. 191 at 2. In truth, Google does not store any products or parts in the Flower Mound facility. ███████ ████████████████████████████████ To the extent that CTDI stores customer-owned products for repair, that temporary storage does not turn CTDI's Flower Mound facility into Google's place of business. Applying *Cray* factor 3, courts have unanimously held that warehouse, storage, and fulfillment facilities of third parties located in a district do not confer venue over a defendant who contracts to use those third-party facilities for storing and shipping goods. *ES Distribution*, 2020 WL 6689755, at *2-3; *Zaxcom, Inc. v. Lectrosonics, Inc.*, No. 17-CV-3408, 2019 WL 418860, at *7-9 (E.D.N.Y. Feb. 1, 2019); *SportPet Designs Inc. v. Cat1st Corp.*, No. 17-CV-0554, 2018 WL 1157925, at *3 (E.D. Wis. Mar. 2, 2018); *Xodus Medical, Inc. v. Allen Medical Sys., Inc.*, No. 2:17-CV-00581, 2018 WL 2338763, at *2 (W.D. Pa. May 22, 2018); *CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-5669(NSR), 2018 WL

2388534, at *3 (S.D.N.Y. May 24, 2018). Those courts reason that to satisfy *Cray* factor 3, the defendant must "exercise[] possession or control over" the third party's business location; the mere *use* of that location is insufficient. *E.g.*, *Xodus*, 2018 WL 2338763, at *2; *SportPet*, 2018 WL 1157925, at *3 (finding *Cray* factor 3 not met because "[defendant] does not own or lease the Kenosha facility, it does not have any discernable control over it or possessory rights in it, and it does not employ anyone there").

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████    ███████████████████████████    ████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████████

████ it would just be floor space in a building controlled by CTDI, making it no different from the string of unanimous cases cited above. The facts are particularly analogous to those in *Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd*, where the plaintiff alleged that Best Buy stores in the district could confer venue over Samsung because those stores included dedicated spaces, called "Samsung Experience Shops," for selling defendant Samsung's products. No. SA CV 17-1748-DOC (JDEx), 2018 WL 4963129, at *8 (C.D. Cal. June 22, 2018). The court rejected plaintiff's position because Samsung did not "own or lease any offices or facilities or have any employees that work" at the "Samsung Experience Shops." *Id*. For similar reasons here, *CTDI's* Flower Mound facility cannot provide a basis for venue over Google in this District.

**B.    Third Party Level 3's Optical Fiber Equipment Does Not Confer Venue**

Level 3's optical fiber lines and ILAs in this District also fail under *Cray* factors 2 and 3. As background, fiber optic lines are thin glass strands used to carry signals in the form of light pulses over long distances of many tens of miles.  Ex. 1.  Because light pulses can degrade after traveling long distances, an ILA can be used to amplify the light pulses to prevent them from degrading in quality.  Ex. 2 at 32:1-6. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

*Cray* factor 2 is not satisfied because, as a threshold matter, the fiber optic lines and ILAs in this District are not "places of business" at all.  Unlike the GGC servers addressed in *In re Google*, fiber optic lines and ILAs do not cache or serve any content to local users in this District. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ The lines in this District are thus analogous to railway tracks supporting trains that pass through, but never actually stop, in this District.

*Cray* factor 2 is also not satisfied because there are no Google employees or agents regularly and physically present at any of the alleged "places of business," namely the fiber optic lines or ILAs.  AGIS does not allege that Level 3 or its personnel are Google's agents.[1]

---

█ ████████████████████████████████████████████████

████████████████████████████████████████████

AGIS instead asserts that "[t]here is . . . evidence that Google employees have performed maintenance work at an Eastern District of Texas running line facility."  Dkt. 191 at 9.  ██████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████  does constitute a "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business,'" and, thus, it does not establish a "regular and established place of business."  *In re Google*, 949 F.3d at 1345-46.  And like the maintenance of GGC servers that the Federal Circuit found ancillary to Google's business, *id*. at 1346, the maintenance of fiber optic lines is also ancillary to Google's business.

*Cray* factor 3 is not satisfied because Level 3's network infrastructure belongs to Level 3, not Google.  ████████████████████████████████████████

████████████████████████████  Nor does Google "exercise other attributes of possession or control over" any aspect of Level 3's fiber optic lines.  ██████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

_____

████████████████████████████████████████████████████████████

██████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████

### C.    Third Party-Hosted GGC Servers Do Not Confer Venue Under *In re Google*

With respect to GGC servers, AGIS's brief only addresses the second *Cray* factor and presents no evidence or argument that was not already before the Federal Circuit in *In re Google*. AGIS first cites to Google's agreement with Cable One, an ISP host for GGC servers, to speculate that Google's own employees conduct in-person maintenance of GGC servers in this District. ██████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████. AGIS's speculation is refuted by *In re Google*, which analyzed the same agreements with Cable One and other ISPs at length. The Federal Circuit found it "undisputed that no Google employee performed installation of, performed maintenance on, or physically accessed any of the GGC servers hosted by Cable One or Suddenlink." 949 F.3d at 1341.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████. AGIS, however, cites no authority finding that a defendant's provision of remote support from outside a district for third-party equipment located in that district can confer venue. *See In re Cray*, 871 F.3d at 1362 ("The statute [§ 1400(b)] thus cannot be read to refer merely to a virtual space or to electronic communications from one person to another."). Further, the Federal Circuit in *In re Google* acknowledged the remote monitoring and support of the GGC servers in this District, explaining that under the ISP agreements, the ISPs must provide "remote visual observations and/or verbal reports to Google" and "'[r]emote assistance services,' which 'involve basic maintenance activities' performed on the GGC servers by the ISP's on-site technician, if requested

by Google." 949 F.3d at 1341, 1346. Yet it still held that the GGC servers failed to establish a "regular and established place of business" of Google in this District.

## III.    CONCLUSION

Because none of three proposed bases for venue that AGIS identifies — CTDI's Flower Mound facility; Level 3's network infrastructure; ISPs' GGC servers — satisfies the requirements of *In re Cray* and *In re Google*, Google's Rule 12 motion should be granted.

Dated: January 18, 2021

By: */s/ J. Mark Mann*
J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
201 E. Howard St.
Henderson, Texas 75654
(903) 657-8540
(903) 657-6003 (fax)

Darin W. Snyder *(Pro Hac Vice)*
dsnyder@omm.com
Luann L. Simmons *(Pro Hac Vice)*
lsimmons@omm.com
David S. Almeling *(Pro Hac Vice)*
dalmeling@omm.com
Alexander B. Parker *(Pro Hac Vice)*
aparker@omm.com
Mark Liang *(Pro Hac Vice)*
mliang@omm.com
Bill Trac
btrac@omm.com
Andrew Bledsoe *(Pro Hac Vice)*
abledsoe@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Tel: (415) 984-8700
Fax: (415) 984-8701

*Attorneys for Defendants Google LLC, Waze Mobility Limited, Samsung Electronics Co. Ltd., and Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

Dated:  January 18, 2021                    */s/ J. Mark Mann*
                                              J. Mark Mann

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that this document is being filed under seal pursuant to the terms of the Protective Order entered in this case because it contains material designated by one of the parties as highly confidential.

                                             */s/ J. Mark Mann*
                                              J. Mark Mann

17