# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **AGIS SOFTWARE DEVELOPMENT LLC,** | § | Case No. 2:19-cv-00361-JRG |
| | § | |
| | § | |
| *Plaintiff,* | § | ████████████ |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| **GOOGLE LLC,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## DEFENDANT GOOGLE LLC'S RE-FILED RULE 12(B)(3) MOTION TO DISMISS FOR IMPROPER VENUE

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .......................................................................................... 1

II.   STATEMENT OF ISSUE TO BE DECIDED (L.R. CV-7(A)(1)) ................................... 3

III.  FACTUAL BACKGROUND ....................................................................... 3

    A.    AGIS's Complaint ......................................................................... 3

    B.    Google Has No Offices Or Relevant Connections In This District ...................... 4

    C.    Google's Alleged Connections To This District ................................................. 5

        1.    CTDI Repair Facilities Are Owned And Operated By Third Party CTDI, Not Google ................................................................. 5

        2.    The Identified Optical Fiber Equipment Belongs To Third Party Level 3 ................................................................................. 7

        3.    The Federal Circuit's *In re Google* Decision Holds That GGC Servers, Which Have Been Deactivated In This District, Fail To Confer Venue ............................................................ 7

        4.    Wi-Fi Service At Starbucks Locations In Texas Was Discontinued Four Months Before AGIS's Complaint Was Filed ................................. 8

        5.    Google Fi Is Deployed In This District Through Third Parties ................ 9

        6.    Google's Cloud Interconnect (GCI) and Direct Peering Services Are Deployed By Third Party Megaport ...................................... 9

IV.   ARGUMENT: VENUE IS IMPROPER IN THE EASTERN DISTRICT OF TEXAS ................................................................................................. 10

    A.    Google Has No "Regular And Established Place Of Business" Here ................ 11

        1.    Third Party CTDI's Flower Mound Repair Facility Does Not Confer Venue ................................................................... 11

            a.    *Cray* Factor 2 - CTDI Is Not Google's Agent ............................ 11

                (1)    CTDI Cannot Bind Google To Business Relationships ................................................ 11

                (2)    CTDI Does Not Receive Interim Instructions ................. 12

                (3)    CTDI's Repair Activities Are Ancillary To Google's Business ................................................ 16

                (4)    CTDI Cannot Accept Service Of Process On Google's Behalf ................................................ 17

            b.    *Cray* Factor 3 - CTDI's Flower Mound Facility Is Not "Of Google" ..................................................................... 18

# TABLE OF CONTENTS
## (continued)

Page

2. Third Party Level 3's Optical Fiber Equipment Does Not Confer Venue ....................................................................................................... 20

3. The Federal Circuit's *In re Google* Decision Disposes Of AGIS's Reliance On GGC Servers As A Basis For Venue ................................. 22

4. Google's Involvement With Starbucks Wi-Fi Ceased In July 2019, Before AGIS's Complaint.......................................................................... 23

5. Google Fi Is Neither A "Physical Place" Nor "Of Google" ................... 24

6. Third-Party Facilities Supporting GCI And Direct Peering Are Not Places *Of Google*...................................................................................... 24

7. AGIS's Other Alleged Google Connections And Services Fail To Establish Venue ....................................................................................... 25

8. Operations Outside The District Or Pre-Suit ........................................... 27

B. AGIS Cannot Establish A Nexus Between Alleged Acts Of Infringement And Google's Purported "Regular and Established Place Of Business"............. 27

V. ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO NDCA ...... 28

VI. CONCLUSION.................................................................................................... 29

# TABLE OF AUTHORITIES

**Pages**

## <u>CASES</u>

*AGIS Software Dev., LLC v. ZTE Corp.*,
No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) .......................... 26

*AGIS Software Development LLC v. Samsung Elecs. Co.*,
2:19-cv-362 (E.D. Tex.) ............................................................................................................. 3

*AGIS Software Development LLC v. Waze Mobile Ltd.*,
2:19-cv-359 (E.D. Tex.) ............................................................................................................. 3

*Andra Grp., LP v. Victoria's Secret Stores, LLC*,
No. 4:19-CV-288-ALM-KPJ, 2020 WL 2478546 (E.D. Tex. Feb. 24, 2020),
*report and recommendation adopted*, No. 2020 WL 1465894 (E.D. Tex.
Mar. 26, 2020) ........................................................................................................................ 13

*Arguello v. Conoco, Inc.*,
207 F.3d 803 (5th Cir. 2000) .................................................................................................. 14

*Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*,
643 F. Supp. 2d 883 (S.D. Tex. 2008) ..................................................................................... 16

*CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., Inc.*,
No. 13-CV-5669(NSR), 2018 WL 2388534 (S.D.N.Y. May 24, 2018).................................. 19

*Desai v. ADT Sec. Sys., Inc.*,
78 F. Supp. 3d 896 (N.D. Ill. 2015) .......................................................................... 13, 14, 16

*ES Distrib., LLC v. Hangtime LLC*,
No. 20-469 (FLW) (DEA), 2020 WL 6689755 (D.N.J. Nov. 13, 2020) .................. 13, 18, 19

*Griffin v. U.S.*,
588 F.2d 521 (5th Cir. 1979) .................................................................................................. 12

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)......................................................................................... passim

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020)......................................................................................... passim

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018)......................................................................................... 10, 26

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co. Ltd*,
No. SA CV 17-1748-DOC (JDEx), 2018 WL 4963129 (C.D. Cal. June 22,
2018) ........................................................................................................................................ 20

*Jeffrey Galion, Inc. v. Joy Mfg. Co.*,
323 F. Supp. 261 (N.D. W. Va. 1971) .................................................................................... 28

**TABLE OF AUTHORITIES**
(continued)

**Pages**

*Kranos IP Corp. v. Riddell, Inc.*,
No. 2:17-cv-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ................................. 10

*Lahman v. Nationwide Provider Sols.*,
No. 4:17-CV-00305, 2017 WL 4169000 (E.D. Tex. Sept. 20, 2017).................................... 17

*Leon v. Caterpillar Indus., Inc.*,
69 F.3d 1326 (7th Cir. 1995) ............................................................................................... 14

*Moran v. Smith*,
No. 5:15-CV-1121-DAE, 2016 WL 4033268 (W.D. Tex. July 27, 2016) ............................ 28

*O'Neill v. Dep't of Hous. & Urban Dev.*,
220 F.3d 1354 (Fed. Cir. 2000)............................................................................................ 12

*Omega Patents, LLC v. Bayerische Motoren Werke AG et al.*,
1:20-cv-01907 (N.D. Ga. Dec. 21, 2020) ............................................................................ 18

*Pers. Audio, LLC v. Google, Inc.*,
280 F. Supp. 3d 922 (E.D. Tex. 2017) ................................................................................. 23

*Personalized Media Commc'ns, LLC v. Google LLC*,
No. 2:19-cv-00090-JRG (E.D. Tex. July 16, 2020)....................................................... passim

*Scally v. Hilco Receivables, LLC*,
392 F. Supp. 2d 1036 (N.D. Ill. 2005) ................................................................................. 15

*Scaramucci v. FMC Corp.*,
258 F. Supp. 598 (W.D. Okla. 1966) ................................................................................... 27

*SEVEN Networks, LLC v. Google LLC*,
315 F. Supp. 3d 933 (E.D. Tex. 2017)..................................................................... 22, 23, 26

*SportPet Designs Inc. v. Cat1st Corp.*,
No. 17-CV-0554, 2018 WL 1157925 (E.D. Wis. Mar. 2, 2018) .......................................... 19

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017)......................................................................................................... 10

*U.S. v. Schaltenbrand*,
930 F.2d 1554 (11th Cir. 1991) ........................................................................................... 12

*Xodus Med., Inc. v. Allen Med. Sys., Inc.*,
No. 2:17-CV-00581, 2018 WL 2338763 (W.D. Pa. May 22, 2018) ..................................... 19

*Zaxcom, Inc. v. Lectrosonics, Inc.*,
No. 17-CV-3408, 2019 WL 418860 (E.D.N.Y. Feb. 1, 2019) ............................................. 19

**TABLE OF AUTHORITIES**
(continued)

Pages

**STATUTES**

28 U.S.C. § 1400(b) ............................................................................... 10, 23, 28

28 U.S.C. § 1404 ........................................................................................ 4

28 U.S.C. § 1404(a) .................................................................................. 29

28 U.S.C. § 1406(a) ................................................................................ 3, 28

8 U.S.C. § 1694 ........................................................................................ 17

Tex. Bus. Orgs. Code § 5.255 ................................................................. 17

**OTHER AUTHORITIES**

Restatement (Third) of Agency § 1.01 ..................................................... 12

Restatement (Third) of Agency § 1.01 cmt. f(1) ..................................... 12

**RULES**

Fed. R. Civ. P. 12(b)(3) .......................................................................... 1, 3

Fed. R. Civ. P. 4(h)(1) ............................................................................. 17

I.       **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and this Court's order granting leave to refile (Dkt. 251), Defendant Google LLC ("Google") hereby refiles its motion to dismiss or alternatively transfer this action for improper venue (originally Dkt. 25).

Under *TC Heartland*, venue in a patent case is only proper (1) where the defendant resides, or (2) in a district in which the defendant has a regular and established place of business and has committed acts of infringement.  Today and at the filing of Plaintiff AGIS's Complaint, Google was incorporated in Delaware, with its headquarters and principal place of business in Mountain View, California, in the Northern District of California ("NDCA").  Google does not have any real estate, offices, or any other real property in this District, much less one that qualifies as "regular and established" under the standards that the Federal Circuit has set forth in *In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020), and *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

AGIS's Complaint does not support a contrary conclusion.  AGIS relies first and foremost on Google Global Cache ("GGC") servers located in this District.  But the Federal Circuit held that GGC servers in this District do not qualify as a "regular and established place of business," and cannot serve as a basis for finding venue as to Google.  *In re Google LLC*, 949 F.3d at 1343-44. In any event, the GGC servers in this District were deactivated and ceased serving content to users on November 23, 2018—nearly a year before AGIS filed its Complaint.

AGIS's other venue allegations likewise fail under binding Federal Circuit precedent. Those allegations include:  (1) Google's support for Wi-Fi service at Starbucks locations in this District, which ended months before the Complaint was filed; (2) Google's alleged provision of telecommunications or cloud computing services through networking equipment that is in fact owned and operated by third parties; and (3) repair centers that are owned and operated by third parties.  These allegations all fail to establish venue for the same dispositive reason:  there is not a

fixed, geographical location in this District where employees or agents are regularly present and conducting Google's business.  The remaining alleged contacts are outside the District or the relevant time period.

AGIS's supplemental briefs—filed months after briefing had closed on Google's original motion to dismiss—likewise do not impact the result.  AGIS proposes two new grounds for venue: (1) a smartphone-repair facility owned and operated by third party CTDI in Flower Mound, Texas; and (2) fiber optic lines and in-line amplifiers (ILAs) belonging to third party Level 3 in this District.  Dkts. 118, 191.  But under *Cray*, neither demonstrates that Google has a regular and established place of business in this District.

CTDI cannot confer venue.  Google acknowledges that AGIS has argued for venue based on this Court's order in *Personalized Media Communications, LLC v. Google LLC* ("*PMC*"), No. 2:19-cv-00090-JRG, Dkt. 291 at 8 (E.D. Tex. July 16, 2020).  But Google respectfully disagrees with the Court's *PMC* decision, which contravenes applicable law.  Under *Cray* factor 2, the activities of CTDI employees do not constitute the regular, physical presence of a Google employee or agent conducting business in the District, because CTDI and its employees are not agents of Google.  CTDI has no authority to commit Google to any business relationships, and CTDI performs its repair services without any supervision or interim instructions from Google.  Like the third parties who maintained GGC servers, CTDI's repair activities are ancillary to Google's businesses, and CTDI's employees cannot accept service of process on Google's behalf.  Moreover, under *Cray* factor 3, CTDI's Flower Mound facility is not *Google*'s place of business because it is CTDI's facility.  Indeed, Google employees cannot access the Flower Mound facility without permission from CTDI.

As for Level 3, the third party controls the fiber equipment and there is likewise no agency

relationship with Google that could satisfy the requirements under *Cray*.  Under *Cray* factor 2, Google itself does not have any regular or established employees in the District—AGIS has thus far not even alleged that Level 3 has employees in the District that are somehow Google's agents. And under *Cray* factor 3, Level 3's fiber equipment is not Google's place of business.

Accordingly, AGIS's action should be dismissed or transferred to the NDCA.

## II.   STATEMENT OF ISSUE TO BE DECIDED (L.R. CV-7(A)(1))

Should this case be dismissed or transferred under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue over Google in this District?

## III.   FACTUAL BACKGROUND

### A.   AGIS's Complaint

AGIS filed its Complaint on November 4, 2019, alleging that Google's Find My Device and the location sharing feature of Google Maps for Mobile ("GMM") (collectively, "Accused Google Applications") used in conjunction with unrelated messaging functionality infringe one or more claims of six patents:   U.S. Patent Nos. 8,213,970, 9,408,055, 9,445,251, 9,467,838, 9,749,829, and 9,820,123 ("Patents-in-Suit").   Dkt. 1 ¶1; Dkt. 1 ¶¶101-107, 114-121, 129-135, 143-149, and 157-163.   That same day, AGIS filed two related lawsuits against Waze, a Google subsidiary, and Samsung which allege infringement of two of the six Patents-in-Suit, the '829 and '123 Patents based largely on Google functionality.   *See AGIS Software Development LLC v. Waze Mobile Ltd.*, 2:19-cv-359 (E.D. Tex.); *AGIS Software Development LLC v. Samsung Elecs. Co.*, 2:19-cv-362 (E.D. Tex.).

AGIS has since withdrawn the '055 Patent, and Google has filed a separate Rule 12(b)(1) motion to dismiss the '970 Patent, because it was substantively amended during reexamination after filing this case.   Dkts. 232, 249.

**B.      Google Has No Offices Or Relevant Connections In This District**

Google is a Delaware corporation based in Mountain View, California, in the NDCA, and has been headquartered there since 2003.  Shaper Decl. ¶5.  When AGIS filed its Complaint in November 2019:  (1) Google did not (and still does not) own or lease any office space, retail space, or other real property in this District; (2) Google had no (and still has no) employees who work at any Google offices in this District; and (3) Google's only Texas offices were (and still are) located outside this District.  Lim Decl. ¶¶3-5.

Google developed each of the Accused Google Applications in the NDCA.  Shaper Decl. ¶¶7-13.  As explained in Google's separately filed and pending motion to transfer venue under § 1404, the Google witnesses relevant to this litigation were each located in the NDCA at the time that AGIS filed its Complaint.  Dkt. 149.  The following table summarizes the role and location of these witnesses as of the filing of the Complaint.  Shaper Decl. ¶¶8-9; Secor Decl. ¶¶2-4; Moore Decl. ¶¶2-4; Ex. A (Brunsman Dep.) at 6:2-4; Ex. B (Maccoun Dep.) at 8:23-9:1.

| Witness | Title / Role | Witness Location |
|---------|--------------|------------------|
| ███████████ | Patent Counsel | Saratoga, CA |
| ███████████ | Distinguished Engineer, Find My Device | Palo Alto, CA |
| ███████████ | Technical Lead Manager, Location Sharing | Mountain View, CA |
| ███████████ | Staff Software Engineer, Google Maps for Mobile | Palo Alto, CA |
| ███████████ | Products Manager, Google Maps for Mobile | San Carlos, CA |

Google has no employees with relevant knowledge regarding the Accused Google

Applications residing or working in this District, nor does Google keep any documents regarding the Accused Google Applications in this District.  Shaper Decl. ¶¶13, 16.  Nearly all the documents related to the Accused Google Applications, including highly proprietary source code, are created and maintained by the employees working on those products and services.  *Id*. ¶16.  As listed above, employees with relevant knowledge of the Accused Google Applications are located primarily in or around Mountain View, California, and no such employees are in this District.  *Id*. ¶¶13, 16.

### C.    Google's Alleged Connections To This District

To support venue, AGIS's Complaint alleges over a dozen purported connections between Google and this District, while its supplemental briefing adds allegations regarding CTDI repair facilities and fiber-optic equipment.  Dkt. 1 ¶¶9-63; Dkts. 118, 119.  But in its Complaint and briefing, AGIS only provides substantive allegations relating to the CTDI facilities, fiber-optic equipment, and the first four connections alleged in its Complaint.  Thus, Google presents the relevant facts for only those connections in this section.  AGIS cursorily identifies other purported ties between Google and this District, and those ties are addressed in the Argument, Sections IV.A.7-8.

#### 1.    CTDI Repair Facilities Are Owned And Operated By Third Party CTDI, Not Google

This Court is familiar with the relevant facts regarding CTDI repair facilities from its decision in *PMC*.  Nevertheless, several key facts bear emphasis and clarification, as AGIS omitted or mischaracterized them in its prior supplemental briefing.

*First*, CTDI is a repair services contractor for many companies, not just Google.  Ex. C (Pandian Dep.) at 207:5-14.  It is based in Pennsylvania and has dozens of facilities in the United States, but only one in this District, located in Flower Mound.

███████████████

https://www.ctdi.com/global_operations_network.html.

*Second*, ██████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

*Third*, ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

*Fourth*, ██████████████████████████████

████████████████████████████

*Fifth*, ███████████████████████████████

████████████████████████████████████

██████████████████████   ██████████████   █████

██████████████████████████

*Sixth*, Google does not control where CTDI locates its facilities. ███████████████

6

██████████

██████████████████████████████████████

████████████████████

*Seventh*, the repair services that CTDI provides to Google do not include transacting or otherwise interacting with customers.  CTDI receives products returned by customers, but Google handles all customer interactions itself.  ████████████████████████

██████████████████████████████████████

███████████████████████████████

### 2.     The Identified Optical Fiber Equipment Belongs To Third Party Level 3

Fiber-optic lines are thin glass strands used to carry signals in the form of light pulses over long distances of many tens of miles.  Ex. F.  Because light pulses can degrade after traveling long distances, an intermediate line amplifier ("ILA") can be used to amplify the light pulses to prevent them from degrading in quality.  Ex. G at 32:1-6.  ███████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████

### 3.     The Federal Circuit's *In re Google* Decision Holds That GGC Servers, Which Have Been Deactivated In This District, Fail To Confer Venue

The first basis for venue identified in AGIS's Complaint is GGC servers in this District. Dkt. 1 ¶¶ 9-28.  But since AGIS filed its Complaint, the Federal Circuit in *In re Google* held that GGC servers do not provide a proper basis for venue over Google in this District.  The Federal Circuit held "that a 'regular and established place of business' requires the regular, physical

presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"  949 F.3d at 1345.  Applying this test, the Federal Circuit concluded that Google did not have any employees or agents conducting its business in this District through the GGC servers.  *Id.* at 1345.  To the contrary, the GGC servers in this District were hosted, installed, serviced, and maintained by third party Internet Service Providers (ISPs).  *Id.* at 1345-46; *see also* McCallion Decl. ¶¶6-12.  And, the Federal Circuit concluded, those ISPs were not agents "conducting Google's business" through their activities for the GGC servers.  *In re Google LLC*, 949 F.3d at 1346.  AGIS's Complaint contains no additional allegations that would alter this analysis.

Moreover, on November 23, 2018—nearly a year before AGIS filed its Complaint initiating this action—the GGC servers located in this District were "drained," meaning they were deactivated and ceased serving content to users.  McCallion Decl. ¶13.

### 4.      Wi-Fi Service At Starbucks Locations In Texas Was Discontinued Four Months Before AGIS's Complaint Was Filed

The second basis for venue identified in AGIS's Complaint is Google's alleged provision of "Wi-Fi infrastructure and Wi-Fi service at Starbucks locations in this District."  Dkt. 1 ¶¶29-31.



Henson Decl. ¶¶3, 6.  . *Id.* ¶5.  *Id.*  *Id.* ¶6.  *Id.* ¶8.  In August 2019,  Google terminated its

support for Wi-Fi service at most Starbucks locations in the United States, including for all Starbucks locations in the state of Texas.  *Id*. ¶9.  Thus, since at least August 2019, three months before the Complaint was filed, Google has ceased to have any involvement with Wi-Fi services at all Starbucks locations in this District.  *Id*.

### 5.     Google Fi Is Deployed In This District Through Third Parties

The third basis for venue identified in AGIS's Complaint is Google's provision of the Google Fi, a subscriber-based cellular service, in this District.  Dkt. 1 ¶¶32-36.  Google Fi is deployed in this District using cell towers owned and controlled by third parties, not Google. Subburaj Decl. ¶¶3-4.  In particular, user devices supported by Google Fi have the ability to make calls and use data service nationwide using a combination of Wi-Fi networks available to users and cell towers and network infrastructure of third party carriers Sprint, T-Mobile, and U.S. Cellular.  *Id*.  Google does not own, lease, or exercise any control or decision-making authority with respect to any of the cell towers or network infrastructure of the third party carriers.  *Id*. ¶6. Google itself does not maintain any facilities, personnel, computer or network equipment in this District for establishing or maintaining the cellular infrastructure used by Google Fi, or for helping customers sign up or pay for Google Fi services.  *Id*. ¶7.

### 6.     Google's Cloud Interconnect (GCI) and Direct Peering Services Are Deployed By Third Party Megaport

The fourth basis for venue identified in AGIS's Complaint is Google's Cloud Interconnect (GCI) and Direct Peering services, which AGIS alleges are deployed through equipment located at two facilities in this District that AGIS refers to as "Megaport."  Dkt. 1 ¶¶37-46.  GCI and Direct Peering are services offered by Google that allow customers to connect to Google's network to access Google's cloud computing platform or other services.  Cha Decl. ¶¶3, 8.  In this District, customers cannot establish a direct physical link to Google's network.  Instead, customers can

connect to Google's network through an independent, non-Google service provider, called a Partner Interconnect Service Provider (PISP).  *Id*. ¶6.  The PISP acts as a data-delivery service, like a digital UPS driver:  a customer passes its data on to the PISP, which then takes care of transferring it to Google's network — a step that can only occur outside this District.  *Id.* ¶¶6, 8.

One PISP is Megaport, a company that is entirely separate from and independent of Google.  *Id*. ¶9.  Google does not own, lease, provide, maintain, or locate any equipment at Megaport's facilities, or have any personnel responsible for conducting any actions at those facilities.  *Id*.  Google understands that Megaport owns no facilities in this District.  *Id*.  Google understands that another company, CyrusOne, owns data centers at two locations in this District (1649 Frankford Rd. in West Carrollton, Texas and 2501 S. State Hwy 121, Business Suite 500, Lewisville, Texas), and that CyrusOne has a relationship with Megaport that allows the two companies to leverage each others' data centers for their respective customers.  *Id*. ¶10.  Google does not own, lease, provide, maintain, or locate any equipment at CyrusOne's facilities in this District or have any personnel responsible for conducting any actions at those facilities.  *Id*.

## IV.    ARGUMENT: VENUE IS IMPROPER IN THE EASTERN DISTRICT OF TEXAS

In a patent case, venue is proper only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  "[T]he Plaintiff bears the burden of establishing proper venue." *In re ZTE (USA) Inc*., 890 F.3d 1008, 1013 (Fed. Cir. 2018).   A district court may look to facts beyond the complaint when deciding a motion to dismiss based on improper venue.  *Kranos IP Corp. v. Riddell, Inc*., No. 2:17-cv-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017).

As AGIS acknowledges, Google is organized in Delaware with a principal place of business in Mountain View, California.  *See* Dkt. 1 ¶2.  Therefore, under *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017), Google does not reside in this

District for purposes of the patent venue statute.  And as explained below, AGIS cannot meet its burden to establish that Google has a "regular and established place of business" in this District.

### A.      Google Has No "Regular And Established Place Of Business" Here

In *Cray*, the Federal Circuit explained that for a defendant to have a regular and established place of business in a district:  "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  871 F.3d at 1360.  In *In re Google*, the Federal Circuit clarified that a regular and established place of business "requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'"  949 F.3d at 1345.  None of AGIS's venue allegations meet these requirements.

### 1.      Third Party CTDI's Flower Mound Repair Facility Does Not Confer Venue

CTDI's Flower Mound facility does not support finding venue over Google in this District under either of *Cray* factors 2 and 3.  Under *Cray* factor 2, there is no "regular, physical presence of an employee or other agent of" Google at CTDI's Flower Mound facility because CTDI is not an agent of Google.  Specifically, (1) CTDI cannot bind Google to any business relationships; (2) CTDI does not receive any interim instructions from Google in conducting repair activities; (3) CTDI's repair activities are ancillary to Google's actual businesses; and (4) CTDI cannot accept service of process on Google's behalf.  And under *Cray* factor 3, the Flower Mound facility belongs to CTDI, and is not a place "of Google."

#### a.      *Cray* Factor 2 - CTDI Is Not Google's Agent

##### (1)      CTDI Cannot Bind Google To Business Relationships

An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's

control, and the agent manifests assent or otherwise consents to so act" in that capacity. Restatement (Third) of Agency § 1.01.  By definition, an agent "has the authority to 'alter the legal relations between the principal and third persons.'"  *O'Neill v. Dep't of Hous. & Urban Dev.*, 220 F.3d 1354, 1360-63 (Fed. Cir. 2000).  Indeed, "an essential characteristic of an agency is the power of the agent to commit [its] principal to business relationships with third parties[.]"  *U.S. v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir. 1991) (citation omitted); *accord Griffin v. U.S.*, 588 F.2d 521, 528-29 (5th Cir. 1979).

Here, CTDI has no power to commit Google to any business relationships with anyone, including customers. █████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

This Court's *PMC* order did not make any contrary findings or otherwise suggest CTDI could bind Google to any contract or business relationship.  Rather, the order remarked that Google's customers "have no idea that CTDI exists."  Dkt. 118-2 at 8.  Thus, CTDI is unknown to Google's customers, cannot deal with customers on Google's behalf, and therefore cannot bind Google to any business relationships with current or prospective customers.

(2)     CTDI Does Not Receive Interim Instructions

In a principal–agent relationship, the principal "has the right to give interim instructions or directions to the agent once their relationship is established."  Restatement § 1.01 cmt. f(1).  Here, Google exercises no supervision over CTDI's repair activities, and CTDI is simply a service contractor that executes its responsibilities as defined by the parties' agreement.

Other courts have found on similar facts that service contractors of defendants are not agents.  In *ES Distribution, LLC v. Hangtime LLC*, a New Jersey court found venue improper where a defendant used a third party's fulfillment facility in the state to store, receive, and ship defendant's products.  No. 20-469 (FLW) (DEA), 2020 WL 6689755, at *2-3 (D.N.J. Nov. 13, 2020).   Under  the  second  *Cray*  factor,  the  court  concluded  the  third-party  operator  of  the fulfillment facility was not an agent of defendant because "[w]hile Defendant provides some instruction to [the third party] as to how it would prefer its shipments be made, Defendant has no power to control [the third party's] conduct."  *Id*. at *3.  And in *Andra Group, LP v. Victoria's Secret Stores, LLC*, a court in this District found that defendants' activities for third-party retailers — including "supplying improvements, paying operating costs such as utilities, investing in technology,  posting  Stores'  job  listings  on  [defendant's]  website,  and  requiring  [third-party retailer] employees to sign the [defendant's] code of conduct" — failed to "demonstrate exercise of control over [retailers'] employees" necessary to create an agency relationship under *Cray* factor 2.  No. 4:19-CV-288-ALM-KPJ, 2020 WL 2478546, at *5 (E.D. Tex. Feb. 24, 2020), *report and recommendation adopted*, No. 2020 WL 1465894 (E.D. Tex. Mar. 26, 2020).

In its prior supplemental briefing, AGIS cited only one case to support its position, *Desai v. ADT Security Systems, Inc.*, 78 F. Supp. 3d 896 (N.D. Ill. 2015).  But in *Desai*, the defendant contracted with a third party, "PMG," to market its home security services and controlled virtually all aspects of PMG's marketing activities.  The parties' agreement provided that PMG's marketing activities were "subject to detailed restrictions on telemarketing" and "[defendant] also reserved the right to inspect PMG's call records and request any information ADT wanted."  *Id*. at 903.  "In short,  [defendant]  controlled  what  products  and  services  PMG  promoted;  what  telemarketing techniques  PMG  could  use;  and  what  information  PMG  was  required  to  provide  to  ensure

compliance with the contract."  *Id*.  Critical to the court's decision — and absent here — was that "[defendant] routinely exercised its contractual rights to control PMG's telemarketing activities," including the following:

> (1) "[defendant] trained PMG employees on how they were supposed to market ADT's products and services";
>
> (2) "[defendant] provided PMG employees with [defendant's] call scrubbing instructions and a call script to follow";
>
> (3) "[o]n about five occasions, [defendant] performed quality assurance on PMG's calls and brought any problems to PMG's attention";
>
> (4) "[defendant] also reviewed PMG's marketing tactics; asked PMG to confirm or deny whether it was working with particular lead providers; and requested a full list of call identification numbers that PMG and its lead providers used."  *Id.*

CTDI's relationship with Google far more closely resembles the service-provider relationships in *ES Distribution* than the marketing relationship in *Desai*.  CTDI performs repair services pursuant to the SOW, and the *ex ante* contractual provisions in the SOW make clear that the type of interim, immediate, and ongoing control that characterizes the relationship between a true principal and agent does not exist here.

Indeed, ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████  Courts routinely credit "no agency" clauses in contracts.  *E.g.*, *Arguello v. Conoco, Inc.*, 207 F.3d 803, 807-08 (5th Cir. 2000) (finding that the "plain language" of a "no agency" clause "defines the relationship" between the parties); *Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1334 (7th Cir. 1995) (same).

The Court's *PMC* order identified certain provisions in the SOW as constituting interim instructions, ████████████████████████████████████████████████

███████████

███████████████████████████████

██████████████████████████████████

█████████████████████████████

██████████, Google respectfully disagrees that the provisions of the SOW constitute interim

instructions.  Rather, these provisions describe Google's service requirements and standards, but

they do not control *how* CTDI performs its repairs as is required for an agency relationship.

Similarly, the Court in *PMC* pointed to certain periodic reporting requirements ██████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

█████████████████████ But a party's passive receipt of "weekly and monthly

routine reports of its activities" from another does not create an agency relationship between them.

*Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036, 1040 (N.D. Ill. 2005).

The Court also pointed to ████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

█████████████████████████ This lack of

authority is critical because Texas courts have identified the "power to hire and fire and the power of supervision over the agent's employees" as basic rights that a principal holds over its agent. *E.g.*, *Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 889 (S.D. Tex. 2008).

Nor is this a case where the realities of CTDI's and Google's relationship diverge from the SOW.  The court in *Desai* found an agency relationship because "[defendant] routinely exercised its contractual rights to control PMG's telemarketing activities."  78 F. Supp. 3d at 903.  ███

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

The warranty-service provisions in the SOW do not therefore constitute interim instructions that could support an agency relationship between Google and CTDI.  Rather, those provisions, combined with the realities of Google's and CTDI's relationship and ████████████ ████████████ confirm that CTDI is a services contractor, not an agent, of Google.

> (3)    CTDI's Repair Activities Are Ancillary To Google's Business

CTDI is not Google's agent for a third reason:  CTDI's repair activities at Flower Mound are ancillary to Google's business.  *In re Google* is instructive.  There, the Federal Circuit found venue improper as to Google because the "maintenance activities" that third-party ISPs performed for computer servers "cannot, standing alone, be considered the conduct of Google's business." 949 F.3d at 1346.  "Maintaining equipment is meaningfully different from — as only ancillary to — the actual producing, storing, and furnishing to customers of what the business offers."  *Id.*

The repair activities of CTDI are just as ancillary to Google's business as the "maintenance activities" of the ISPs in *In re Google*.  Part of Google's business includes designing and selling consumer electronics devices.  The post-sale repair of some of those devices when they break is an ancillary function, not a part of Google's business.  Indeed, it is precisely because repair is not a part of Google's business that Google contracts with third parties like CTDI who specialize in repairing after-market devices.

(4)     CTDI Cannot Accept Service Of Process On Google's Behalf

CTDI is not Google's agent for a fourth reason:  CTDI cannot accept service of process on behalf of Google under the service statute, 28 U.S.C. § 1694.  *In re Google* confirmed that "the venue and service provisions were not just enacted together but expressly linked, and both have always required that the defendant have a 'regular and established place of business.'"  949 F.3d at 1344.  Thus, if a contractor were an "agent" operating a "regular and established place of business" of a defendant, a plaintiff would be able to effectuate service on the defendant by serving the contractor.  *Id*.  This District has also recognized that "[u]nder the federal rules, service of process upon a corporation must be made upon 'an officer, a managing or general agent, or . . . any other agent authorized . . . to receive service of process,'" and similarly, "Texas allows service of process on a corporation's registered agent[.]"  *Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2017 WL 4169000, at *2 (E.D. Tex. Sept. 20, 2017) (citing Fed. R. Civ. P. 4(h)(1); Tex. Bus. Orgs. Code § 5.255).  CTDI and its personnel at Flower Mound are no more able to accept service on Google's behalf than the employees of the third-party ISPs in *In re Google* who maintained GGC servers.

███████████████████

   b.  ***Cray* Factor 3 - CTDI's Flower Mound Facility Is Not "Of Google"**

   The CTDI Flower Mound facility is not a place of business "of Google" under *Cray*'s third factor.  The facility is owned and operated by CTDI, not Google. ██████████████

██████████████████████████████████

██████████████████████████ The regular personnel at the facility are CTDI employees who repair products for many companies, not just Google. *Id.* at 207:5-14.

   Contrary to the Court's reasoning in *PMC*, Dkt. 291 at 11, █████████████████

███████████████████████████████████

█████████████████████████████████████

█████████████████████████████████

██████████████████████████ In fact, the court in *ES Distribution* rejected that very argument, holding that the defendant's "mere act of placing" the address of a third-party fulfillment center in Lakewood, New Jersey on shipping labels did not suggest "that Defendant actually conducts its business in Lakewood, New Jersey" or that the fulfillment facility was a place of business "of the defendant."  2020 WL 6689755, at *3.  Another court reached a similar conclusion, holding that a defendant "facilitating business and services through an independent entity is not enough for ratification" of that entity's location as the defendant's own.  *Omega Patents, LLC v. Bayerische Motoren Werke AG et al.*, 1:20-cv-01907, Dkt. 70, Order at *15-18 (N.D. Ga. Dec. 21, 2020) (finding independent BMW car dealerships in Georgia did not confer venue over BMW).

   Google also did not instruct or otherwise specify that CTDI should conduct its repairs in Flower Mound, Texas. █████████████████████████████

██████████████████████████████████

Applying *Cray* factor 3, courts have unanimously held that warehouse, storage, and fulfillment facilities of third parties located in a district do not confer venue over a defendant who contracts to use those third-party facilities for storing and shipping goods.  *See, e.g.*, *ES Distrib.*, 2020 WL 6689755, at *2-3; *Zaxcom, Inc. v. Lectrosonics, Inc.*, No. 17-CV-3408, 2019 WL 418860, at *7-9 (E.D.N.Y. Feb. 1, 2019); *SportPet Designs Inc. v. Cat1st Corp.*, No. 17-CV-0554, 2018 WL 1157925, at *3 (E.D. Wis. Mar. 2, 2018); *Xodus Med., Inc. v. Allen Med. Sys., Inc.*, No. 2:17-CV-00581, 2018 WL 2338763, at *2 (W.D. Pa. May 22, 2018); *CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-5669(NSR), 2018 WL 2388534, at *3 (S.D.N.Y. May 24, 2018).  Those courts reason that to satisfy *Cray* factor 3, the defendant must "exercise[] possession or control over" the third party's business location; the mere *use* of that location is insufficient.  *E.g.*, *Xodus*, 2018 WL 2338763, at *2; *SportPet*, 2018 WL 1157925, at *3 (finding *Cray* factor 3 not met because "[defendant] does not own or lease the Kenosha facility, it does not have any discernable control over it or possessory rights in it, and it does not employ anyone there").

In *PMC*, the Court found that Google has an established place of business because

███████████

███████████████████████████

███████████████████████████

█████████████████████████

█████████████████████████████

███████████████████████████

██████████████████   The facts are particularly analogous to those in

*International Technologies & Systems Corp. v. Samsung Electronics Co. Ltd*, where the plaintiff

alleged that Best Buy stores in the district could confer venue over Samsung because those stores

included dedicated spaces, called "Samsung Experience Shops," for selling defendant Samsung's

products.  No. SA CV 17-1748-DOC (JDEx), 2018 WL 4963129, at *8 (C.D. Cal. June 22, 2018).

The court rejected plaintiff's position because Samsung did not "own or lease any offices or

facilities or have any employees that work[ed]" at the "Samsung Experience Shops."  *Id*.  For

similar reasons, CTDI's Flower Mound facility cannot provide a basis for venue over Google in

this District.

### 2.      Third Party Level 3's Optical Fiber Equipment Does Not Confer Venue

Level 3's optical fiber lines and ILAs in this District also fail to create venue over Google

under Cray factors 2 and 3.  *Cray* factor 2 is not satisfied because, as a threshold matter, the fiber-

optic lines and ILAs in this District are not "places of business" at all.  Unlike the GGC servers

addressed in *In re Google*, fiber-optic lines and ILAs do not cache or serve any content to local

users in this District.  The lines are part of a global fiber-optic network infrastructure, and the lines

in this District are used to carry data to between places outside of this District, such as Dallas or

Atlanta.  Ex. G at 13:18-21, 15:11-18:5, 77:20-78:9, 132:17-133:8.  The lines in this District are

thus analogous to railway tracks supporting trains that pass through, but never actually stop, in this

████████████████

District.

*Cray* factor 2 is also not satisfied because there are no Google employees or agents regularly and physically present at any of the alleged "places of business," namely, the fiber-optic lines or ILAs. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Such a "one-time event" of fixing a faulty cable by definition does not constitute a "*regular*, physical presence . . . at the alleged 'place of business.'" *In re Google*, 949 F.3d at 1345-46 (emphasis added).  And like the maintenance of GGC servers that the Federal Circuit found ancillary to Google's business, *id*. at 1346, the maintenance of fiber-optic lines is also ancillary to Google's business.

*Cray* factor 3 is not satisfied because Level 3's network infrastructure belongs to Level 3, not Google. ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

████████████████████████████████

████████████████████████████████

██████████████████████████

### 3.   The Federal Circuit's *In re Google* Decision Disposes Of AGIS's Reliance On GGC Servers As A Basis For Venue

The Federal Circuit's decision in *In re Google* already held that GGC servers in this District do not qualify as a regular and established place of business of Google and, thus, cannot provide a basis for venue over Google in this District.  In reaching its decision, the Federal Circuit reasoned that the GGC servers are hosted, installed, maintained, and serviced by third-party ISPs, not by Google or any Google employees.  949 F.3d at 1345-74.  The ISPs, in turn, were not agents regularly conducting the business of Google.  First, the ISPs' provision of network access to GGC servers did not establish an agency relationship because "Google has no right of interim control over the ISP's provision of network access." *Id*. at 1345.  Second, the ISPs' installation of GGC servers did not establish an agency relationship because "installation activity does not constitute the conduct of a 'regular and established' business, since it is a one-time event for each server." *Id*. at 1346.  Third, the ISPs' maintenance and service of GGC servers did not establish an agency relationship because "[m]aintaining equipment is meaningfully different from — as only ancillary to — the actual producing, storing, and furnishing to customers of what the business offers." *Id*.  "[M]aintenance activities cannot, standing alone, be considered the conduct of Google's business." *Id*.  In light of *In re Google*, then, AGIS cannot rely on GGC servers for venue.

At any rate, the GGC servers in this District ceased serving content to users on November 23, 2018 — nearly a year before AGIS filed its Complaint on November 4, 2019.  Because, as this Court noted in *SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 941 n.7 (E.D. Tex. 2017), "[v]enue is assessed as of the time of filing of the complaint," AGIS cannot rely on the

GGC servers to show Google has a "regular and established place of business."[1]

### 4. Google's Involvement With Starbucks Wi-Fi Ceased In July 2019, Before AGIS's Complaint

AGIS similarly cannot rely on Google's support of Wi-Fi services at Starbucks locations in this District as a basis for venue because Google ceased providing that support in July 2019 — four months before AGIS filed its Complaint. *SEVEN*, 315 F. Supp. 3d at 941 n.7. Since at least August 2019, Google has not had any involvement with Wi-Fi services at any Starbucks locations in Texas or this District. Henson Decl. ¶9. And even before August 2019, Google's support for Wi-Fi services at retail locations of Starbucks could not have constituted a "regular and established place of business" of Google under *Cray*. For starters, a wireless network is not a "physical place" of business for purposes of *Cray*'s first requirement. ██████████████████

██████████████████████████████████

████████ Further, AGIS makes no allegation that any Google employees or agents were ever physically present at the Starbucks stores, or that Starbucks somehow acted as Google's agent. *See In re Google*, 949 F.3d at 1345. ████████████████

██████████████████████████████████

Henson Decl. ¶6. ████████████████████████████

████████████████████████████████ *Id*.

¶¶5-6. Thus, neither the Access Point device nor any Starbucks location in this District was a regular and established place of business of Google.

---

[1] In *In re Google*, the Federal Circuit noted that "the regional circuits appear to be split on the exact timing for determining venue." 949 F.3d at 1340 n.1. This Court, however, has correctly determined that "[v]enue is assessed as of the time of filing of the complaint." *SEVEN*, 315 F. Supp. 3d at 941 n.7. The venue statute says an action "may be brought" in the district where the defendant "*has* a regular and established place of business," 28 U.S.C. § 1400(b) (emphasis added), not where the defendant *has had* a place of business, *see Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017).

### 5.      Google Fi Is Neither A "Physical Place" Nor "Of Google"

Google Fi is a cellular service that Google deploys using exclusively the networking equipment and infrastructure of third-party cellular carriers (AT&T, T-Mobile, or Sprint). Subburaj Decl. ¶¶3-4.  Thus, Google Fi fails the requirements of *Cray* and *In re Google* in two respects.  First, Google Fi is not a "physical place" of business, such as "a building or a part of a building"; rather, it is a service that consists of the transmission of "electronic communications," which the Federal Circuit held is not a "place" for purposes of the venue statute.  *Cray*, 871 F.3d at 1362.  Second, because Google neither owns the equipment or cell towers, nor has any say over where they are located or how they are operated, they cannot be a place of business *of Google*.  *Id.* at 1362-63.  Further, there is no allegation that any employee or agent of Google was ever present conducting Google's business at the location of the equipment or cell towers.  Thus, Google Fi does not constitute a regular and established place of business.  *In re Google*, 949 F.3d at 1345.

### 6.      Third-Party Facilities Supporting GCI And Direct Peering Are Not Places *Of Google*

The facts belie AGIS's allegations that Google's GCI and Direct Peering services are deployed through "Google equipment" at facilities referred to as "Megaport," or that Google holds contractual or property rights to use the space and maintain the equipment at the Megaport facilities.  Dkt. 1 ¶¶37-46.  First and foremost, Megaport is not Google — it is a different company.  Cha Decl. ¶9.  Second, there is no "Google" "equipment at Megaport's facilities," as AGIS asserts.  *Id.*  Megaport receives data from GCI and Direct Peering customers in this District and then transfers that data to Google's servers outside this District.  *Id.* ¶¶6, 8.  Customers of Google's GCI and Direct Peering services can connect to Google's virtual network and cloud platform using Megaport's facilities and equipment.  *Id.* ¶¶6, 8-9.  Google does not own any portion of Megaport

or own or lease any of Megaport's facilities.  *Id*. ¶9.[2]  Nor does Google provide any equipment to Megaport, or maintain or locate any of its equipment at Megaport to facilitate Megaport's connectivity capabilities.  *Id*.

Thus, neither Megaport itself nor any equipment located there is a place of business *of Google*.  The fact that Megaport may "provide[] Google with a service" — "network access" for some customers — is plainly insufficient to transform it into Google's place of business.  *In re Google*, 949 F.3d at 1345-46.  And AGIS has not and cannot identify any employees or agents of Google with a "regular, physical presence" in this District in connection with Megaport, GCI, or Direct Peering services.  *Id*. at 1345.

### 7.  AGIS's Other Alleged Google Connections And Services Fail To Establish Venue

AGIS's Complaint provides a cursory listing of other alleged Google connections and services offered in this District, each more tenuous than the next.

First, AGIS alleges that "Google has multiple authorized repair centers in the Eastern District of Texas" and identifies centers operated by third-party companies, uBreakiFix and Cynergy.  Dkt. 1 ¶¶48-52.  AGIS's allegations fail on their face.  Nowhere in its Complaint does AGIS allege that Google owns or controls the third-party repair centers or any equipment in them. Nor does AGIS allege that those centers are *of Google* or that the employees of uBreakiFix or Cynergy are agents of Google conducting any of Google's business.  *In re Google*, 949 F.3d at 1345.[3]  Indeed, the allegations here are even more attenuated than those AGIS made in another

---

[2] Megaport also does not own any facilities in the District, but rather has a relationship with another company — CyrusOne — that does.  Cha Decl. ¶¶10-11.  Google has no more connection to CyrusOne than to Megaport.  *Id*.

[3] In addition, uBreakiFix does not exclusively repair Google products.  Instead, it is a national repair service for many phone manufacturers, including Apple and Samsung.  *See* https://www.ubreakifix.com/company/about.  As to Cynergy, AGIS points to a facility in Grapevine, Texas (Dkt. 1 ¶52), which is located in the Northern District.

case, *AGIS Software Dev., LLC v. ZTE Corp.*, that this Court rejected as a basis for venue.  In that case, AGIS relied on a call center that serviced the defendant's customers but was operated by a third party, but this Court found that the call center did not support venue because it did not constitute a place of business *of the defendant* under *Cray*'s third requirement.  No. 2:17-CV-00517-JRG, 2018 WL 4854023, at *3-4 (E.D. Tex. Sept. 28, 2018) (citing *In re ZTE (USA) Inc*., 890 F.3d 1008 (Fed. Cir. 2018)).

Next, AGIS alleges that Google's Street View service displays images that were captured by Google-operated cars traveling through this District.  Dkt. 1 ¶¶53-55.  But traveling cars are not a "physical, geographical location" like a "building or a part of a building" under *Cray*'s first requirement.  871 F.3d at 1362. ███████████████████████████████████
███████████████████████████████████████████████████ Data Decl. ¶¶3-4.  And those cars also travel to and capture images at locations outside of this District and Texas.  *Id*. ¶4.  Given their transient presence, Street View cars cannot create a "regular and established place of business" in this District under *Cray*'s second requirement.

Next, AGIS points to various nationwide services as evidence of venue in this District, including Google Express; G-Suite services and Google Software-as-a-Service applications available through Google Cloud; Google Voice; and Waze's collection of traffic data.  Dkt. 1 ¶¶56-63.  These allegations that Google offers online services and products to customers nationwide are insufficient to establish a "regular and established place of business" in this District.  *See SEVEN*, 315 F. Supp. 3d at 951 n.26 (idea that "every handheld device sold by Verizon would become a place of business for Verizon" is "clearly . . . too far afield from the statutory text"); *see also In re Google*, 949 F.3d at 1343 ("In *Cray*, we rejected the notion that a 'virtual space' or 'electronic communications from one person to another' could constitute a regular and established place of

26

business.").  And Google Express was merely a service that connects online users to popular retail stores to order the retailers' goods.  Krause Decl. ¶4.  Shoppers in this District could use Google Express, just as they could in every district, but Google had no employees, factories, warehouses, storage facilities, or delivery fleets in the District to operate the service.  *Id*. ¶5.  Absent any related physical presence or real or personal property in the District, Google Express — like Google's other digital services — is not a regular and established place of business under *Cray*.

### 8.    Operations Outside The District Or Pre-Suit

Google's alleged "Presence in the State" that is not tied to this District (Dkt. 1 p. 32) does not establish venue here.  For example, AGIS identifies Google Fiber services provided in Austin and San Antonio, and it alleges that Google has also provided the state of Texas with aerial imagery.  *Id*. ¶¶71, 73.  But again, there is no connection to this District and no allegation that supports a "regular and established place of business" in this District.  Similarly, AGIS points to office space and real estate that either are outside of this District or were closed by Google years before the complaints were filed.  AGIS points to land purchased in Midlothian, Texas, Google offices in Austin, Texas, and an investment in a wind farm project in Oldham County, Texas.  *Id*. ¶¶65-68, 72.  But all of these properties are located outside the District, and thus have no bearing on whether Google should be subject to venue within the District.  And while AGIS alleges that Google "previously leased office space in this District for about 50 people through its Frisco, Texas office" (*id*. ¶58), that office closed in December 2013, many years before AGIS filed its Complaint.

### B.    AGIS Cannot Establish A Nexus Between Alleged Acts Of Infringement And Google's Purported "Regular and Established Place Of Business"

Beyond showing that a defendant has a regular and established place of business, courts have also required plaintiffs to identify a relationship between that place and the alleged infringement.  *See Scaramucci v. FMC Corp.*, 258 F. Supp. 598, 602 (W.D. Okla. 1966); *Jeffrey*

27

*Galion, Inc. v. Joy Mfg. Co.*, 323 F. Supp. 261, 266-67 (N.D. W. Va. 1971).  While *SEVEN* concluded otherwise, that requirement is confirmed by the patent venue statute's history, *see Cray*, 871 F.3d at 1361 (noting § 1400(b)'s predecessor was passed to ensure "[j]urisdiction would not be conferred by '[i]solated cases of infringement' but 'only where a permanent agency is established'").  Here, AGIS's allegations center on features of the Accused Google Applications. Dkt. 1 ¶¶88-166.  None of Google's accused activities of "making, using, offering to sell, selling and/or importing" the Accused Google Applications occur at or are related to any of the purported "regular and established places of business" in this District that AGIS identified.  Google's design and development activities for the Accused Google Application occur primarily at its headquarters in Mountain View, California; none of that design and development work happens in this District. Shaper Decl. ¶¶7-13.  To the extent the download and use of those applications by users in this District constitute "using" or "selling," those uses and sales have no nexus to any of the tenuous connections between Google and the District that AGIS identifies in its Complaint, such as GGC servers, Starbucks Wi-Fi, Google Fi, Megaport facilities used for GCI and Direct Peering, or third-party repair centers.

## V.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO NDCA

Where venue is improper, as it is here, the district court "shall dismiss, or if it be in the interest of justice, transfer such [a] case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Should the Court determine that it is in the interest of justice to transfer these cases for lack of venue rather than dismiss them, Google requests that the Court transfer the cases to the NDCA "because 'witnesses, evidence, the underlying events, and [the defendant] are based there.'"  *See Moran v. Smith*, No. 5:15-CV-1121-DAE, 2016 WL 4033268, at *2 (W.D. Tex. July 27, 2016) (citation omitted).

The bases for transfer are detailed in Google's separately filed and pending motion to

transfer under § 1404(a), which has been fully briefed and reinstated by the Court.  *See* Dkts. 149, 251.   Summarizing here, first, the case could have been brought in the NDCA, as Google's Mountain View, California headquarters is a "regular and established place of business."  Dkt. 149 at 7.   Second, the relevant evidence and witnesses are centered in the NDCA, including each of the witnesses that Google put forward in response to AGIS's Rule 30(b)(6) deposition notice to Google, and the witnesses who authored or developed prior art references specifically relied on in Defendants' invalidity expert report.  *Id.* at 7-12.   Third, statistics show that the time to trial and time to appeal are similar in the NDCA, and may even be faster in some respects.  *Id.* at 13-14. Fourth, AGIS's lawsuit "calls into question the work and reputation" of Google and its employees that conduct business in the community, which gives the NDCA a unique interest.  *Id.* at 13.

## VI.    CONCLUSION

For these reasons, the Court should dismiss this action for improper venue or, alternatively, transfer it to the NDCA.

Dated: February 25, 2022

Respectfully submitted,

By: */s/ J. Mark Mann*
J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Darin W. Snyder (*pro hac vice*)
dsnyder@omm.com
Luann L. Simmons (*pro hac vice*)
lsimmons@omm.com
Mark Liang (*pro hac vice*)
mliang@omm.com
Bill Trac
btrac@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

**ATTORNEYS FOR DEFENDANT GOOGLE
LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

Dated: February 25, 2022                          */s/ J. Mark Mann*
                                                  J. Mark Mann


## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

The undersigned certifies that the foregoing document and all supporting declarations and exhibits thereto are being filed under seal pursuant to the Protective Order entered in this case.

Dated: February 25, 2022                          */s/ J. Mark Mann*
                                                  J. Mark Mann