IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **AGIS SOFTWARE DEVELOPMENT LLC,** | § § § § | Case No. 2:19-cv-00361-JRG |
| *Plaintiff*, | § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| **GOOGLE LLC,** | § § | |
| *Defendant*. | § § § | |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS RE-FILED
RULE 12(b)(3) MOTION TO DISMISS FOR IMPROPER VENUE**

**TABLE OF CONTENTS**

Page

A. AGIS's Accusations Of Discovery Misconduct Are False ............................................... 1

B. Google's GGC Servers In This District Were Deactivated Before This Suit Was Filed And Cannot Confer Venue Under *In re Google* ....................................................... 2

C. CTDI's Flower Mound Facility Is Not Google's Regular And Established Place Of Business ................................................................................................................... 4

    1. *Cray* Factor 2 – CTDI Is Not Google's Agent ........................................................ 4

        a. CTDI Cannot Commit Google To Business Relationships And Cannot Accept Service On Google's Behalf ............................................. 4

        b. CTDI's Repair Activities Are Ancillary To Google's Business ................ 5

        c. Google Does Not Have Interim Control Over CTDI ................................. 5

    2. *Cray* Factor 3 – CTDI's Flower Mound Facility Is Not "Of Google" ................... 7

D. ILAs Are Not Google's Regular And Established Place Of Business ............................. 8

E. Best Buy Is Not Google's Regular And Established Place Of Business .......................... 9

F. Conclusion ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Pages**

**CASES**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
   722 F.3d 1229 (10th Cir. 2013) ............................................................................................... 4

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
   6 F.4th 1283 (Fed. Cir. 2021) ............................................................................................ 7, 8

*In re Google LLC*,
   949 F.3d 1338 (Fed. Cir. 2020) .................................................................................... passim

*In re Volkswagen*,
   2022-108, 2022 WL 697526 (Fed. Cir. Mar. 9, 2022) ...................................................... passim

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*,
   No. SA CV 17-1748-DOC (JDEx), 2018 WL 4963129 (C.D. Cal. June 22,
   2018) ...................................................................................................................................... 10

*O'Neill v. Dep't of Hous. & Urban Dev.*,
   220 F.3d 1354 (Fed. Cir. 2000) ............................................................................................... 4

*Personalized Media Commc'ns, LLC v. Google LLC*,
   No. 2:19-cv-00090-JRG (E.D. Tex. July 16, 2020) ............................................................... 4

**OTHER AUTHORITIES**

Restatement (Second) of Agency (1958) ........................................................................................ 4

AGIS's opposition presents four grounds for venue, three of which—GGC servers, CTDI's Flower Mound facility, and Level 3 facilities used to hold in-line amplifiers (ILAs)—AGIS presented in 2020 in response to Google's original Rule 12 motion. None of the rehashed grounds have merit. AGIS's leading venue ground—GGC servers—was rejected two years ago in *In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020). AGIS's other rehashed venue grounds—CTDI's Flower Mound and ILAs—are baseless for the reasons detailed in Google's re-filed motion, and further in light of the Federal Circuit's intervening, precedential decision, *In re Volkswagen*, 2022-108, 2022 WL 697526 (Fed. Cir. Mar. 9, 2022). *In re Volkswagen* abrogates this Court's decision in *PMC*. It holds that in evaluating agency under *Cray*'s second factor: (1) contracts with a service provider that merely set "constraints," "service quality" standards, or warranties governing the service provider's conduct do not establish the type of "interim," "step-by-step," and "day-to-day" control needed for an agency relationship and (2) no-agency clauses are probative of the absence of an agency relationship. *Id*. at *6-8. Here, Google's contracts with CTDI and Level 3 do not establish "interim control" and their no-agency clauses further support the lack of agency. AGIS's opposition halfheartedly raises only one new venue ground—shelf space for Google products in Best Buy stores—but that ground also fails the agency requirements of *In re Volkswagen*. It also fails *Cray*'s third factor because Best Buy's stores ostensibly belong to Best Buy; Google does not own or lease any part of those stores. Thus, venue is improper in this District.

### A. AGIS's Accusations Of Discovery Misconduct Are False

As an initial matter, AGIS's accusations about Google's "patterned conduct of failing to disclose" and "best efforts to limit" venue discovery are both unsupported and flatly wrong. Opp. at 1. AGIS has never served any formal venue discovery requests. AGIS has only asked Google to reproduce venue discovery from other cases, first *PMC* in 2020 and more recently, *Vocalife*. And in both cases, Google has produced the full record and has done so properly. In 2020, Google

reproduced all discovery from PMC relating to CTDI's Flower Mound facility, which was all that AGIS requested, and reproduced the remainder of the PMC venue discovery relating to ILAs (which AGIS had never requested) right after the Court ordered it in December 2020. Dkt. 154, 175. AGIS's claim that as of February 28, Google had withheld a substantial portion of the Vocalife venue discovery is also wrong. Google reproduced all documents from Vocalife on February 22. On February 28, AGIS sent a follow-up request for interrogatory responses and a deposition transcript from Vocalife, which Google produced just two days later on March 2. AGIS's complaints about Google's recent *Vocalife* production are also belied by the fact that its opposition relies on mostly the same venue grounds and same evidence that AGIS presented in 2020, in response to Google's original Rule 12 motion. AGIS devotes barely a page of briefing to the only new ground, Best Buy—and its arguments are based on evidence that Google reproduced in this case less than a week after it was originally produced in *Vocalife*.

**B.     Google's GGC Servers In This District Were Deactivated Before This Suit Was Filed And Cannot Confer Venue Under *In re Google***

First, contrary to AGIS's assertions, Google has no operational GGC servers in the District, and Google employees have not traveled to the District to repair GGC servers. The sole putative evidence AGIS cites to support its allegation that the GGC servers are active in this District is a webpage that describes how active, **un**drained GGC edge nodes operate. Ex. 7.[1] And that ***very same website*** identifies where GGC edge node servers are located, and shows that none are in the District. Ex. J. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. K at 24:20-25:6, 29:13-24, 31:11-18.

---

[1] Citations to Exs. 1-33 refer to exhibits to the Declaration of Vincent Rubino for AGIS. Citations to Exs. A-K refer to exhibits to the Declarations of Bill Trac for Google.

2

AGIS's allegation that Google employees have repaired GGC servers in this District, Opp. at 9-10, is even further afield from the evidence; indeed, it makes no sense given that the GGC servers were deactivated. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Ex. 9 at GOOG-PMC-2259 (emphasis added).  There is no evidence that *any* Google personnel has come to the District to repair GGC servers.

Second, even if functioning GGC servers were in the District, they could not form the basis for venue because the Federal Circuit has already rejected such a claim.  *See* Dkt. 255 ("Mot.") at 22-23.  Remote activity relating to GGC servers cannot form the basis for venue absent the physical presence of Google's agents because "a 'regular and established place of business' requires the regular, *physical* presence of an employee or other agent of the defendant."  *In re Google*, 949 F.3d at 1345 (emphasis added).  Thus, AGIS's assertion that GGC servers could constitute a regular place of business based on Google's remote activity without the presence of any agents fails under *In re Google*.  And AGIS's reliance on the "ATM Exception for Venue Purposes" in the AIA was already rejected by the Federal Circuit.  *Id.*

Unable to identify any Google employee or agent located in the District, AGIS resorts to mischaracterizing the GGC servers themselves as "agents" of Google.  Opp. at 12-15.  AGIS's mischaracterization is based on the Federal Circuit's dicta that a machine might be an agent if "service could be made on a machine pursuant to 28 U.S.C. § 1694."  *In re Google*, 949 F.3d at 1347.  But the Federal Circuit's dicta merely left open whether a machine could hypothetically be an "agent" in a *different* case with *different* facts; and AGIS does not attempt to demonstrate that § 1694 permits service on a machine.  On the facts before it in *In re Google*—which are materially

3

identical to the facts in this case—the Federal Circuit held that GGC servers are not agents of Google and do not give rise to venue. *Id.*

### C. CTDI's Flower Mound Facility Is Not Google's Regular And Established Place Of Business

AGIS's arguments regarding CTDI align with those of the Court in *Personalized Media Communications, LLC v. Google LLC* ("*PMC*"), No. 2:19-cv-00090-JRG, Dkt. 291 (E.D. Tex. July 16, 2020). Ex. 2. However, the Court's decision in *PMC* must be revisited in view of the Federal Circuit's very recent decision in *In re Volkswagen*, which held that car dealerships were not places of business of the car companies. Google's relationship with CTDI is far more attenuated than the relationship between car companies and car dealerships that the Federal Circuit found insufficient to confer venue.

#### 1. *Cray* Factor 2 – CTDI Is Not Google's Agent

##### a. CTDI Cannot Commit Google To Business Relationships And Cannot Accept Service On Google's Behalf

Google's motion identified two requirements for agency that CTDI does not fulfill: (1) "the authority to 'alter the legal relations between the principal and third persons,'" *O'Neill v. Dep't of Hous. & Urban Dev.*, 220 F.3d 1354, 1360-63 (Fed. Cir. 2000) (quoting Restatement (Second) of Agency § 12 (1958)); and (2) the authority to accept service of process on Google's behalf. Mot. at 10-11, 17. AGIS's opposition disputes neither of these points.

AGIS, for example, does not dispute that CTDI lacks the ability to commit Google to any business relationships. At best, AGIS argues that a party may be an agent in some circumstances without having authority to bind the principal to a contract, Opp. at 12-13 n.10, yet such circumstances still involve the ability to act on the principal's behalf. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013) ("Agents who lack authority to bind their principals to contracts nevertheless often have authority to negotiate or to transmit or receive

4

information on their behalf."). CTDI has no such authority and thus is not Google's agent.

AGIS ignores entirely the service of process requirement, even though *In re Google* held that the venue and service provisions are "expressly linked." 949 F.3d at 1344. There is no basis to conclude that CTDI is a proper party for service on Google. Again, CTDI is not Google's agent.

### b. CTDI's Repair Activities Are Ancillary To Google's Business

AGIS declares in its introduction that the CTDI Flower Mound Facility "provides non-ancillary repair, warehousing, and refurbishing services." Opp. at 2. But nowhere does AGIS explain why device repair constitutes Google's business. To the contrary, AGIS acknowledges that "maintenance and other activities [ ] are ancillary to Google's business of 'producing, storing, and furnishing [information] to customers.'" *Id.* at 14 n.14 (quoting *In re Google*, 949 F.3d at 1346). That is because "maintenance activities cannot, standing alone, be considered the conduct of Google's business." *In re Google*, 949 F.3d at 1346. Here, the devices that are being repaired and refurbished by CTDI are not even Google's devices; rather, they are devices that have been sold to the consumer. Google does not earn revenue from CTDI's activities but instead pays CTDI to perform repairs precisely because it is CTDI, not Google, that is in the business of repairing devices. CTDI's Flower Mound Facility is not Google's regular and established place of business.

### c. Google Does Not Have Interim Control Over CTDI

Each of the foregoing reasons, individually or collectively, confirms that CTDI's Flower Mound Facility is not Google's regular and established place of business. In addition, CTDI is not Google's agent—and its facilities are not Google's regular and established place of business—because Google lacks interim control over CTDI's device repair and refurbishment.

The Federal Circuit's recent *In re Volkswagen* decision clearly distinguishes between contractual provisions that "merely provide constraints on how a service is provided" from those "evidencing interim control." 2022 WL 697526, at *5. The contract between Google and CTDI

5

sets constraints on CTDI's activities; it does not permit Google to direct CTDI's performance of those activities on a step-by-step basis. None of the provisions AGIS cites (Opp. at 19-21) describe interim control over CTDI's performance of repairs.

But this is no different from the requirement for car dealers to "use specified tools when performing warranty and maintenance work" and "use distributor-approved computer hardware and software" that the Federal Circuit found to constitute quality controls, not interim instructions. *In re Volkswagen*, 2022 WL 697526, at *6.

Likewise, provisions defining for CTDI which devices qualify for warranty repair are equivalent to requirements on car dealers to "perform warranty work on consumer vehicles." *In re Volkswagen*, 2022 WL 697526, at *6. is equivalent to requirements on car dealers to "comply with the distributors' standards regarding dealership appearance and use of signs and brand logos." *Id*. is similar to requirements of car dealers to "provid[e] sales reports." *Id.*

Indeed, the dealership agreements in *In re Volkswagen* impose more significant requirements on dealers than those included in the Google-CTDI agreements, including requirements that the dealers "employ certain types of employees," "maintain a minimum amount of inventory," meet "working capital requirements," "attend mandatory training sessions" and obtain "certain training certifications." *Id*. None of these were deemed interim controls. And in contrast to the contracts in *In re Volkswagen*,

6

At bottom, interim controls require "step-by-step" instructions or "day-to-day control" of "operations and hiring decisions." *In re Volkswagen*, 2022 WL 69752, at *7. Google does not exercise day-to-day control of CTDI and does not provide step-by-step instructions to CTDI on how to perform repairs. Google also certainly does not have "the right to direct or control" CTDI employees, which the Federal Circuit has found to be "an essential element of an agency relationship." *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021). None of the contractual provisions provide Google with such control. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, which *In re Volkswagen* just confirmed supports the conclusion that no agency relationship exists. 2022 WL 697526, at *7.

### 2.   *Cray* Factor 3 – CTDI's Flower Mound Facility Is Not "Of Google"

AGIS concedes that CTDI is not owned and operated by Google, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Other than this Court's order in *PMC*, AGIS cites no authority for its proposition that Google somehow ratifies the Flower Mound facility as its place of business by directing customers to ship to that location for product repairs. And AGIS fails to distinguish Google's cited authorities holding to the contrary. Mot. at 18. AGIS argues that such shipments combined with the use of Google packaging constitutes ratification, but the Federal Circuit already rejected such reasoning.

7

In *Andra Group*, the Federal Circuit held that companies operating under the "Victoria's Secret" brand name did not have a regular and established place of business in the District merely because another company, Victoria's Secret Stores, L.L.C. ("Stores"), had clothing stores in this District. 6 F.4th at 1290. The fact that online shoppers could return items to physical stores bearing the "Victoria's Secret" name in the District did not constitute ratification. *Id.* Google likewise does not ratify CTDI locations merely by directing consumers to send devices to CTDI for repair.

### D. ILAs Are Not Google's Regular And Established Place Of Business

ILAs housed in Level 3's facilities are not Google's regular and established place of business under *Cray* factor 2 because there are no Google employees or agents regularly located at these places. Indeed, AGIS makes no claim that the parties from whom Google leases rack space for ILAs are agents of Google.

AGIS also does not present evidence that Google employees are regularly present at ILAs in the District.

Even if Google employees visited the District to conduct maintenance more frequently,

8

such maintenance of fiber optic lines and ILAs does not cause them to become Google's regular and established place of business, since "maintenance activities cannot, standing alone, be considered the conduct of Google's business." *In re Google*, 949 F.3d at 1346. Aside from the possible need for repairs or maintenance, the ILAs and fiber optic lines are entirely self-sufficient, akin to railway tracks through the District. There are no Google employees regularly present at these facilities, and AGIS does not assert that any other entity operates as agents of Google in this regard. The ILAs are not Google's regular and established place of business.

### E. Best Buy Is Not Google's Regular And Established Place Of Business

Google's omnibus contract with Best Buy to provide retail space in Best Buy stores does not cause those stores to become regular and established places of business of Google. First, Best Buy stores and store employees are not agents of Google under *Cray* factor 2. Best Buy is a retailer of a vast range of consumer electronics, and Best Buy employees, not Google, determine how they sell products. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AGIS cites no other evidence as putative support of its claim that Google somehow controls how Best Buy sells products. Google's complete lack of interim control over Best Buy's sales process establishes that Best Buy and its employees are not Google's agents. *See In re Volkswagen*, 2022 WL 697526, at *6 (car dealerships are not agents of car manufacturers because the dealerships control the sales of cars). The other provisions AGIS cites, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are akin to provisions that the *Volkswagen* court found insufficient to show agency—e.g., "providing sales reports" and "comply[ing] with the distributors' standards regarding dealership appearance and use of signs and brand logos." 2022 WL 697526, at *6.

Moreover, Best Buy fails other critical tests for whether an agency relationship exists. Best

9

Buy is not Google's agent for service of process.  Best Buy cannot commit Google to any business relationships.  ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

Best Buy stores are also not a place of business "of Google" under *Cray* factor 3.  As Google explained in its Motion, another court has rejected the very argument presented by AGIS here, that retail space at Best Buy could constitute a "regular and established place of business." In *International Technologies & Systems Corp. v. Samsung Electronics Co.*, the court found that "Samsung Experience Shops" located inside Best Buy stores were not Samsung's place of business because Samsung did not "own or lease any offices or facilities or have any employees that work[ed]" at the "Samsung Experience Shops."  No. SA CV 17-1748-DOC (JDEx), 2018 WL 4963129, at *8 (C.D. Cal. June 22, 2018).  Google likewise does not lease facilities and does not have employees working at the Best Buy locations.  Best Buy stores are not facilities "of Google."

### F. Conclusion

For these reasons, the Court should dismiss this action for improper venue or, alternatively, transfer it to the NDCA.[2]

---

[2] If the Court elects to transfer this case, NDCA and not WDTX is clearly the more appropriate venue for the reasons set forth in this Motion and in Google's Motion to Transfer Venue, Dkt. 149.

10

| | |
|---|---|
| Dated: March 21, 2022 | Respectfully submitted,<br><br>By: */s/ J. Mark Mann*<br>J. Mark Mann<br>State Bar No. 12926150<br>G. Blake Thompson<br>State Bar No. 24042033<br>MANN \| TINDEL \| THOMPSON<br>300 West Main Street<br>Henderson, Texas 75652<br>(903) 657-8540<br>(903) 657-6003 (fax)<br><br>Darin W. Snyder (*pro hac vice*)<br>dsnyder@omm.com<br>Luann L. Simmons (*pro hac vice*)<br>lsimmons@omm.com<br>Mark Liang (*pro hac vice*)<br>mliang@omm.com<br>Bill Trac<br>btrac@omm.com<br>**O'MELVENY & MYERS LLP**<br>Two Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 984-8700<br>Facsimile: (415) 984-8701<br><br>**ATTORNEYS FOR DEFENDANT GOOGLE LLC** |

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

Dated: March 21, 2022  /s/ *J. Mark Mann*
J. Mark Mann

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned certifies that the foregoing document and all supporting declarations and exhibits thereto are being filed under seal pursuant to the Protective Order entered in this case.

Dated: March 21, 2022  /s/ *J. Mark Mann*
J. Mark Mann